UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| ROBERT FRESE, )<br>)<br>Plaintiff )<br>)<br>v. )<br>)<br>GORDON J. MacDONALD, )<br>in his official capacity only as )<br>Attorney General of the )<br>State of New Hampshire, )<br>)<br>Defendant )<br>) | Case No. 1:18-cv-1180-JL |

### REPLY TO OBJECTION TO MOTION TO DISMISS

Defendant Gordon J. MacDonald, in his official capacity only as Attorney General of the State of New Hampshire (the "Attorney General"), by and through his counsel, the Office of the Attorney General, presents the following Reply to the Objection [Doc. # 14] of the Plaintiff, Robert Frese ("Mr. Frese"), to the Attorney General's Motion to Dismiss [Doc. # 11]:

**I.     Mr. Frese's *Babbitt*-Based Argument on Standing is Unavailing.**

In *Mangual v. Rotger-Sabat*, 317 F.3d 45 (1st Cir. 2003), the First Circuit addressed the matter of ***pre***-enforcement standing to assert First Amendment challenges to criminal legislation, specifying "two types" of qualifying "injuries":

> In challenges under the First Amendment, two types of injuries may confer Article III standing without necessitating that the challenger actually undergo a criminal prosecution. The first is when "*the plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by [the] statute, and there exists a credible threat of prosecution.*" *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979). *** The second type of injury is when a plaintiff is "chilled from exercising her right to free expression in order to avoid enforcement consequences." *N.H. Right to Life PAC v. Gardner*, 99 F.3d 8, 13 (1st Cir. 1996).

1

*Id.* at 56 (emphasis supplied).  The Objection to Motion to Dismiss recites that "Mr. Frese focuses on the [*Babbitt*-based] **first** type (*italicized* above) of pre-enforcement standing."  Objection [Doc. # 14] at 4 (6 of 29) (emphasis supplied).

Mr. Frese's argument does not leave the gate, as he *acknowledges* that deliberately false and defamatory speech, the *only* "conduct … proscribed by [RSA 644:11, the 'Criminal Defamation Statute']," is *not* even "*arguably* affected with a constitutional interest." *Babbitt*, 442 U.S. at 298 (emphasis supplied); Complaint [Doc. # 1] ¶ 33 (conceding that "deliberately false and defamatory statements of fact are not protected by the First Amendment…."); *see United States v. Alvarez*, 567 U.S. 709, 717-19 (2012) (false speech alone is protected; but false *and* defamatory speech, like fraud, true threats and perjury, falls outside the protection of the First Amendment).

Still, in furtherance of his argument, Mr. Frese goes on to cite three First Amendment *pre-enforcement* standing cases – *Babbitt*, *Mangual* and *Susan B. Anthony List* – each addressing challenges to criminal laws that, unlike the Criminal Defamation Statute, swept in and prohibited speech that was "arguably [indeed, certainly] affected with a constitutional interest." *Babbitt*, 442 U.S. at 298.  We address each such case *infra.*

    A.    *Babbitt*

In *Babbitt*, the United Farm Workers ("UFW") challenged the Arizona Agricultural Employment Relations Act, which criminalized non-defamatory speech promoting consumer boycotts of agricultural products (*i.e.*, "[i]nduc[ing] or encourag[ing] the ultimate consumer of any agricultural product to refrain from purchasing, consuming or using such agricultural product by the use of dishonest, untruthful and deceptive publicity.").[1]  *Babbitt*, 442 U.S. at 301.  There could

---

[1] Violation of the Act, a class 1 misdemeanor, carried a term of imprisonment of up to six months. *Babbitt*, 442 U.S. at 301, *citing* Ariz. Rev. Stat. Ann. § 23-1392.

be no doubt that, unlike Mr. Frese, the UFW had standing because its arsenal for the advancement of farm laborers' interests included the encouragement of consumer boycotts (*e.g.*, the lettuce and grape boycotts). Indeed, the UFW "intend[ed] to engage in a course of conduct arguably [read: certainly] affected with a constitutional interest, but proscribed by [the] statute." *Babbitt*, 442 U.S. at 298; *see Alvarez*, 567 U.S. at 717 (Stolen Valor Act, criminalizing false declaration that one is a Congressional Medal of Honor recipient, invalidated because "[a]bsent from those few categories where the law allows content-based regulation of speech [*e.g.*, deliberately false and defamatory statements, fraud, perjury], is any general exception to the First Amendment for false statements.").

