UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE


Robert Frese


      v.                                    Civil No. 18-cv-1180-JL
                                                   Opinion No. 2019 DNH 184
Gordon J. MacDonald,
In his official capacity only as Attorney
General of the State of New Hampshire


## MEMORANDUM OPINION

This case concerns the constitutional permissibility of criminal defamation enforcement.  The Attorney General of the State of New Hampshire ("the State") has moved to dismiss a pre-enforcement challenge to New Hampshire's criminal defamation statute, N.H. Rev. Stat. 644:11, on Article III standing and sufficiency grounds.  Plaintiff Robert Frese, a self-described "outspoken" New Hampshire resident twice charged with criminal defamation, submits the statute is unconstitutional under the First and Fourteenth Amendments because it fails to provide fair notice of what conduct it prohibits and is highly susceptible to arbitrary enforcement.  The question at this stage is two-fold:  Does Frese's alleged fear of future prosecution amount to an "injury in fact" that confers standing to sue?  And if so, does his complaint sufficiently plead that the statute is unconstitutionally vague?  While the ultimate permissibility of the statute's enforcement remains to be determined, the preliminary answer to these standing and sufficiency questions is yes.

At the motion-to-dismiss stage, a plaintiff in a pre-enforcement case need only plead an intention to engage in conduct arguably affected with constitutional interest, but proscribed by a statute, and a credible threat of prosecution to allege an Article III injury

in fact.  Frese has cleared this bar by alleging an intent to publicly criticize law enforcement and public officials.  Such speech occupies "the highest rung of the hierarchy of First Amendment values," see O'Connor v. Steeves, 994 F.2d 905, 915 (1st Cir. 1993), and is arguably proscribed by the criminal defamation statute's sweeping language.  The threat of enforcement is also credible, given that in 2018, a municipal police department arrested and prosecuted Frese for accusing an officer of corruption.  He has therefore alleged an injury in fact that confers standing to sue.

Additionally, to plead a void-for-vagueness claim, a plaintiff need only allege that a statute either fails to provide people of ordinary intelligence fair notice of the conduct it prohibits or encourages arbitrary and discriminatory enforcement.  Again, Frese's allegations satisfy both theories.  Although the statute's scienter element requires that the speaker know his speech is false and will tend to be defamatory, a question remains as to whether the statute adequately delineates the threshold between speech that is criminal rather than merely provocative.  Additionally, Frese's allegations give reason to question whether the criminal defamation statute, when construed in the context it is enforced, encourages arbitrary and selective enforcement by municipal police departments, which retain the ability to prosecute misdemeanors like criminal defamation without the oversight of a licensed, state-sanctioned attorney.  As such, Frese has stated a cognizable claim for relief.  This court has jurisdiction under 28 U.S.C. § 1331.

## I. __Background__

The following draws from the complaint's non-conclusory allegations and the submitted documents referenced therein.  See Gilbert v. City of Chicopee, 915 F.3d 74, 80 (1st Cir. 2019).

New Hampshire's criminal defamation statute, N.H. Rev. Stat. 644:11, provides: "A person is guilty of a class B misdemeanor if he purposely communicates to any person, orally or in writing, any information which he knows to be false and knows will tend to expose any other living person to public hatred, contempt or ridicule."[1] Infractions carry no jail time, but can result in a fine of up to $1,200, plus a 24 percent penalty assessment. See id. 651:2(IV)(a).

Municipal police departments in New Hampshire have been empowered since colonial times to initiate prosecutions for misdemeanors like criminal defamation without input or approval from a state-employed and legally trained prosecutor.[2] Because charges carry no possibility of imprisonment, criminal defamation defendants are not entitled to a trial by jury. See N.H. Const. Pt. 1, Art. 20; State v. Foote, 149 N.H. 323, 324 (N.H. 2003). Additionally, state law does not afford indigent criminal defamation defendants the right to court-appointed counsel. See State v. Westover, 140 N.H. 375, 378 (1985). While criminal defamation prosecutions are not common, records from the New Hampshire Judicial Branch suggest that over the past ten years, approximately 25 defendants were charged under the criminal defamation statute.[3]

---

[1] As used in the statute, "public" includes any professional or social group of which the victim of the defamation is a member. See id. 644:11(II).

[2] Compl. (doc. no. 1) ¶ 7; see also State v. La Palme, 104 N.H. 97, 98 (N.H. 1962) (citing State v. Urban, 98 N.H. 346, 347 (N.H. 1953) ("[T]he prosecution of misdemeanors by police officers is a practice that has continued in one form or another since 1791 and is still permissible under existing statutes.")); see generally State v. Martineau, 148 N.H. 259, 260-62 (N.H. 2002) (tracing the history of this practice at common law back to practices employed by the colonial courts); N.H. Rev. Stat. 41:10-a (recognizing power of the state police to prosecute misdemeanors).

[3] Compl. ¶ 8; see also Courts Chapter 91-A Response (doc. no. 1-1) (judicial branch records re: criminal defamation cases).

