UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

|  |  |  |
|---|---|---|
| ROBERT FRESE, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Case No. 1:18-cv-1180-JL |
| | ) | |
| GORDON J. MacDONALD, | ) | |
| in his official capacity only as | ) | |
| Attorney General of the | ) | |
| State of New Hampshire, | ) | |
| | ) | |
| Defendant | ) | |

**MOTION FOR RECONSIDERATION OF
ORDER DENYING MOTION TO DISMISS**

Defendant Gordon J. MacDonald, in his official capacity only as Attorney General of the State of New Hampshire (the "Attorney General"), by his counsel, the Office of the Attorney General, moves for reconsideration, the Order (Doc. # 19) (the "October 25 Order") denying the Attorney General's Motion to Dismiss having been based on "manifest error[s] of law". L.R. 7.2(d). In support hereof, the Attorney General states as follows:

1. Plaintiff Robert Frese ("Mr. Frese") asserts, via a ***facial*** challenge, that RSA 644:11 [Criminal Defamation] is unconstitutionally vague. Complaint (Doc. # 1), *passim.*

2. As discussed in *Saucedo v. Gardner*, 335 F. Supp. 3d 202 (D.N.H. 2018), "'[t]he Supreme Court has articulated two formulations of the standard for assessing facial challenges to statutes.'" *Id.* at 213, *quoting Libertarian Party of N.H. v. Gardner*, 843 F.3d 20, 24 (1st Cir. 2016). These "two formulations" are laid out as follows:

> In *United States v. Salerno*, 481 U.S. 739 (1987), the Court held that a facial challenge can only succeed where the plaintiff 'establishes that **no set of circumstances exists under which the Act would be valid**.' *Id*. Alternatively, a plaintiff bringing a facial challenge to a statute must establish that it **lacks any 'plainly legitimate sweep.'** *Hightower v. City of Boston*, 693 F.3d 61, 77 (1st Cir. 2012). The First Circuit recently relied on the latter formulation in a ballot-access case. *See Gardner*, 843 F.3d at 24. *But see Pharm. Research & Mfrs. of America v. Concannon*, 249 F.3d 66 (1st Cir. 2001) (citing *Salerno* test favorably).

*Id*. (emphasis supplied)

3. The *Saucedo* Court went on to state that "[t]hese standards may obscure the relevant inquiry, however, as they could be taken to suggest that a court's task is to 'conjure up' hypothetical situations 'in which application of the statute might be valid.'" *Id*., *quoting United States v. Sup. Ct. of N.M.*, 839 F.3d 888, 917 (10th Cir. 2016).

4. "But, as courts have noted, the Supreme Court 'has often considered facial challenges simply by applying the relevant constitutional test to the challenged statute, without trying to dream up whether or not there exists some hypothetical situation in which ***application*** of the statute might be ***valid***.'" *Id., quoting Bruni v. City of Pittsburgh*, 824 F.3d 353, 363 (3d Cir. 2016) (collecting cases) (emphasis supplied).

5. Notably, as regards this Court's October 25 Order, the converse is likewise true – that "identified instances of a statute's ***misapplication*** do not tell us whether the law is ***unconstitutional in every application***." *Agnew v. Government of the District of Columbia*, 920 F.3d 49, 60 (D.C. Cir. 2019) (emphasis supplied), *citing City of Houston v. Hill*, 482 U.S. 451, 458 (1987) and *Salerno*, 481 U.S. at 745.

6. Thus, as this Court stated in *Saucedo*, "'[a] facial challenge is best understood as a challenge to <u>**the terms of the statute, not hypothetical applications,**</u> and is resolved

simply by applying the relevant constitutional test to the challenged statute.'" *Saucedo*, 336 F. Supp. 3d at 214 (emphasis supplied). That is to say, it is immaterial whether discretionary judgments on enforcement of the challenged statute are made by police prosecutors, by county attorneys or by the Office of the Attorney General. *See Agnew*, 920 F.3d at 60 ("A law may … require law enforcement officers to use their discretion without being unconstitutionally vague. Enforcing criminal laws necessarily 'requires the exercise of some degree of police judgment.'"), *quoting Grayned v. City of Rockford*, 408 U.S. 104, 113 (1972). For that matter, the statute's validity does not depend on whether it is enforced in New Hampshire or in Illinois, New York or Idaho. What is exclusively at issue is "the terms of the statute," *id*., which may be "unconstitutionally vague if, applying the rules for interpreting legal texts, its meaning 'specifie[s] no standard of conduct … at all.'" *United States v. Bronstein*, 849 F.3d 1101, 1108 (D.C. Cir. 2017) (upholding a criminal prohibition against "mak[ing] a harangue or oration, or utter[ing] loud, threatening or abusive language in the Supreme Court Building or grounds"), *quoting Coates v. Cincinnati*, 402 U.S. 611, 614 (1971) and *citing Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 n. 7 (1982) ("setting forth the distinction articulated in *Coates* as describing what 'the complainant must prove' *** to 'sustain such a challenge'").

