UNITED STATES DISTRICT COURT
for the
DISTRICT OF NEW HAMPSHIRE

|  |  |
|---|---|
| ROBERT FRESE<br><br>    Plaintiff,<br><br>v.<br><br>GORDON MACDONALD, in his official capacity only as Attorney General of the State of New Hampshire,<br><br>    Defendant. | Case No.: 1:18-cv-01180-JL |

## PLAINTIFF'S OBJECTION TO MOTION FOR RECONSIDERATION OF ORDER DENYING MOTION TO DISMISS

Plaintiff Robert Frese, by and through his counsel, hereby files this Objection to the Motion for Reconsideration filed by Defendant Attorney General Gordon MacDonald (the "State").

### ARGUMENT

A motion for reconsideration is "an extraordinary remedy which should be used sparingly." *Palmer v. Champion Mortg.*, 465 F.3d. 24, 30 (1st Cir. 2006) (quoting 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2810.1 (2d ed. 1995)). A motion for reconsideration is not a "vehicle for revisiting a party's case and rearguing theories previously advanced and rejected." *Id.*; *see also Nw. Bypass Grp. v. U.S. Army Corps of Eng'rs*, 552 F. Supp. 2d 137, 145 (D.N.H. 2008) (holding that the *Palmer* standard for motions for reconsideration under Federal Rules of Civil Procedure 59 and 60 is not substantively different from the standard for motions for reconsideration under Local Rule 7.2).

Rather, the movant must demonstrate that the challenged order was based on a "manifest error of fact or law." Local Rule 7.2(d).

The State has not met that demanding standard here. Frese claims that New Hampshire's Criminal Defamation Law, N.H. Rev. Stat. 644:11, is unconstitutionally vague and violates the First Amendment. In its October 25, 2019 Order denying the State's motion to dismiss, Dkt. No. 19, the Court held that Frese has stated a claim on both of his vagueness theories: (1) that the Act fails to provide adequate notice of what speech is prohibited; and (2) that the Act encourages arbitrary and discriminatory enforcement. To succeed on its motion for reconsideration, the State must demonstrate that the Court was wrong on *both* counts. But the State fails to demonstrate that *either* holding was based on a manifest error of law.[1]

**I.     The Act fails to provide adequate notice about what speech is prohibited.**

First, the Court stated that the criminal defamation statute, which repeats the common law definition of defamation, "arguably fails to provide 'people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits' and what speech is acceptable." Order at 20. The Court explained that "exactly what speech a person knows will 'tend to expose any other living person to public hatred, contempt or ridicule' may not be so easily determined in a diverse, pluralistic nation." *Id.* at 21. The Court cited the Alaska Supreme Court's decision in *Gottschalk v. State*, which held that this common law defamation standard "falls far short of the reasonable precision necessary to define criminal conduct." *Id.* at 20–21 (quoting *Gottschalk v. State*, 575 P.2d 289, 292 (Alaska 1978)).

The State faults the Court's citation to *Gottschalk*, arguing that "the presence of a scienter requirement [in the New Hampshire statute] or, put differently, its absence in *Gottschalk*—is

---

[1] The State has not moved for reconsideration of the Court's decision that Frese has standing to challenge the Criminal Defamation Law.

dispositive and confirms the validity of the New Hampshire statute." Mot. to Reconsider at 9. But the Court expressly considered, and rejected, the State's scienter arguments in its Order. As the Court explained, "[e]ven when construing the criminal defamation statute in line with its 'knowing' scienter requirement, the statute may still not adequately delineate what speech must be known to have the tendency 'to expose any other living person to public hatred, contempt or ridicule.'" Order at 21 (citing *Smith v. Goguen*, 415 U.S. 566, 580 (1974)).

In fact, the criminal defamation statute in *Gottschalk* itself required the government to demonstrate that the defendant acted "with intent to injure or defame" the victim. *Gottschalk*, 575 P.2d at 290 n.1. And the criminal defamation law in *Ashton v. Kentucky* applied to maliciously false statements that were "*calculated* to create disturbances of the peace." 384 U.S. 195, 198 (1966) (emphasis added). Nonetheless, in both cases the criminal defamation laws were held unconstitutionally vague.