### B. *Mangual*

Unlike Mr. Frese, the Plaintiff in *Mangual* did not seek standing under *Babbitt*, but rather under the rubric set forth in *N.H. Right to Life*, wherein one is "chilled from exercising [his] right to free expression in order to avoid enforcement consequences." *Mangual*, 317 F.3d at 57-58, *citing N.H. Right to Life PAC v. Gardner*, 99 F.3d 8, 13 (1st Cir. 1996). Still, Mr. Mangual would have satisfied the standing requirements of *Babbitt* because he challenged a Puerto Rico Libel Law that criminalized constitutionally protected *truthful* speech. *See Garrison*, *v. Louisiana*, 379 U.S. 64, 72 (1964) ("[T]he interest in private reputation is overborne by the larger public interest, secured by the Constitution, in the dissemination of truth."), *citing State v. Burnham*, 9 N.H. 34, 42 (1837) ("If upon a lawful occasion for making a publication, he has published the truth, and no more, there is no sound principle which can make him liable, even if he was actuated by express malice.").

Tomás De Jesús Mangual, a reporter assigned to investigate public corruption, challenged Puerto Rico's Libel Law, which prescribed criminal penalties – up to six months in prison – for

those who would "publicly dishonor … a natural or juridical person" or "blacken the memory of one who is dead." *Mangual*, 317 F.3d 45, 51 (1st Cir. 2014), *citing* 33 P.R. Laws Ann. § 4101 [Libel].  <u>The speech need *not* have been *false* for the prosecution to make out its *prima facie* criminal case</u>.  *Id*.  Further, as noted by the First Circuit, § 4102 [Truth as defense] of the Libel Law "[d]id not permit an unqualified affirmative defense of truth, but only [did] so if the victim '[was] a public officer,'" and even then, only if "'the charge made refer[red] to the performance of his duties.'"  *Id*. at 67, *quoting* 33 P.R. Laws Ann. § 4102.  "Otherwise, truth [was] only a defense if the [speaker] 'had good intention and justifiable ends.'"  *Id*.  The Court concluded that "[t]he section 4102 defense of truth [was] not broad enough to encompass all constitutionally protected statements[,]" so that it was "constitutionally deficient."  *Id*.  That is to say, unlike the Criminal Defamation Statute, the Puerto Rico Libel Law would punish the *truthful* statements that investigative reporter Mangual might publish – *i.e.*, *protected* speech under the First Amendment.  *See Garrison*, 379 U.S. at 72.  Simply put, unlike Mr. Frese, Mr. Mangual would have had standing under *Babbitt* because he "intend[ed] to engage in a course of conduct arguably [read: certainly] affected with a constitutional interest, but proscribed by [the] statute."  *Babbitt*, 442 U.S. at 298.

      **C.**     <u>**Susan B. Anthony List**</u>

In *Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014), political advocacy organizations challenged an Ohio law that criminalized false statements about candidates during political campaigns.  The relevant provisions of Ohio Rev. Code Ann. § 3517.21(B) [Unfair Political Campaign Activities] "ma[d]e it a crime for any person to '[m]ake a false statement concerning the voting record of a candidate or public official,' § 3517.21(B)(9), or to '[p]ost, public, circulate, distribute, or otherwise disseminate a false statement concerning a candidate, either knowing the same to be false or with reckless disregard of whether it was false or not,' §

4

3517.21(B)(10)." *Id*. at 152. Violation of the Ohio false statement statute was punishable by, among other things, up to six months in prison. *Id*. at 153, *citing* Ohio Rev. Code Ann. §§ 3599.40, 3517.992(V). A second offense commanded disenfranchisement. *Id*., *citing* Ohio Rev. Code Ann. §§ 3599.39.

Without doubt, the Ohio law swept in all manner of speech that, while false, was not defamatory. *See Alvarez*, 567 U.S. at 717. That is to say, the law criminalized protected speech. The Supreme Court found that the advocacy organizations had pre-enforcement standing to challenge the law because, unlike Mr. Frese, they "intended future conduct … [that was] *certainly* 'affected with a constitutional interest[,]'" but proscribed by the statute. *Id*. at 162 (emphasis supplied), *quoting Babbitt*, 442 U.S. at 298.