Plaintiff Robert Frese, a self-described "outspoken resident of Exeter, New Hampshire," is one such individual and, in fact, has been prosecuted twice for criminal defamation. In 2012, the Hudson Police Department interviewed Frese after a local life coach complained about comments Frese posted on the online platform Craigslist.[4] In those posts, Frese repeatedly called the coaching business a scam and claimed the coach had been charged with distributing heroin.[5] The Hudson Police Department ultimately charged Frese with harassment and criminal defamation and obtained an arrest warrant signed by a justice of the peace.[6] Frese, without counsel, pleaded guilty to the charges and was fined $1,488, with $1,116 suspended on the condition he stay in good behavior for two years.[7]

More recently, in 2018, the Exeter Police Department arrested and charged Frese with criminal defamation after he pseudonymously posted comments on the Exeter News-Letter's Facebook page concerning a retiring Exeter police officer.[8] In his first comment, Frese, under the pseudonym "Bob William," stated that the retiring officer was "the dirtiest most corrupt cop that I have ever had the displeasure of knowing . . . and the coward Chief Shupe did nothing about it."[9] The Exeter News-Letter removed this comment at the police department's request.[10] After the comment was deleted, Frese

---

[4] Compl. ¶ 9.

[5] See Hudson Prosecution Docs. (doc. no. 1-2) at HUD013-014.

[6] See id. at HUD019-022.

[7] Compl. ¶ 10.

[8] Id. ¶¶ 11-12.

[9] Id. ¶ 12 (quoting Exeter Prosecution Docs. (doc. no. 1-3) at EXE091).

[10] Id. ¶ 13.

submitted a second comment under the pseudonym "Bob Exeter" stating: "The coward Chief Shupe did nothing about it and covered up for this dirty cop.  This is the most corrupt bunch of cops I have ever known and they continue to lie in court and harass people . . . ."[11]

In the following days, Exeter Detective Mulholland discussed these comments with Chief Shupe, who in turn denied being aware of criminal acts by the retiring officer, denied covering up criminal conduct,[12] and "expressed his concern" that "false and baseless" comments "were made in a public forum."[13]  Upon reviewing the criminal defamation statute, both officers "believed that Frese crossed a line from speech to a violation of law."[14]  The next day, police officers interviewed Frese, who insisted his comments were true and revealed no other information suggesting he believed his online comments to be false.[15]  On this record, Detective Mulholland determined that "no credible information exist[ed] to believe that [the retiring officer] committed the acts Frese suggest[ed]."[16]  He therefore filed a criminal complaint against Frese.[17]  Based on this complaint and supporting police affidavits, a New Hampshire Circuit Court judge found probable cause to arrest Frese.[18]

---

[11] Id. ¶ 14 (quoting Exeter Prosecution Docs. at EXE092).

[12] Id. ¶ 18.

[13] Id. ¶ 16 (quoting Narrative for Detective Mullholland, Exeter Prosecution Docs. at EXE019).

[14] Id. (quoting Exeter Prosecution Docs. at EXE019).

[15] Exeter Prosecution Docs. at EXE20.

[16] Compl. (doc. no. 1) ¶ 19.

[17] Id. ¶¶ 19-20; see also Exeter Prosecution Docs. at EXE029.

[18] See Exeter Prosecution Docs. at EXE024-27.

Frese's 2018 arrest caused public controversy.[19]  Behind the scenes, the Rockingham County Attorney's Office, with which the Exeter Police Department contracts to prosecute its cases, sought the advice of the N.H. Office of the State.[20]  In June 2018, the State's Civil Rights Division responded with a memorandum finding a lack of probable cause that Frese made his comments with "actual malice."[21]  Three days later, the Exeter Police Department dismissed its criminal complaint.[22]

In light of these two arrests, Frese now claims that he fears future arrests or prosecutions for speech criticizing law enforcement and other public officials.[23]  He alleges, on information and belief, that "individuals throughout New Hampshire routinely violate the criminal defamation statute, but [he] was arrested and prosecuted because he criticized law enforcement officials."[24]  As such, he filed this lawsuit requesting declaratory and injunctive relief.

## II.    Applicable legal standard

### A.    Standing

"The Constitution limits the judicial power of the federal courts to actual cases and controversies."  Katz v. Pershing, LLC, 672 F.3d 64, 72 (1st Cir. 2012) (citing U.S. Cons. Art. III, § 2 cl. 1).  "A case or controversy exists only when the party soliciting federal

---

[19] Compl. ¶ 23.

[20] See Exeter Prosecution Docs. Part II (doc. no. 1-4) at EXE 108-111.

[21] Id. ¶ 24 (citing NHDOJ June 4, 2018 Mem. (doc. no. 1-3) at EXE008-013).

[22] Id. ¶ 25.

[23] Id. ¶ 27.

[24] Id. ¶ 35.

court jurisdiction (normally, the plaintiff) demonstrates 'such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends.'" Id. (quoting Baker v. Carr, 369 U.S. 186, 204 (1962)).

"To satisfy the personal stake requirement a plaintiff must establish each part of a familiar triad:  injury, causation, and redressability." Id. (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)); see also Massachusetts v. U.S. Dep't of Health & Human Servs., 923 F.3d 209, 221 (1st Cir. 2019) (explaining that the burden of alleging facts sufficient to prove these elements rests with the party invoking federal jurisdiction). "[E]ach element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof," which is, "with the manner and degree of evidence required at the successive stages of the litigation." Katz, 672 F.3d at 72 (quoting Lujan, 504 U.S. at 561) (internal quotation marks omitted).