7. In *Bronstein*, the defendants were charged with violating 40 U.S.C. § 6134, styled as "Firearms, fireworks, speeches, and objectionable language in the Supreme Court Building and grounds," which declares:

> It is unlawful to discharge a firearm, firework or explosive, set fire to a combustible, make a harangue or oration, or utter loud, threatening or abusive language in the Supreme Court Building or grounds.

3

*Id*. at 1103-04.  The charges arose out of dissident political speech uttered on "April Fools Day of 2015," after the U.S. Supreme Court was gaveled into session for oral argument, when the *Bronstein* defendants rose from their seats in the courtroom and declared,

- "We rise to … Money is not speech.  One person, one vote!"

- "Justices, is it not your duty to protect our right to self-government?  The first … overturn *Citizens United*.  One person one vote."

- "Justices, is it not your job to ensure free, fair elections?"

and

- *in song*, "We who believe in freedom shall not rest; we who believe in freedom shall not rest."

Upon a challenge by the defendants, the district court, among other things, "struck the[ ] words ['harangue' and 'oration'] from § 6134 as unconstitutionally vague."  *Id*. at 1105-06.

*Reversing* the district court order, the D.C. Circuit stated:

- "Whether 'harangue" or 'oration' is unconstitutionally vague within § 6134 involves only **'pure questions of law.'**" *Id*. at 1106 (emphasis supplied), *citing Hodge v. Talkin*, 799 F.3d 1145, 1149 (D.C. Cir. 2015).

- "A law is vague when 'it fails to give ordinary people fair notice of the conduct it punishes or [is] **so standardless** that it invites arbitrary enforcement.'" *Id*., *citing Johnson v. United States*, ___ U.S. ___, 135 S. Ct. 2551, 2556 (2015).

- "To provide fair 'fair notice,' '[g]enerally, a legislature need do nothing more than enact and publish the law, and afford the citizenry a reasonable opportunity to familiarize itself with its terms and to comply. *Id*. at 1107, *quoting Texaco, Inc. v. Short*, 454 U.S. 516, 532 (1982).

- "'Even trained lawyers may find it necessary to consult legal dictionaries, treatises, and judicial opinions before they may say with any certainty what some statutes may compel or forbid.  All the Due Process Clause requires is that the law gives sufficient warning that

4

- men may conduct themselves so as to avoid that which is forbidden.'"
  *Id.*, *quoting Rose v. Locke*, 423 U.S. 48, 50 (1975).

- "As far as we can tell, no Supreme Court decision has ever struck a statute as unconstitutionally vague merely because it uses terms that, at the moment, may not be widely used." *Id.*, *citing* Peter W. Low and Joel S. Johnson, *Changing the Vocabulary of the Vagueness Doctrine*, 101 Va. L. Rev. 2051, 2055 (2015) ("We are aware of no United States Supreme Court case where a statute has been held unconstitutionally vague because socialization notice was lacking.").

- "When interpreting a statutory term, we are not concerned with vagueness in the sense that the term 'requires a person to conform his conduct to an imprecise but comprehensible normative standard,' whose satisfaction may vary depending upon whom you ask. *See, e.g., Coates*, 402 U.S. at 614. Rather, a statute is unconstitutionally vague if, applying the rules for interpreting legal texts, **its meaning 'specifie[s]' 'no standard of conduct … at all**.'" *Id.*; *see also Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 n. 7 (1982); *** *Int'l Harvester Co. of Am. v. Kentucky*, 234 U.S. 216, 221 (1914) (holding a law is void for vagueness when it offers no 'standard of conduct that [was] *possible to know*" (emphasis added in *Bronstein*)).

*Id.* at 1106-08 (emphasis in bold type supplied).