If anything, New Hampshire's Criminal Defamation Law is vaguer than the law at issue in *Gottschalk*, because the New Hampshire statute defines the "public" to include "any professional or social group of which the victim of the defamation is a member." N.H. Rev. Stat. 644:11(II). In other words, even seemingly innocuous statements may be *criminally* defamatory under New Hampshire's law if the speaker knew they would tend to call the victim into disrepute with respect to *any* professional or social group of which the victim is a member. Like the criminal defamation law in *Ashton*, it "involves calculations as to the boiling point of a particular person or a particular group, not an appraisal of the nature of the comments per se." 384 U.S. at 200. Requiring people to make such calculations on pain of criminal prosecution does not provide sufficient notice about what speech is prohibited.

## II. The Act authorizes or encourages arbitrary enforcement.

Second, the Court held that "Frese has sufficiently pleaded that the criminal defamation statute may be prone to arbitrary enforcement." Order at 22. Considering the Criminal Defamation Law in the context of the statutory enforcement scheme, the Court observed that "the discretion afforded to police departments to prosecute misdemeanors, taken together with the criminal defamation statute's sweeping language, may produce more unpredictability and arbitrariness than the Fourteenth Amendment's Due Process Clause permits." *Id.* at 24; *see also Agnew v. Gov't of D.C.*, 920 F.3d 49, 55 (D.C. Cir. 2019) (holding that laws "whose application turns on subjective judgments or preferences either of officers or of third parties" are likely to "invite[] arbitrary and discriminatory enforcement"). Indeed, the Court pointed out, "Frese's case is not the first reported decision of a municipal police department that prosecuted an individual who criticized one of its officers." Order at 23 (citing *Nevins v. Mancini*, No. CIV. 91-119-M, 1993 WL 764212, at *1–2 (D.N.H. Sept. 3, 1993) (McAullife, J.)).[2]

The State argues that it was manifest error for the Court to consider anything other than the text of the Criminal Defamation Law while evaluating Frese's facial vagueness challenge. This argument was also considered and rejected by this Court. *Id.* at 22. Indeed, the protections of the Due Process Clause and the First Amendment cannot be reduced to semantics. To assess a facial vagueness challenge, the court must consider the challenged provisions "in their context and with a view to their place in the overall statutory scheme." *Manning v. Caldwell*, 930 F.3d

---

[2] The Court also noted that, in cases where the defendant does not admit the defamatory nature of their statements such that intent must be inferred on the basis of indirect evidence, the determination about whether a statement is defamatory would effectively "depend on the unconstrained values of the factfinder." Order at 24 n.44. *See also Smith*, 415 U.S. at 580 n.26 ("[T]he court held that the jury could infer intent merely from Goguen's conduct. This is apparently also a holding that the jury must find contemptuous intent under the statute, although the requirement amounts to very little since it is so easily satisfied.").

264, 273 (4th Cir. 2019) (quoting *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989)). This principle is not limited to matters of statutory interpretation, as the State would have it, but extends even to the consequences of statutory enforcement. *Id.* (holding that the challenged statute permitting civil interdiction of "habitual drunkards" must be considered quasi-criminal in nature, even though the statute itself did not define criminal penalties, because it was " a necessary predicate for imposing the increased criminal penalties set forth in the other statutes addressing interdiction").

The Court was therefore correct to consider the particular characteristics of New Hampshire's misdemeanor criminal process in determining whether the Criminal Defamation Law entrusts too much discretion "to the moment-to-moment judgment of the policeman on his beat." *Kolender v. Lawson*, 461 U.S. 352, 360 (1983) (quoting *Smith*, 415 U.S. at 575). The fact that New Hampshire authorizes municipal police departments to initiate prosecutions under the Criminal Defamation Law "without input or approval from a state-employed and legally trained prosecutor," the fact that "criminal defamation defendants are not entitled to a trial by jury," and the fact that "state law does not afford indigent criminal defamation defendants the right to court-appointed counsel," Order at 3 (collecting authorities), all support the conclusion that the broad and ill-defined sweep of the Criminal Defamation Law is at least susceptible to arbitrary and discriminatory enforcement. It was not manifest error for the Court to take these laws and policies into account.