### D. *And* Mr. Frese

Unlike the three (3) pre-enforcement standing cases on which Mr. Frese relies, the Criminal Defamation Statute – proscribing the "purposeful communication" of "information [that the speaker] knows to be false and knows will tend to expose any other living person to public hatred, contempt or ridicule" – does not sweep in speech that is, by any measure, "arguably affected with a constitutional interest." *Id*.; *Alvarez*, 567 U.S. at 717-19. As a consequence, Mr. Frese cannot satisfy the *Babbitt* test on which he avowedly relies for pre-enforcement standing. Thus, he cannot meet *his burden* of establishing the requirement of standing – *i.e.*, a case or controversy under Article III, Section 2, Clause 1 of the United States Constitution – and the case must be dismissed. *See Raines v. Byrd*, 521 U.S. 811, 818 (1997) ("[plaintiff], based on [his] complaint, must establish that [he] ha[s] standing to sue."); *Blum v. Holder*, 744 F.3d 790, 795 (1st Cir. 2014), *quoting Clapper v. Amnesty International USA*, 568 U.S. 398, 411-12 (2013) ("'[t]he party invoking federal [court] jurisdiction bears the burden of establishing standing.'").

5

## II.  Mr. Frese Fails to Establish that the Criminal Defamation Statute is Unconstitutionally Vague.

Part II of Mr. Frese's Objection, entitled "The Criminal Defamation Law is Unconstitutionally Vague," begins with a discussion of that level of scrutiny which the Court should employ when reviewing the Criminal Defamation Statute for vagueness.  Mr. Frese points to *Village of Hoffman Estates v. Flipside*, *Hoffman Estates, Inc.*, 455 U.S. 489 (1982) for the proposition, so he asserts, that "laws regulating speech are subject to a 'more stringent vagueness test' than laws regulating conduct."  Objection at 10 (12 of 29), *quoting Hoffman Estates*, 455 U.S. at 499.  In fact, to the contrary, *Hoffman Estates* says something quite different:

> [P]erhaps the most important factor affecting the clarity that the Constitution demands of a law is whether it threatens *to inhibit the exercise of constitutionally protected rights*.  If, for example, the law interferes with the right of free speech or of association, a *more stringent vagueness* test should apply.

*Id*. (emphasis supplied).  Of course, as discussed in Attorney General's Motion to Dismiss, and in this Reply, *supra* at 2, Mr. Frese concedes that "deliberately false and defamatory statements of fact [*i.e.*, the *only* conduct actually proscribed by the Criminal Defamation Statute] are not protected by the First Amendment…."  Complaint [Doc. # 1] ¶ 33; *see United States v. Alvarez*, 567 U.S. 709, 717-19 (2012) (false speech alone is protected; but false *and* defamatory speech, like fraud, true threats and perjury, falls outside the protection of the First Amendment).  Simply put, the Criminal Defamation Statute does not "threaten to inhibit the exercise of constitutionally protected rights."  *Hoffman Estates*, 455 U.S. at 499.  Thus, Mr. Frese's invitation to apply "a more stringent vagueness test" should properly be declined.

But, Mr. Frese's Objection is noteworthy for engaging in no scrutiny at *any* level.  Indeed, the text of the Criminal Defamation Statute – which addresses one who "*purposely* communicates … any information which he *knows* to be false and *knows* will tend to expose any other living

6

person to public hatred, contempt or ridicule" – appears nowhere in that section of Mr. Frese's Objection which begins and concludes with the assertion that it is "unconstitutionally vague," in that "it fails to provide adequate notice as to what speech is proscribed" and "encourages arbitrary and selective enforcement." Objection at 9-25 (11-27 of 29). So, when Mr. Frese offers up unsupported narrative like "the line between actual defamation and protected expression has become too abstruse to put ordinary people on notice when their speech might have criminal consequences[,]" Objection at 11 (13 of 29), he does so without reference to the statute he wishes this Court to strike down or, for that matter, to any other statute.

There is no reason for Mr. Frese to leave the law's text out of his vagueness analysis, except to avoid the simple truth that, as discussed in the Motion to Dismiss, the Criminal Defamation Statute meets and even exceeds the First Amendment requirement of *Garrison*, as well as the Fourteenth Amendment's due process command that it "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory treatment." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983).

Putting aside what the Criminal Defamation Statute says, the Objection returns to *State of Alaska v. Gottschalk*, 575 P.2d 289 (Alaska 1978), a case that appeared prominently in the Complaint. *Gottschalk,* as discussed in Attorney General's Motion to Dismiss, involved an Alaska criminal defamation law that (a) like *Mangual*, discussed *supra* at 3-4, swept in protected *truthful* statements unless published "with good motive and for a justifiable end," *Gottschalk*, 575 P.2d 289, 290 n. 1 (Alaska 1978), *quoting* AS 11.15.320, and (b) forbade "defamatory" and "scandalous" speech, terms that depended on "the values of the ***listener***," *id*. at 293 (emphasis supplied), rather than, as here, on **what is in the mind of the speaker**, who must *know* that his

7

*knowingly* false statement "will tend to expose [another] to public hatred, contempt or ridicule." RSA 644:11, I (emphasis supplied).