In considering a pre-discovery grant of a motion to dismiss for lack of standing, the court "accept[s] as true all well-pleaded factual averments in the plaintiff's . . . complaint and indulge[s] all reasonable inferences therefrom in his favor." Id. at 70.  And while generally the court does not consider materials outside the pleadings on a motion to dismiss, it may look beyond the pleadings – to affidavits, depositions, and other materials — to determine jurisdiction.  See Gonzales v. United States, 284 F.3d 281, 288 (1st Cir. 2002); Strahan v. Nielsen, 18-CV-161, 2018 WL 3966318, at *1 (D.N.H. Aug. 17, 2018).

**B.      Statement of a claim**

Rule 12(b)(6) imposes a similar standard.  See Katz, 672 F.3d at 71 (citing Nisselson v. Lernout, 469 F.3d 143, 150 (1st Cir. 2006)).  The court makes determinations about the sufficiency of a complaint through a "holistic, context-specific analysis."

Gilbert, 915 F.3d at 80. First, it "isolate[s] and ignore[s] statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." Zenon v. Guzman, 924 F.3d 611, 615 (1st Cir. 2019) (citations and quotation marks omitted). It then "evaluate[s] whether the remaining factual content supports a 'reasonable inference that the defendant is liable for the misconduct alleged.'" In re Curran, 855 F.3d 19, 25 (1st Cir. 2017) (quoting Shay v. Walters, 702 F.3d 76, 82 (1st Cir. 2012)); see also Glob. Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 155 (2d Cir. 2006) ("The purpose of Rule 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits.").

In doing so, the court must accept "all well-pled facts in the complaint as true" and construe all reasonable inferences in the plaintiff's favor. See Gilbert, 915 F.3d at 80. In addition, the court may consider documents attached as exhibits or incorporated by refence in the complaint. See Trans–Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 321 (1st Cir. 2008). But the court "need not give weight to bare conclusions, unembellished by pertinent facts." Shay, 702 F.3d at 82-83. If the complaint's factual averments are "too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture," dismissal will be warranted. SEC v. Tambone, 597 F.3d 436, 442 (1st Cir. 2010) (en banc).

## III.  **Analysis**

The State contends that the complaint should be dismissed for two reasons. First, he contends that the court lacks subject matter jurisdiction because Frese has not alleged an intent to engage in speech that is both protected under the First Amendment and proscribed by the statute, as required for pre-enforcement standing to sue. Second, he

argues that Frese has failed to state a void-for-vagueness claim under the Fourteenth Amendment because the criminal defamation statute "define[s] the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited," and imposes no criminal penalties unless a person knows his or her speech is defamatory.[25]  As discussed herein, the court finds that Frese has adequately pleaded his standing to challenge the criminal defamation statute, as well as a claim that the statute is unconstitutionally vague.

## A.    Standing

The State first argues that Frese cannot establish standing because he has not alleged an intention to engage in conduct proscribed by the criminal defamation statute, N.H. Rev. Stat. 644:11.  The statute only criminalizes speech that a speaker "knows to be false and knows will tend to expose any other living person to public hatred, contempt or ridicule."  Id.  (emphasis added).  The State contends that because Frese has not alleged he intends to engage in speech he knows to be false and defamatory, Frese has failed to allege an intent to engage in speech proscribed by the statute.[26]  Alternatively, the State contends that had Frese alleged such an intent, his planned conduct would enjoy no constitutional protection.[27]  The court disagrees:  Supreme Court precedent makes clear that a plaintiff in a pre-enforcement challenge of a law's constitutionality need not confess that he or she will in fact violate that law before filing suit.

---

[25] Def.'s Mot. to Dismiss Mem. (doc. no. 11-1) at 9 (quoting Kolender v. Lawson, 461 U.S. 352, 357 (1983) (internal quotation marks omitted)).

[26] See Def.'s Mot. to Dismiss Mem. at 8-9.

[27] Both parties agree that such speech is not traditionally protected by the First Amendment.  See Compl. (doc. no. 1) ¶ 33; Def.'s Mot. to Dismiss Mem. at 9.

"'The law of Article III standing, which is built on separation-of-powers principles, serves to prevent the judicial process from being used to usurp the powers of the political branches.'" Susan B. Anthony List v. Driehaus, 573 U.S. 149, 157 (2014) (quoting Clapper v. Amnesty Int'l USA, 568 U.S. 398, 408 (2013)). "In keeping with the purpose of this doctrine," the courts' "standing inquiry has been especially rigorous when reaching the merits of the dispute would force [it] to decide whether an action taken by" a state legislature or executive was unconstitutional. Clapper, 568 U.S. at 408 (quoting Raines v. Byrd, 521 U.S. 811, 819-20 (1997)) (internal quotation marks omitted); see Griswold v. Connecticut, 381 U.S. 479, 481 (1965).

The "[f]irst and foremost" concern in standing analysis is the requirement that the plaintiff establish an injury in fact, Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016) (alteration in original) (quoting Steel Co. v. Citizens for a Better Env't, 523 U.S. 83 (1998)), which "helps to ensure that the plaintiff has a 'personal stake in the outcome of the controversy,'" SBA List, 134 S. Ct. at 2341 (quoting Warth v. Seldin, 422 U.S. 490, 498 (1975)). To satisfy Article III, the injury must be "concrete and particularized" and "actual or imminent, not 'conjectural' or 'hypothetical.'" Id. (quoting Lujan, 504 U.S. at 560) (internal quotation marks omitted).