8. After laying out the foregoing standards of review, the *Bronstein* Court went on examine the actual "terms of the statute" – making "harangue[s]" and "oration[s]" unlawful – and found them to be sufficiently clear (read: constitutional) within the decorum-disturbing *context* of neighboring language (*e.g.*, "firearm[s]," "firework[s]," "explosive[s]," and "set[ting] first to a combustibles). *Id.* at 1108-1111 ("The longstanding principles of statutory interpretation hold that 'a word is known by the company it keeps.'"), *quoting Jarecki v. G.D. Searle & Co.*, 367 U.S. 303, 307 (1961). Viewing the "text of the statute" *in context* did not permit a departure from the words of the legislation or an inquiry

into the means of its enforcement by the justice system or its instrumentalities, including police and prosecutors.

9. But contrary to the foregoing Supreme Court prescriptions, as laid out by this Court in *Saucedo* and by the D.C. Circuit in *Bronstein*, the October 25 Order declares that the Court may go beyond "the terms of the statute" and, upon "a more developed [factual] record," assess the means and methods of its enforcement, including but not limited to **(a)** a review of the relative capacity of police prosecutors to make judgments and **(b)** the content of such "formal guidance," if any, "instructing state prosecutors, municipal police departments, or the courts on how to apply [the] criminal defamation statute to potentially violative speech." October 25 Order at 23-25. This was a "manifest error of law." L.R. 7.2(d).

10. The asserted justification for this departure from settled law appears at page 22 of the October 25 Order, wherein the Court states:

> In assessing a facial challenge to a statute, courts may consider not just the "words of a statute," but also "their **context**" and "their place in the overall statutory scheme."

October 25 Order at 22 (emphasis supplied), *quoting Davis v. Mich. Dep't. of Treasury*, 489 U.S. 803, 809 (1989). But notably, *Davis* is not a vagueness case. Rather, it is one exclusively of statutory construction, and its discussion of the **"context"** of "the words of a statute" and "their place in the overall statutory scheme" is simply a reference to that familiar, "fundamental canon," not to matters external to the legislation, including any alleged infirmities in the justice system. *Davis*, 489 U.S. at 809.

6

11. The same is true for the second case – *In re Consol. Freightways Corp. of Del.*, 564 F.3d 1161 (9th Cir. 2009) – that the October 25 Order cites as justification for its departure from *Saucedo* and *Bronstein* and their Supreme Court antecedents. *In re Consol. Freightways*, like *Davis*, is a case involving statutory construction that has nothing to do with a vagueness challenge.

12. Likewise, neither the third case, *Manning v. City of Roanoke*, 930 F.3d 264 (4th Cir. 2019), nor the fourth, *Ayotte v. Planned Parenthood of Northern New England*, 546 U.S. 320, 329 (2006), stands for the proposition that this Court may depart from "the terms of the statute," *Saucedo*, 335 F. Supp. 3d at 214, consider the instant challenge as something other than a "'**pure question of law**,'" *Bronstein*, 849 F.3d at 1106 (emphasis supplied), *quoting Hodge*, 799 F.3d at 1149, undertake to create "a more developed [factual] record," or assess the means and methods of the statute's enforcement.[1]

13. Thus, we turn to the "terms of the statute" and address whether "its meaning 'specifie[s] no standard of conduct … at all.'" *Bronstein*, 843 F.3d at 1108, *quoting Coates*,

---

[1] The October 25 Order recites that "[a]t oral argument, the Assistant State Attorney General could not provide more detail or substance to … records" of prosecutions provided by the Plaintiff via New Hampshire Judicial Branch reporting. October 25 Order at 23. While the Court's inquiry did not properly bear on the analysis or outcome of the Motion to Dismiss, counsel recalls informing the Court that the Office of the Attorney General had, in fact, conducted such a study of each such identified prosecution and its disposition during the course of the last ten years, which disclosed that the Plaintiff's premise – that the statute is a political tool that effectively suppresses dissident speech – is unfounded. Counsel informed the Court that, to the contrary, these prosecutions addressed, for the most part, personal attacks by private individuals upon on the morals, modesty, decency, and character of other private individuals. Counsel even pointed out and acknowledged the summer law clerk who assembled the study for the Department of Justice, as he was present in the courtroom. The study was available for presentation at hearing had the Court requested it.

402 U.S. at 614. New Hampshire's criminal defamation statute, RSA 644:11, I, which imposes a criminal penalty only if one:

- "*purposely*[2] communicate[s] to [another] person …information which he *knows*[3] to be *false* and

- *knows* will tend to expose [a] living person to public hatred, contempt or ridicule[,]"

is clear in meaning to the "ordinary person." *Bronstein*, 849 F.3d at 1107. Nowhere in the initiating Complaint (Doc. # 1) or in the Objection (Doc. # 14) to the Motion to Dismiss (Doc. # 11) does the Plaintiff examine the words or otherwise analyze the "text of the statute."