Furthermore, the Court did not err by allowing the parties to develop a factual record regarding the Criminal Defamation Law's enforcement in New Hampshire. Experience may inform a court's assessment about whether a statute is susceptible to arbitrary or discriminatory enforcement. Thus, courts addressing vagueness claims often consider how the challenged

5

statute has been and will be enforced. In *Johnson v. United States*, for example, the Supreme Court supported its conclusion that the Armed Career Criminal Act "invites arbitrary enforcement" by citing a string of inconsistent Supreme Court and lower court decisions attempting to interpret the statute. 135 S. Ct. 2551, 2557–60 (2015). In *Kolender*, the Court supported its conclusion that California's anti-loitering statute was susceptible to arbitrary enforcement by citing the State's representations at oral argument about how the statute conferred discretion on police officers. 461 U.S. at 360. And in *Gottschalk*, the Alaska Supreme Court supported its conclusion that the state's criminal defamation law "create[d] the potential for arbitrary, uneven and selective enforcement" by citing numerous scholarly studies demonstrating that criminal defamation laws have historically been subject to a "pattern of selective enforcement." 575 P.2d at 294–95 & n.13.[3]

The State observes that a statute is not facially vague just because the plaintiff identifies a particular instance where the law has been, or could be, misapplied. Mot. to Reconsider at 2. Conversely, however, the Supreme Court's decisions "squarely contradict the theory that a vague provision is constitutional merely because there is some conduct that clearly falls within the provision's grasp." *Johnson*, 135 S. Ct. at 2561 (observing that "a law prohibiting grocers from charging an 'unjust or unreasonable rate' [was held] void for vagueness—even though charging someone a thousand dollars for a pound of sugar would surely be unjust and unreasonable"). In other words, the test in a facial vagueness challenge is *not* whether there is some speech or conduct to which the statute plainly applies, but rather whether the law in general provides "fair

---

[3] The State relies heavily on the D.C. Circuit's decision in *United States v. Bronstein* for the proposition that a facial vagueness challenge "involves only pure questions of law." 849 F.3d 1101, 1106 (D.C. Cir. 2017) (citation and internal quotation marky omitted). However, *Bronstein* made that statement in the context of holding that *de novo* review was appropriate. *Id. Bronstein* did not purport to hold that a court may never consider enforcement history in adjudicating a facial vagueness challenge.

notice or warning" about what it prohibits, and whether the legislature "set reasonably clear guidelines for law enforcement officials and triers of fact in order to prevent 'arbitrary and discriminatory enforcement.'" *Smith*, 415 U.S. at 572–73; *see also Montenegro v. N.H. Div. of Motor Vehicles*, 166 N.H. 215, 221 (2014) (regulation allowing the DMV to reject a vanity license plate that was "offensive to good taste" was unconstitutionally vague because it authorizes or even encourages arbitrary and discriminatory enforcement).

"A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application." *Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972). Key to this analysis is whether the challenged provision provides sufficiently definite "guidelines to govern law enforcement." *Smith*, 415 U.S. at 574; *see also Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1051 (1991) ("The question is . . . whether the Rule is so imprecise that discriminatory enforcement is a real possibility."). As the Supreme Court made clear in *Johnson*, a history of inconsistent or selective application may support the conclusion that a law is so indeterminate that it practically invites arbitrary or discriminatory enforcement. 135 S. Ct. at 2557–60. The Court is entitled to consider such evidence in evaluating Frese's facial vagueness challenge.

## CONCLUSION

For the foregoing reasons, the Court should deny the State's motion for reconsideration.

Respectfully submitted,

ROBERT FRESE,

By and through his attorneys affiliated with the American Civil Liberties Union of New Hampshire Foundation and the American Civil Liberties Union Foundation,

*/s/ Gilles R. Bissonnette*
Gilles R. Bissonnette (N.H. Bar. No. 265393)
Henry R. Klementowicz (N.H. Bar No. 21177)
AMERICAN CIVIL LIBERTIES UNION OF NEW HAMPSHIRE
Concord, NH 03301
Tel.: 603.224.5591
gilles@aclu-nh.org
henry@aclu-nh.org

Brian Hauss*
Emerson Sykes*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Tel.: 212.549.2500
bhauss@aclu.org
esykes@aclu.org

John M. Greabe (N.H. Bar No. 18706)
296 Gage Hill Road
Hopkinton, NH 03229
Tel.: 603.513.5191
jgreabe@yahoo.com

Lawrence A. Vogelman, Esq. (N.H. Bar No. 10280)
NIXON, VOGELMAN, SLAWSKY & SIMONEAU, P.A.
77 Central Street
Manchester, NH 03101
Tel.: 603.669.7070
lvogelman@davenixonlaw.com

* Admitted *pro hac vice*

Date:   December 9, 2019

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served this 9th day of December, 2019, on all counsel of record, via the ECF System.

*/s/ Gilles Bissonnette*
Gilles Bissonnette