Next, Mr. Frese's Objection takes issue with the Attorney General's use of that settled principle which states: "'[the] requirement of the presence of culpable intent [here, *knowingly*] as a necessary element of the offense does much to destroy any force in the argument' that [the law] is too vague to be constitutionally enforceable." *U.S. v. Collins*, 272 F.3d 984, 988-89 (7th Cir. 2001), *quoting Boyce Motor Lines, Inc. v. United States*, 342 U.S. 337, 342 (1952); *see also*, *U.S. v. Mire*, 725 F.3d 665 (7th Cir. 2013) (citing *Boyce*, rejecting a void-for-vagueness argument where the criminal law required "knowledge" that *khat*, a stimulant plant material, contained a prohibited controlled substance); *U.S. v. Klecker*, 348 F.3d 69, 71 (4th Cir. 2003) ("The intent requirement alone tends to defeat any vagueness challenge based on the potential for arbitrary enforcement."); *see also*, *Thomas v. City of Baxter Springs*, 369 F. Supp.2d 1291, 1295 (D. Kan. 2005) (rejecting a void-for-vagueness challenge to a law imposing criminal liability if one "communicated … information, *knowing* the information to be false and with actual malice, tending to expose another living person to public hatred, contempt or ridicule.") (emphasis supplied).  According to Mr. Frese, the Supreme Court's formulation in *Boyce*, applied more recently in *Collins, Mire* and *Klecker*, is inapposite because the latter three cases are "drug trafficking decisions [that] are not applicable to [his] First Amendment challenge" to the Criminal Defamation Statute. Objection at 16 (18 of 29).  This is hardly a meaningful distinction – particularly given that *Hoffman Estates*, that First Amendment case upon which Mr. Frese relies, states as follows:

> And the [Supreme] Court has recognized that a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed.

*Hoffman Estates*, 455 U.S. at 499, *citing Boyce*, 342 U.S. at 342.

Mr. Frese's Objection does not make out a case for the proposition that the Criminal Defamation Statute is unconstitutionally vague. Rather, as discussed in the Attorney General's Motion to Dismiss, this Court is presented with a request for what Mr. Frese portrays as a more enlightened public policy, one that would declare that *Garrison*, in which the Supreme Court extended *New York Times v. Sullivan*, 376 U.S. 254 (1964) to *criminal* defamation, *Garrison*, 379 U.S. at 67, "was wrongly decided." Objection at 12 n. 5 (14 of 29) (emphasis supplied). Such a request is one the District Court should not grant. *See Rodriguez de Quijas v. Shearson/American Exp., Inc.*, 490 U.S. 477, 484 (1989) ("If a precedent of this Court has direct application in a case… the Court of Appeals should follow that case which directly controls, leaving to this Court the prerogative of overruling its own decisions); *U.S. v. Morosco*, 822 F.3d 1, 7 (1st Cir. 2016) ("[B]ecause overruling Supreme Court precedent is the Court's job, not ours, we must follow [such precedent] until the Court specifically tells us not to…."); *NAACP v. Medical Center, Inc.*, 657 F.2d 1322, 1331 (3d Cir. 1981) ("The prerogative of overruling its cases rests with the Supreme Court, and not with us.").

## CONCLUSION

The Motion to Dismiss should properly be granted.

Respectfully submitted,

GORDON J. MacDONALD, in his
official capacity only as Attorney General
of the State of New Hampshire

By his attorney,

OFFICE OF THE ATTORNEY GENERAL

Date: June 10, 2019         By:  /s/ Lawrence M. Edelman
                            Lawrence M. Edelman, Bar # 738
                            Assistant Attorney General
                            Rebecca D. Ricard, Bar #265503
                            Attorney
                            Civil Bureau
                            New Hampshire Dept. of Justice
                            33 Capitol Street
                            Concord, NH 03301
                            (603) 271-3650
                            lawrence.edelman@doj.nh.gov
                            rebecca.ricard@doj.nh.gov

## Certificate of Service

I hereby certify that a copy of the foregoing Reply to Objection to Motion to Dismiss was served this 10th day of June, 2019, on all counsel of record, via the ECF System.

/s/  Lawrence M. Edelman
Lawrence M. Edelman