Here, Frese mounts a pre-enforcement challenge to the criminal defamation statute; in other words, he is not a defendant in a pending criminal case. "In certain circumstances, 'the threatened enforcement of a law' may suffice as an 'imminent' Article III injury in fact." Reddy v. Foster, 845 F.3d 493, 500 (1st Cir. 2017) (quoting SBA List, 134 S. Ct. at 2342). "The rationale for pre-enforcement standing is that a plaintiff should not have to 'expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights.'" Id. (quoting Steffel

v. Thompson, 415 U.S. 452, 459 (1974)).  "An allegation of future injury may suffice if the threatened injury is 'certainly impending,' or [if] there is a '"substantial risk" that the harm will occur.'"  SBA List, 134 S. Ct. at 2341 (quoting Clapper, 568 U.S. at 414 n.5).

In the context of the First Amendment, "two types of injuries may confer Article III standing without necessitating that the challenger actually undergo a criminal prosecution."  Mangual v. Rotger-Sabat, 317 F.3d 45, 56 (1st Cir. 2003).  The first is when "the plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution."  Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 298 (1979) (emphasis added); accord Mangual, 317 F.3d at 56.  The second is when a plaintiff "is chilled from exercising [his or] her right to free expression or forgoes expression in order to avoid enforcement consequences."  N.H. Right to Life Political Action Comm. v. Gardner, 99 F.3d 8, 13 (1st Cir. 1996).  Frese's opposition focuses on the former type of injury.  He contends that the threat that the government will prosecute him in the future for his speech constitutes an Article III injury in fact.  The court agrees, finding that his allegations satisfy all three elements for a credible threat-of-enforcement injury.

### 1. Constitutional interest

First, Frese has alleged "an intention to engage in a course of conduct arguably affected with a constitutional interest," see Babbit, 442 U.S. at 298, particularly, "speech criticizing law enforcement and other public officials."[28]  "'[T]he right to criticize public officials' is protected by the First Amendment."  Bourne v. Arruda, No. 10-cv-393, 2011 U.S. Dist. Lexis 62332, at *40 (D.N.H. June 20, 2011) (quoting Jenkins v. Rock Hill

---

[28] Compl. (doc. no. 1) ¶ 27.

Local Sch. Dist., 513 F.3d 580, 588 (6th Cir. 2008)).  Although the complaint identifies no specific statements that Frese intends to make in the future, it intimates that Frese intends to engage in speech resembling his past critiques, which include criticism of law enforcement officers.[29]  See Martin v. Evans, 241 F. Supp. 3d 276, 283 (D. Mass. 2017) (Saris, C.J.) (concluding that Supreme Court precedent does not require plaintiffs to allege specific language to establish a pre-enforcement injury in fact).  Such speech is certainly "affected with a constitutional interest."  Martin, 241 F. Supp. 3d at 282-83; see also See v. City of Elyria, 502 F.3d 484, 493 (6th Cir. 2007) ("Statements exposing possible corruption in a police department are exactly the type of statements that demand strong First Amendment protection."); Mangual, 317 F.3d at 58 (finding a pre-enforcement injury in fact where a journalist stated "an intention to continue covering police corruption"); O'Connor, 994 F.2d at 915 (holding that speech concerning the alleged abuse of public office occupies "the highest rung of the hierarchy of First Amendment values"); Wagner v. City of Holyoke, 241 F. Supp. 2d 78, 91 (D. Mass. 2003) (holding that statements comprising evidence of possible corruption within a police department "are precisely the type of communications that demand strong First Amendment protection").

### 2.    Conduct proscribed

Second, the criminal defamation statute "arguably . . . proscribe[s]" Frese's intended future conduct.[30]  See SBA List, 573 U.S. at 162 (quoting Babbitt, 442 U.S. at

---

[29] See also Pl.'s Obj. to Mot. to Dismiss (doc. no. 14) at 5 ("He will continue to express his views on what he believes is a corrupt police department in Exeter . . . .").

[30] While at first blush, it may appear that "arguably," as used in Babbitt, modifies only the first requirement for a pre-enforcement injury (conduct arguably affected with a constitutional interest), SBA List makes clear that "arguably" also applies to the second element (conduct arguably proscribed).  See 573 U.S. at 162.

298).  The criminal defamation statute sweeps broadly, carving out no exceptions for speech concerning law enforcement or other public officials.  See also Mangual, 317 F.3d at 48 (finding credible threat of prosecution of a journalist's speech concerning police corruption where libel statute did not "carve out any exception" for such speech).  The Exeter Police Department already commenced a criminal defamation action against Frese in 2018 when he commented that "Officer Shupe did nothing" and covered up "the dirtiest most corrupt cop that [Frese] ever had the displeasure of knowing."[31]  Although the department eventually followed the advice of the State's Civil Rights Division in terminating the prosecution, Frese was nonetheless arrested and, for a time, prosecuted.