14. Likewise, the October 25 Order contains no such examination or analysis of the "text of the statute," except as follows:

> Briefly put, the statute repeats parts of the common law definition of defamation, *see* Restatement (Second) of Torts § 559, comment b, which the Alaska Supreme Court in ***Gottschalk v. Alaska*** found 'falls far short of the reasonable precision necessary to define criminal conduct.' 575 P.2d 289, 292 (Alaska 1978) (finding unconstitutional a statute making it a misdemeanor for '[a] person who willfully speaks, writes, or in any other manner publishes defamatory or scandalous matter concerning another with intent to injury or defame him,' including any statement which would tend to hold another 'up to public hatred, contempt or ridicule.').

October 25 Order at 20-21 (emphasis supplied).

---

[2] Under RSA 626:2, II(a) [General Requirements of Culpability – "Purposely"], "[a] person acts purposely with respect to a material element of an offense when his conscious object is to cause the result or engage in the conduct that comprises the element."

[3] Under RSA 626:2, II(b) [General Requirements of Culpability – "Knowingly"], "[a] person acts knowingly with respect to conduct or to a circumstance that is a material element of an offense when he is aware that his conduct is of such a nature or that such circumstances exist."

15. In fact, the Alaska statute addressed itself to "defamatory" or "scandalous" speech, making no mention of the terms used in the New Hampshire statute. *Gottschalk*, 575 P.2d at 293. Still, the Alaska Supreme Court turned to the common law definition of "defamatory" speech – "any statement which would tend to disgrace or degrade another, to hold him up to public hatred, contempt or ridicule, or to cause him to be shunned or avoided" – and stated that "[i]n our view this falls short of the reasonable precision necessary to define criminal conduct." *Id*. at 292. A review of *Gottschalk* discloses that the Alaska Court did *not* reach this conclusion because the meaning of the statute's words was too indefinite or imprecise to be "discerned," *see Bronstein*, 849 F.3d at 1107, but **rather for *one reason only*** – because criminal liability depended on **"the values of the listener"** which, particularly in a multi-cultural society, the speaker conceivably might not know, *id*. at 293, rather than on **what is in the mind of the speaker**. Under the New Hampshire statute, it is the *speaker* who must *know* that his *knowingly* false statement "will tend to expose [another] to public hatred, contempt or ridicule." RSA 644:11, I. There is otherwise *no criminal liability*. The distinction – *i.e.*, the presence of a scienter requirement or, put differently, its absence in *Gottschalk* – is dispositive and confirms the validity of the New Hampshire statute. Having held otherwise, the October 25 Order amounts to manifest error.

16. In this regard, the October 25 Order states only that "exactly what speech a person knows will 'tend to expose any other living person to public hatred, contempt or ridicule' may not be so easily determined in a diverse, pluralistic nation." October 25 Order at 21. Of course, the speaker knows only what he knows and, under RSA 644:11, I, is not

9

held to know such "values of the listener" as he does not know. *Compare Gottschalk*, 575 P.2d at 293.

17. The October 25 Order should properly be vacated and the Motion to Dismiss (Doc. # 11) thereupon granted.

WHEREFORE, the Attorney General respectfully requests that this Honorable Court:

A. Reconsider the October 25 Order;

B. Upon reconsideration, grant the Motion to Dismiss (Doc. # 11); and

C. Grant such other and further relief as justice may require.

Respectfully submitted,

GORDON J. MacDONALD, in his official capacity only as Attorney General of the State of New Hampshire

By his attorney,

GORDON J. MacDONALD
ATTORNEY GENERAL

Date: November 25, 2019

By: /s/ Lawrence M. Edelman
Lawrence M. Edelman, Bar # 738
Assistant Attorney General
Rebecca D. Ricard, Bar #265503
Attorney
Civil Bureau
New Hampshire Dept. of Justice
33 Capitol Street
Concord, NH 03301
(603) 271-3650
lawrence.edelman@doj.nh.gov
rebecca.ricard@doj.nh.gov

**Certificate of Service**

I hereby certify that a copy of the foregoing Motion for Reconsideration was served this 25th day of November, 2019, on all counsel of record, via the ECF System.

                                                     /s/ Lawrence M. Edelman
                                                     Lawrence M. Edelman