The State, relying on Blum v. Holder, 744 F.3d 790 (1st Cir. 2014), argues that Frese's fear of enforcement does not suffice because he has not asserted that he plans to communicate "information which he knows to be false" and "knows will tend to expose [a] living person to public hatred, contempt."[32]  Moreover, it counters that "the 'outspoken' Mr. Frese cannot, via inadvertent gaffe or blunder, stumble into a violation of the Criminal Defamation Statute" because it "commands a truly culpable intent – purpose and knowledge."[33]  But as the Supreme Court noted in SBA List, this argument "misses the point."  See 573 U.S. at 163.

In SBA List – decided three months after Blum v. Holder – the Supreme Court rejected a similar argument supporting an Ohio statute criminalizing false political advertising.[34]  573 U.S. at 151-52.  There, an advocacy group had filed a pre-enforcement

---

[31] Compl. (doc. no. 1) ¶¶ 13-14.

[32] Def.'s Mot. to Dismiss Mem. (doc. no. 11-1) at 8-9.

[33] Id. at 9.

[34] In particular, the statute made it a crime for any person to "'[m]ake a false statement concerning the voting record of a candidate or public official,' [Ohio Rev. Code]

suit for declaratory and injunctive relief after it had accused a congressional candidate of supporting an Affordable Care Act measure that included "taxpayer-funded abortion," and an elections panel had found probable cause that this accusation violated the Ohio statute.[35] Id. at 154. On appeal, the Sixth Circuit Court of Appeals held that the group's fear of enforcement did not engender an Article III injury in fact because the group "ha[d] not said it 'plan[ned] to lie or recklessly disregard the veracity of its speech.'" Id. at 156 (quoting appellate court). The Supreme Court found, however, that this "miss[ed] the point," as "[n]othing in [its] decisions require[d] a plaintiff who wishe[d] to challenge the constitutionality of a law to confess that he will in fact violate that law." 573 U.S. at 164. Additionally, the Court observed that the group's insistence its statements were true did not prevent the Ohio Elections Commission from finding probable cause of a violation. Id. It therefore found the petitioners had demonstrated an injury in fact sufficient for Article III standing. Id. at 168.

Even if Frese does not plan in the future "to lie or recklessly disregard the veracity of his speech," see id. at 156, his complaint sufficiently alleges that the State's prosecutorial arms, which include non-attorney police officers, retain overly broad discretion to determine whether an individual knew his speech to be true or false. Like the SBA List plaintiff, Frese's insistence that his 2018 comments were true did not prevent Exeter police officials from filing a criminal complaint against him or prevent a Circuit Court judge from finding probable cause to arrest Frese based on the police's

_____

§ 3517.21(B)(9), or to '[p]ost, publish, circulate, distribute, or otherwise disseminate a false statement concerning a candidate, either knowing the same to be false or with reckless disregard of whether it was false or not,' § 3517.21(B)(10).1." SBA List, 573 U.S. at 152.

[35] Upon a finding of probable cause of a violation of the statute, Ohio law required the elections panel to hold a full hearing. See id. at 152. If the panel determined by clear and convincing evidence that a party violated the false statement statute, the panel would then refer the matter to a county official to prosecute the violation as a first-degree misdemeanor (punishable by up to six months of imprisonment and/or up to a $5000 fine). Id.

filings.  Accordingly, Frese has demonstrated that his intended future conduct is "arguably . . . proscribed by the statute."  See Babbit, 442 U.S. at 298.

3.    *Credible threat of enforcement*

Finally, the threat of future enforcement is credible, given Frese's history with the criminal defamation statute.  See SBA List, 573 U.S. at 149.  As the Court observed in SBA List, "past enforcement against the same conduct is good evidence that the threat of enforcement is not chimerical."  573 U.S. at 149 (quoting Steffel v. Thompson, 415 U.S. 452, 459 (1974)) (internal quotation marks omitted) (finding credible threat of prosecution where an administrative body had already found probable cause to believe the plaintiff knowingly lied).  Here, two municipal police departments previously arrested and filed criminal charges against Frese for his speech, and the most recent charge concerned speech criticizing alleged police corruption – the very type of constitutionally protected speech that Frese allegedly plans to make in the future.  This prosecution, and to a lesser extent, his 2012 prosecution, constitute "good evidence" that he faces a credible threat of enforcement going forward.  See SBA List, 573 U.S. at 164; see also, e.g., City of Houston v. Hill, 482 U.S. 451, 459 n.7 (1987) (agreeing with the appellate court that the plaintiff's "'record of arrests under [an] ordinance and his adopted role as citizen provocateur'" gave him standing to challenge the facial validity of the ordinance (quoting 789 F.2d at 1107)).

This threat is amplified by the fact that in New Hampshire, initiation of the criminal process is not limited to the State or to similar state, county, or municipally employed attorneys.  See SBA List, 573 U.S. at 164; Mangual, 317 F.3d at 59.  Under New Hampshire law, individuals can initiate private prosecutions for criminal offenses that does not carry a possible penalty of imprisonment.  See State v. Tucker v. Gratta, 101

N.H. 87, 87 (1957) (referring to private prosecutions as "not uncommon"). Since as early as 1827, New Hampshire courts have recognized the potential "dangers to both the public interest and to the sound administration of justice" that private prosecutions pose. See Richard B. McNamara, New Hampshire Practice, Criminal Practice and Procedure § 15.04[1] (6th ed. 2017) (quoting Waldron v. Tuttle, 4 N.H. 149, 151 (1827). Although the State or his deputy may enter a "nolle prosequi" on a private criminal complaint, see, e.g., State v. Rollins, 129 N.H. 684, 685 (N.H. 1987), this authority does not prevent private litigants from haling speakers like Frese into court on criminal charges in the first instance.

The ability to prosecute misdemeanor crimes similarly extends to law enforcement officers, who commonly do so without the approval or guidance of a prosecuting attorney. See La Palme, 104 N.H. at 98. "[T]he prosecution of misdemeanors by police officers is a practice that has continued in one form or another since 1791 and is still permissible under existing statutes." Id. at 98-99 (citing Urban, 98 N.H. at 347); see generally Martineau, 148 N.H. at 260-62 (tracing the history of this practice at common law back to practices employed by the colonial courts); N.H. Criminal Practice and Procedure, supra, § 2.03. This practice is also implicitly recognized, if not expressly authorized, by statute. See, e.g., N.H. Rev. Stat. 41:10. Both times Frese was charged with criminal defamation, municipal law enforcement initiated the proceedings. The second criminal complaint concerned criticism of the executing officer's supervisor, Chief Shupe.[36] And while the Attorney General eventually intervened by opining there

---

[36] The court makes this observation without forming any opinion about the propriety or merits of the underlying prosecutorial decision.

was no probable cause to support the charge,[37] the Attorney General does not routinely exercise preliminary oversight over municipal police prosecutions.

Both the Supreme Court and the First Circuit Court of Appeals have found that similar enforcement regimes heightened enforcement risks. In Mangual, for example, the Court of Appeals found that even if the Puerto Rico Department of Justice disavowed any intention to prosecute criminal libel cases, the plaintiff "would still have a credible fear of having criminal charges against him" because the power to prosecute was not limited to a government prosecutor or agency, explaining:

> Under Puerto Rico law, if the crime is a misdemeanor, individuals may file a complaint with the police or pro se; it is after probable cause is shown and the matter is set for trial that the Justice Department steps in to prosecute the case. The Secretary [of Justice] exercises no control over whom the local police choose to prosecute for misdemeanors; indeed, as the history of [an intervenor's] prosecution indicates, at least one local police department prosecuted despite a federal court injunction ordering it not to prosecute. The plaintiff's credible fear of being haled into court on a criminal charge is enough for the purposes of standing, even if it were not likely that the reporter would be convicted.

Mangual, 317 F.3d at 59. Likewise, in SBA List, the Supreme Court found that the credibility of a future enforcement threat was "bolstered" where "the false statement statute allow[ed] 'any person' with knowledge of the purported violation to file a complaint. Because the universe of potential complainants is not restricted to state officials who are constrained by explicit guidelines or ethical obligations, there is a real risk of complaints from, for example, political opponents." 573 U.S. at 164.

---

[37] NHDOJ June 4, 2018 Mem. (doc. no. 1-3) at EXE011.

In light of these factors, Frese's allegations demonstrate an injury in fact sufficient for Article III standing. Accordingly, the court has jurisdiction to consider whether Frese has sufficiently alleged First and Fourteenth Amendment claims.

## B.      Void for vagueness claim[38]

Next, the State contends that Frese's vagueness challenge must fail, in most part, because the criminal defamation statute's scienter element requires that the speaker "know that his knowingly false statement 'will tend to expose [another] to public hatred, contempt or ridicule.'"[39] While the State is correct that a scienter element may mitigate vagueness concerns, see, e.g., Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 499 (1982), he has not persuaded the court that the vagueness concerns raised in the complaint are so mitigated such that dismissal is warranted at the outset of this lawsuit.

The Fourteenth Amendment's Due Process Clause bars state actors from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "The vagueness doctrine, a derivative of due process, protects against the ills of laws whose 'prohibitions are not clearly defined.'" Nat'l Org. for Marriage v. McKee, 649 F.3d 34, 62 (1st Cir. 2011) (quoting Grayned v. City of Rockford, 408 U.S. 104, 108 (1972)). As the Supreme Court observed in Grayned:

> Vague laws offend several important values. . . . Vague laws may trap the innocent by not providing fair warning. . . . A vague law impermissibly

---

[38] As an alternative argument, Frese also contends that "to the extent [Garrison v. Louisiana, 379 U.S. 64 (1964),] holds that a criminal defamation law complies with the First Amendment if it includes an actual malice requirement, the case was wrongly decided." See Pl.'s Obj. to Mot. to Dismiss (doc. no. 14) at 12 n.5. At oral argument, Frese acknowledged that this court lacks the authority to overturn Supreme Court precedent (to the extent Garrison holds as such), but nevertheless advances the argument to preserve the ability to challenge Garrison on appeal.

[39] Def.'s Mot. to Dismiss Mem. (doc. no. 11-1) at 12 (quoting N.H. Rev. Stat. 644:11).

delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application. . . . [And] where a vague statute abuts upon sensitive areas of basic First Amendment freedoms, it operates to inhibit the exercise of those freedoms. Uncertain meanings inevitably lead citizens to steer far wider of the unlawful zone . . . than if the boundaries of the forbidden areas were clearly marked.

408 U.S. at 108.

"A statute can be impermissibly vague for either of two independent reasons. First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement." Hill v. Colorado, 530 U.S. 703, 732 (2000) (citing City of Chicago v. Morales, 527 U.S. 41, 56– 67 (1999)); accord URI Student Senate v. Town of Narragansett, 631 F.3d 1, 13 (1st Cir. 2011). "Although the doctrine focuses both on actual notice to citizens and arbitrary enforcement, [the Supreme Court has] recognized . . . that the more important aspect of vagueness doctrine is not actual notice, but the other principal element of the doctrine — the requirement that a legislature establish minimal guidelines to govern law enforcement." Kolender v. Lawson, 461 U.S. 352, 358 (1983) (quoting Smith v. Goguen, 415 U.S. 566, 574 (1974)); accord Butler v. O'Brien, 663 F.3d 514, 520 (1st Cir. 2011).

In the First Amendment context, the potential for arbitrary suppression of free speech draws "enhanced concerns." Butler, 663 F.3d at 514. As such, when a law threatens to inhibit "the right of free speech or of association, a more stringent vagueness test . . . appl[ies]." Holder v. Humanitarian Law Project, 561 U.S. 1, 19 (2010); see also Nat'l Org. for Marriage v. McKee, 649 F.3d 34, 62 (1st Cir. 2011) (explaining that in view of the interest against arbitrary enforcement, "the Constitution requires a 'greater degree of specificity' in cases involving First Amendment rights" (citation omitted)).

Additionally, the Supreme Court has expressed less tolerance of enactments with criminal rather than civil penalties "because the consequences of imprecision are qualitatively" more severe.  See Hoffman Estates, 455 U.S. at 499.

"'[P]erfect clarity and precise guidance[, however,] have never been required even of regulations that restrict expressive activity.'"  United States v. Williams, 553 U.S. 285, 304 (2008) (quoting Ward v. Rock Against Racism, 491 U.S. 781, 794 (1989)).  "Because 'words are rough-hewn tools, not surgically precise instruments[,] . . . some degree of inexactitude is acceptable in statutory language. . . .  [R]easonable breadth in the terms employed by an ordinance does not require that it be invalidated on vagueness grounds.'"  Draper v. Healey, 827 F.3d 1, 4 (1st Cir. 2016) (quoting URI Student Senate, 631 F.3d at 14).  Additionally, "the [Supreme] Court has recognized that a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed."  Hoffman, 455 U.S. at 499.

Applying the principles here, Frese has sufficiently alleged that N.H. Rev. Stat. 644:11 may be unconstitutionally vague.  The court's vagueness concerns are two-fold.  First, the criminal defamation statute arguably fails to provide "people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits" and what speech is acceptable.  Hill, 530 U.S. at 732; see also United States v. Paz-Alvarez, 799 F.3d 12, 28 (1st Cir. 2015) (stating that a statute cannot criminalize conduct "in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application'" (citations omitted)).  Briefly put, the statute repeats parts of the common law definition of defamation, see Restatement (Second) of Torts § 559, comment b, which the Alaska Supreme Court in Gottschalk v. Alaska found "falls far short of the reasonable precision necessary to define criminal conduct."  575 P.2d 289,

292 (Alaska 1978) (finding unconstitutional a statute making it a misdemeanor for "[a] person who willfully speaks, writes, or in any other manner publishes defamatory or scandalous matter concerning another with intent to injure or defame him," including any statement which would tend to hold another "up to public hatred, contempt or ridicule"). Even when construing the criminal defamation statute in line with its "knowing" scienter requirement, the statute may still not adequately delineate what speech must be known to have the tendency "to expose any other living person to public hatred, contempt or ridicule." See Goguen, 415 U.S. at 580 (rejecting contention that limiting a statute criminalizing the contemptuous treatment of the U.S. flag to intentional conduct would "clarify what constitute[d] contempt, whether intentional or inadvertent").

The State's cited authorities involving the Controlled Substances Act, see 21 U.S.C. § 812, do not persuade the court otherwise at this Rule 12(b) procedural posture. In each of the cases cited, there was no question as to what constituted a controlled or illegal substance: each illegal substance was listed in a statutory schedule. See, e.g., United States v. Mire, 725 F.3d 665, 674 (7th Cir. 2013) (rejecting an as-applied notice challenge to the Controlled Substances Act because the government was required to demonstrate that the defendant "had actual knowledge that khat—fresh or dried— contain[ed] a controlled substance"). In contrast, exactly what speech a person knows will "tend to expose any other living person to public hatred, contempt or ridicule" may not be so easily determined in a diverse, pluralistic nation. See Ashton v. Kentucky, 384 U.S. 195 (1966) (holding that Kentucky's common law crime of criminal libel was unconstitutionally void, as no court case had redefined the crime's sweeping language in understandable terms, leaving prosecution decisions to be made on a case to case basis); see also Tollett v. United States, 485 F.2d 1087, 1097 (8th Cir. 1973) (voiding as vague

statute punishing "libelous, scurrilous, defamatory words" written on the outside of an envelope").

Second, Frese has sufficiently pleaded that the criminal defamation statute may be prone to arbitrary enforcement. Frese alleges that, "[o]n information and belief, individuals throughout New Hampshire routinely violate the criminal defamation statute, but [he] was arrested and prosecuted because he criticized law enforcement officials." As clarified by his objection, Frese urges this court infer that because the statute "gives law enforcement far too much discretion in deciding whom to prosecute,"[40] the motivation to prosecute criminal defamation is often political.[41] At the pre-discovery stage, this inference, though sparsely supported by the complaint, suffices.

In assessing a facial challenge to a statute, courts may consider not just the "words of a statute," but also "their context" and "their place in the overall statutory scheme." Davis v. Mich. Dep't of Treasury, 489 U.S. 803, 809, 1 (1989); see also In re Consol. Freightways Corp. of Del., 564 F.3d 1161, 1165 (9th Cir. 2009) (stating that courts must "construe th[e] provision [at issue] with the statutory scheme in which it is embedded"). In Manning v. Caldwell, for example, the Court of Appeals for the Fourth Circuit found that "[t]he integrated structure" of a challenged statutory scheme permitting civil

---

[40] See Compl. (doc. no. 1) at 2.

[41] See Pl.'s Obj. to Mot. to Dismiss Mem. (doc. no. 14) at 18-25. Frese devotes a substantial portion of his objection to studies and surveys that are not incorporated into the complaint. See e.g., id. ("Another study identified 23 criminal defamation prosecutions or threatened prosecutions for the period from 1990–2002, 12 of which were deemed "political," and 20 of which involved public figures or issues of public controversy.") These discussions, while helpful to understanding Frese's larger case, are disregarded for purposes of evaluating the sufficiency of his complaint. See Graf v. Hosp. Mut. Ins. Co., 754 F.3d 74, 76 (1st Cir. 2014) ("'Ordinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein . . . .'" (quoting Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001))).

interdiction of "habitual drunkards" supported the conclusion that the statute was quasi-criminal in nature. 930 F. 3d 264, 273 (4th Cir. 2019) (en banc). See also Ayotte v. Planned Parenthood of Northern New England, 546 U.S. 320, 329 (2006) (explaining in a facial challenge that "when confronting a constitutional flaw in a statute," courts should strive "to enjoin only the unconstitutional applications of a statute while leaving other applications in force . . . or to sever its problematic portions while leaving the remainder intact" (internal citations omitted)).

As discussed above,[42] New Hampshire's distinctive criminal process may exacerbate the potential for arbitrary or selective prosecutions. With his complaint, Frese incorporated records from the New Hampshire Judicial Branch evidencing how infrequently criminal defamation charges have been brought in each New Hampshire district court."[43] Although these records do not identify the complained-about speech, Frese's case is not the first reported decision of a municipal police department that prosecuted an individual who criticized one of its officers. See Nevins v. Mancini, No. 19-cv-119, 1993 WL 764212, at *1–2 (D.N.H. Sept. 3, 1993) (McAullife, J.) (Bivens actions in which the plaintiff alleged the Bennington Police Department unlawfully threatened and then prosecuted the plaintiff for criminal defamation after he sent complaints to state officials about the conduct of one of its officers). At oral argument, the Assistant State Attorney General could not provide more detail or substance to these records. Nor could he point to any formal guidance instructing state prosecutors, municipal police departments, or the courts on how to apply New Hampshire's criminal

---

[42] See supra at 18-20.

[43] See Compl. ¶ 8; Courts Chapter 91-A Response (doc. no. 1-1) (judicial branch records for criminal defamation cases, including 2012 charge).

defamation statute to potentially violative speech.[44]  Answers to these questions may emerge on a more developed record.

Although some criminal defamation prosecutions may collapse on close scrutiny, as was the case with Frese in 2018, this fact does not negate the risk of an excessively discretionary scenario created by the statutory language challenged here.  Frese's encounters with prosecutions under the statute highlight several of these risks.  As such, the discretion afforded to police departments to prosecute misdemeanors, taken together with the criminal defamation statute's sweeping language, may produce more unpredictability and arbitrariness than the Fourteenth Amendment's Due Process Clause permits.  This is not to say that New Hampshire's criminal defamation statute is unconstitutional on its face.  But in this preliminary, pre-discovery procedural posture, the court declines to rule as a matter of law that it is not.  It therefore denies the motion to dismiss Frese's void-for-vagueness claim.

## IV.  <u>Conclusion</u>

For the above-stated reasons, the court finds Frese has sufficiently pleaded standing and an arguable void-for-vagueness claim.  The State's motion to dismiss is denied.[45]

---

[44] At the hearing, the court further pressed the State's counsel on what kinds of proof would be necessary to prove a criminal defamation case before a judge (since individuals prosecuted for criminal defamation have no right to a jury).  Counsel responded that it would depend on the case, and that while a defendant's admission that they knew their speech was false and defamatory would suffice, counsel could not rule out a criminal defamation case built on indirect evidence.  The court then noted that in such cases, determining whether showed an utterance was defamatory would then depend on the unconstrained values of the factfinder.

[45] Doc. no. 11.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge


Dated:  October 25, 2019

cc:   Brian M. Hauss, Esq.
      Emerson J. Sykes, Esq.
      Henry Kleentowicz, Esq.
      John M. Greabe, Esq.
      Lawrence A. Vogelman, Esq.
      Gilles R. Bissonnette, Esq.
      Lawrence Edelman, Esq.
      Robecca D. Ricard, Esq.