UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Robert Frese

     v.                         Civil No. 18-cv-1180-JL

Gordon J. MacDonald,
In his official capacity only as Attorney
General of the State of New Hampshire

**MEMORANDUM ORDER**

       This case concerns the constitutionality of New Hampshire's criminal defamation statute. Late last year, the court denied the State of New Hampshire's motion to dismiss because the plaintiff, Robert Frese, sufficiently alleged his standing to sue and because the State failed to show that Frese's allegations were legally insufficient to state a constitutional claim. See Fed. R. Civ. P. 12(b)(1), (6).[1] Dissatisfied with this result, the State now asks this court to reconsider that denial on the grounds that the decision was based on purported "manifest errors of law." See LR 7.2(d).

       To determine whether a statute is unconstitutionally vague, courts must first discern the statute's scope by evaluating the statute's language and giving the words used their ordinary meaning. In doing so, courts need not ignore evidence that may explain the meaning of statutory text. Moreover, in assessing the meaning of statutes enacted by a state legislature, federal courts may consider any limiting constructions proffered by a state court or enforcement agency. The State's motion to reconsider disregards these rules of construction and instead introduces new arguments and authority that it could have (and should have) developed in support of its motion to dismiss. For these reasons,

---

[1] See Oct. 25 Order (doc. no. 19).

the State has failed to adequately support its request for the extraordinary remedy of reconsideration. The motion for reconsideration is denied.

**I.    Background**

New Hampshire's criminal defamation statute, N.H. Rev. Stat. § 644:11, provides: "A person is guilty of a class B misdemeanor if he purposely communicates to any person, orally or in writing, any information which he knows to be false and knows will tend to expose any other living person to public hatred, contempt or ridicule."[2] Persons charged with criminal defamation face a fine of up to $1,200, see id. § 651:2(IV)(a), have no right to a trial by jury, see State v. Foote, 149 N.H. 323, 324 (N.H. 2003), and are not afforded the right to court-appointed counsel if they are indigent, see State v. Westover, 140 N.H. 375, 378 (1985).

Although prosecutions for criminal defamation in New Hampshire are not common, plaintiff Robert Frese has been prosecuted twice under § 644:11. In 2012, the Hudson Police Department charged and arrested Frese for comments he posted on the online platform Craigslist about the owner of a local life coaching business.[3] Without counsel, Frese pleaded guilty to the charges and was fined $1,488, with $1,116 conditionally suspended.[4] Then, in 2018, the Exeter Police Department arrested and charged Frese for comments he pseudonymously posted under an online newspaper article about a retiring Exeter police officer Frese considered corrupt.[5] This arrest caused

---

[2] As used in the statute, "public" includes any professional or social group of which the victim of the defamation is a member. See id. § 644:11(II).

[3] See Compl. (doc. no. 1) ¶ 9; Hudson Prosecution Docs. (doc. no. 1-2) at HUD013-14.

[4] See Compl. ¶ 10. This fine included up to a 24% penalty assessment. See id.

[5] See Compl. ¶¶ 11-25; Exeter Prosecution Docs. (doc. no. 1-3) at EXE019-21, 91-92.

public controversy, prompting the N.H. Attorney General's Office to opine that there was no probable cause that Frese violated the criminal defamation statute.[6]

At the end of 2018, Frese, fearing future arrests or prosecutions for speech criticizing law enforcement and other public officials, filed a complaint requesting that the court declare the criminal defamation statute to be overbroad and void for vagueness. The State, in turn, moved to dismiss on standing and sufficiency grounds.[7]

In September 2019, the court held oral argument, at which it gave the parties ample opportunity to supplement their written submissions. At the hearing, the court probed the parties about how the statute's historical enforcement impacted the constitutional questions presented – an issue addressed at no point in the State's briefing. Additionally, the court allowed the parties to submit supplement briefing on this question. While Frese submitted a supplemental brief,[8] the State neither submitted its own supplemental authority nor responded to Frese's supplemental authority.

After further considering the parties' written and oral presentations, the court denied the State's motion to dismiss. In doing so, the court emphasized that the parties (and the public) should not interpret the preliminary decision as holding "that New Hampshire's criminal defamation statute is unconstitutional on its face."[9] Rather, the court's holding was limited to the narrow issue before it under Rule 12(b)(6): that on the

---

[6] See NHDOJ June 4, 2018 Mem. (doc. no. 1-3) at EXE008-013.

[7] State's Mot. to Dismiss (doc. no. 11). Oral argument was delayed until September to accommodate the parties' availability and this court's busy trial schedule. See June 11, 2019 Endorsed Order granting Frese's Mot. to Continue.

[8] Frese's Notice of Supp. Authority (doc. no. 18).

[9] Oct. 25 Order at 24.

3

record and arguments briefed by the parties, the State had failed to show that Frese had not stated a claim as a matter of law.[10]

## II. Applicable Legal Standard

"Motions for reconsideration are poorly named." Nw. Bypass Grp. v. U.S. Army Corps of Eng'rs, 552 F. Supp. 2d 137, 144 (D.N.H. 2008) (Woodcock, J.). "The title suggests that whenever a litigant is disappointed, he is free to ask the court to mull it over again, this time favorably to his position, presumably on the theory that by mere repetition — perhaps raising the level of rhetoric — the court will see it his way." Id. This view is incorrect.

A motion for reconsideration asks for "an extraordinary remedy," which courts grant "sparingly." See, e.g., Biltcliffe v. CitiMortgage, Inc., 772 F.3d 925, 930 (1st Cir. 2014). To succeed, the moving party must "present newly discovered evidence," show "there has been an intervening change in the law," or "demonstrate that the original decision was based on a manifest error of law or was clearly unjust." United States v. Allen, 573 F.3d 42, 53 (1st Cir. 2009); see also Palmer v. Champion Mortg., 465 F.3d. 24, 30 (1st Cir. 2006); LR 7.2. To that end, a motion for reconsideration "does not provide a vehicle for a party to undo its own procedural failures and it certainly does not allow a party to introduce new evidence or advance new arguments that could or should have been presented to the district court prior to judgment." Marks 3–Zet–Ernst Marks GMBH & Co. KG v. Presstek, Inc., 455 F.3d 7, 15–16 (1st Cir. 2006). "Unless the court has misapprehended some material fact or point of law, [a motion for reconsideration] is

---

[10] Id. at 24-25.

normally not a promising vehicle for revisiting a party's case and rearguing theories previously advanced and rejected." Palmer, 465 F.3d at 30.

### III. Analysis

The State seeks reconsideration of this court's October 25 Order for one reason:

> [T]his Court committed "manifest error" when it held that the "context" of "the words of [RSA 644:11]" and "their place in the overall statutory scheme" was . . . a call to generate "a more developed ~~factual~~ record" on matters *external* to the legislation, including any alleged infirmities in the justice system — notably, the relative capacity of police prosecutors to make sophisticated judgments and the content of "formal guidance," if any, "instructing state prosecutors, municipal police departments, or the courts on how to apply [the] criminal defamation statute to potentially violative speech."[11]

This request for reconsideration fails for the following reasons.

### A. The State's argument misconstrues the plain language of this court's October 25 Order

Throughout its briefing for reconsideration, the State portrays the October 25 Order as "declar[ing] that the Court may go beyond 'the terms of the statute'" and consider "identified instances of a statute's misapplication" in conducting a constitutional vagueness analysis.[12] But at no point did the court explain its ruling in these terms.

---

[11] State's Reply to Mot. for Recons. (doc. no. 24) at 2. The court observes that in framing its argument, the State misquotes this court's October 25, 2019 Order. On pages 22-23 of the Order, the court posed rhetorical questions about the statute's enforcement before stating that "[a]nswers to these questions may emerge on a more developed record." At no point does the Order's vagueness analysis use the word "factual." Such mistakes and misquotes (the court does not consider them to be affirmative misrepresentations) were not confined to the State's Reply. See State's Mot. for Recons. (doc. no. 21) at 6 (stating that the Order "declare[d] that the Court may go beyond 'the terms of the statute,'" when the Order contained no such quote). The court assumes that the State's counsel, held in high regard by the court, did not and will not intentionally misstate the court's words in an argument for reconsideration or otherwise.

[12] See, e.g., State's Mot. for Recons. at 2, 6; State's Reply to Mot. for Recons. at 2 ("[I]t is not the Court's task 'to dream up whether or not there exists some hypothetical situation in which

The court instead focused its analysis on the text of the criminal defamation statute and found that Frese had sufficiently alleged the text "may be unconstitutionally vague," despite the statutory requirement that the speaker "know" the speech in question would tend to defame.[13] As stated in the October 25 Order, Frese had sufficiently alleged that § 644:11:

> arguably fails to provide "people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits" and what speech is acceptable . . . [because] the statute repeats parts of the common law definition of defamation, which the Alaska Supreme Court in Gottschalk v. Alaska found "falls far short of the reasonable precision necessary to define criminal conduct." 575 P.2d 289, 292 (Alaska 1978) . . . . Even when construing the criminal defamation statute in line with its "knowing" scienter requirement, the statute may still not adequately delineate what speech must be known to have the tendency "to expose any other living person to public hatred, contempt or ridicule."[14]

Additionally, the court found that Frese had alleged that the statute "may be prone to arbitrary enforcement" because it may "'give[] law enforcement far too much discretion,'" including political considerations, "'in deciding whom to prosecute.'"[15]

In making these preliminary findings, the court considered the State's counterargument about culpable intent, but found the State had weakly developed it. "In each of the [drug] cases cited [by the State's counsel], there was no question as to what constituted a controlled or illegal substance: each illegal substance was listed in a

---

application of the statute might be valid [or not].'" (quoting Saucedo v. Gardner, 335 F. Supp. 3d 202, 214 (D.N.H. 2018))).

[13] Oct. 25 Order at 20.

[14] Id. at 20-21 (internal citations omitted).

[15] Id. at 22. Regarding this second concern, the court observed that this theory of vagueness had "sparse[] support [in] the complaint," but was sufficiently pled for purposes of surviving a Rule 12(b) motion to dismiss. Id.

6

statutory schedule."[16] In contrast, New Hampshire's criminal defamation statute does not, for example, list prohibited topics of speech, making "exactly what speech a person knows will 'tend to expose any other living person to public hatred, contempt or ridicule'" not so easily determinable.[17]

It was only after making these text-based findings that the court opined that "New Hampshire's distinctive criminal process may <u>exacerbate</u> the potential for arbitrary or selective prosecutions" beyond the inherent prosecutorial risks arguably "created by the <u>statutory language</u> challenged."[18] Additionally, the court observed that the State, bearing the burden of persuasion, neither pointed to any New Hampshire cases interpreting the statute's language nor "point[ed] to any formal guidance instructing state prosecutors, municipal police departments, or the courts on how to apply New Hampshire's criminal defamation statute to potentially violative speech" (an inquiry which, as discussed <u>infra</u> Part C, was proper). Without such information, the court recognized the possibility, but did not conclude, that the statute's text may lack the precision necessary to prevent "excessively discretionary" enforcement, as exemplified by Frese's specific encounters with the police.

Also notable is what the court did not find. Despite the State's assertions to the contrary, the court did not find that Frese's case was a purely facial challenge or that Frese had waived the ability to also raise as-applied theories;[19] it did not find that that the

---

[16] <u>Id.</u> at 23.

[17] <u>Id.</u> (internal citation omitted).

[18] <u>Id.</u> (emphasis added).

[19] <u>See</u> <u>generally</u> <u>Copeland v. Vance</u>, 893 F.3d 101, 112 (2d Cir. 2018), <u>cert. denied,</u> 139 S. Ct. 2714 (2019) (discussing prospective, as-applied vagueness challenges).

7

police's ability to prosecute criminal defamation cases rendered the statute void for vagueness;[20] and it did not find that Frese's remedies were limited to complete statutory invalidation, as opposed to granting partial or "as-applied" invalidation, should he ultimately succeed in this case.[21]

As the movant, the State bore the heavy burden of showing Frese's allegations about the statute's text, as supported by his arguments, were legally insufficient to state a claim of constitutionally impermissible vagueness. See Fed. R. Civ. P. 12(b)(6). On the record and arguments briefed by the parties, the State failed to adequately address the text-based concerns raised by Frese. So, the court denied the State's motion to dismiss.

**B.    The State's motion rests on theories and authorities that were not previously briefed**

The State's reconsideration motion interjects new arguments into this vagueness inquiry that could have (and should have) been raised in its prior briefing. For example, the State now contends that in assessing Frese's facial challenge, the court should have utilized the framework applied by the D.C. Circuit Court of Appeals in United States v.

---

[20] Indeed, at oral argument, the court asked the parties, somewhat rhetorically, why it should make any difference that the police can sometimes handle these cases if it's a facial challenge.

[21] See Oct. 25 Order at 22 (citing Ayotte v. Planned Parenthood of Northern New England, 546 U.S. 320, 329 (2006) (explaining in a facial challenge that "when confronting a constitutional flaw in a statute," courts should strive "to enjoin only the unconstitutional applications of a statute while leaving other applications in force . . . or to sever its problematic portions while leaving the remainder intact" (internal citations omitted))).

8

Bronstein[22] and recently articulated by Judge McCafferty in Saucedo v. Gardner,[23] under which the court must disregard identified instances of a statute's misapplication.[24] Additionally, the State argues that the cases supplied by Frese in his supplemental briefing, which were then cited by the court, do not support an inquiry into New Hampshire law enforcement agencies' understanding of the statute. These arguments might have been persuasive if raised prior to the court's decision, but they provide no proper basis for granting reconsideration now.

"Litigation is not a game of hopscotch." Cochran v. Quest Software, Inc., 328 F.3d 1, 11 (1st Cir. 2003). "[A] party may not, on a motion for reconsideration, advance a new argument that could (and should) have been presented prior to the district court's original ruling." Id. It is not enough, for a motion for reconsideration, that a party "merely mention[ed] a possible argument in the most skeletal way, leaving the court to do counsel's work." United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990). Nor is it sufficient to raise an argument for the first time at oral argument. See, e.g., United States v. Leoner-Aguirre, 939 F.3d 310, 319 (1st Cir. 2019), cert. denied, No. 19-6820, 2020 WL 129919 (U.S. Jan. 13, 2020) (deeming such new arguments waived); Conservation Law Found., Inc. v. Cont'l Paving, Inc., No. 16-cv-339, 2016 WL 7116019, at *1 (D.N.H. Dec. 6, 2016). As such, "litigant[s] ha[ve] an obligation 'to spell out [their] arguments

---

[22] 849 F.3d 1101, 1108 (D.C. Cir. 2017) (upholding a criminal prohibition against "mak[ing] a harangue or oration, or utter[ing] loud, threatening or abusive language in the Supreme Court Building or grounds").

[23] 335 F. Supp. 3d 202, 214 (D.N.H. 2018) (explaining that "'[a] facial challenge is best understood as a challenge to the terms of the statute, not hypothetical applications, and is resolved simply by applying the relevant constitutional test to the challenged statute'").

[24] State's Mot. for Recons. at 2-3 (also discussing Agnew v. Gov't of the District of Columbia, 920 F.3d 49, 60 (D.C. Cir. 2019)).

squarely and distinctly'" in their initial briefing "or else forever hold [their] peace." Zannino, 895 F.2d at 17.

Here, the State had ample opportunities to raise its proposed framework before October 25 but declined to do so. Since filing his complaint, Frese has been forthcoming with his goal in this litigation: "He seeks a ruling . . . declaring that [the criminal defamation statute] facially violates the First Amendment."[25] To that end, he included several allegations in his complaint about how criminal defamation statutes are selectively enforced in New Hampshire, as well as other states. Instead of addressing these allegations in its motion papers or explaining why the State believed them to be immaterial, the State simply dismissed them as "an appeal for . . . a more enlightened public policy."[26] Nowhere in the State's motion or its reply did it provide any legal framework for assessing a facial challenge. Nor did it argue that examples of the criminal defamation statute's enforcement were immaterial (much less impermissible) in this court's evaluation of the statute's text. The State was simply silent as to this issue in its papers.

At oral argument, the court, not the State, raised the question of whether a court may look at enforcement practices when assessing facial validity. In response, the State first advanced its argument that a facial challenge does not involve an examination of the process used to enforce the statute, but failed to cite to any authority to support this position. On this basis alone, the court could have held the State to what it argued in its brief. See United States v. Pizarro–Berríos, 448 F.3d 1, 5–6 (1st Cir. 2006) ("We have

---

[25] Compl. at 3.

[26] State's Mot. to Dismiss Mem. (doc. no. 11-1) at 13 (characterizing Frese's arguments as "an appeal for . . . a more enlightened public policy").

consistently held that, except in extraordinary circumstances, arguments not raised in a party's initial brief and instead raised for the first time at oral argument are considered waived." (citing Piazza v. Aponte Roque, 909 F.2d 35, 37 (1st Cir.1990))). Nevertheless, the court invited Frese and the State to supplement their briefing.

Post-argument, Frese's counsel accepted the court's invitation by filing a supplemental memorandum discussing the very cases the State now claims are inapposite. The State's counsel, however, failed to submit a supplemental brief. Furthermore, it filed no brief or objection responding to the authorities discussed in Frese's supplemental memorandum.

Given these opportunities, the State cannot now use its motion for reconsideration to advance positions never raised in writing prior to the denial of its motion to dismiss. The court takes no position on these arguments' merits at this time and may revisit them if raised properly at a later procedural posture. But for purposes of the motion to dismiss, the court considers these arguments waived.

**C.**   **The State seeks to limit the court's authority to interpret a statute's meaning in evaluating a void-for-vagueness claim**

At the core of its argument, the State contends (for the first time in writing, see supra Part B) that it was manifest error of law for the court to consider "the means and methods" of the criminal defamation statute's enforcement, including "the content of such 'formal guidance,' if any, 'instructing state prosecutors, municipal police departments, or the courts on how to apply [the] criminal defamation statute to potentially violative speech.'"[27] The State is mistaken.

---

[27] State's Mot. for Recons. at 6 (quoting Oct. 25 Order at 23-25).

11

As stated by Justice Marshall in a case cited in the State's Reply to its Motion to Dismiss, Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.:

> In evaluating a facial challenge to a state law, a federal court must, of course, consider any limiting construction that a state court or enforcement agency has proffered.

455 U.S. 489, 494 (1982). To that end, the court asked the State's counsel at oral argument if the Attorney General's Office has issued any memorandum interpreting the statute. Neither party could definitively say that no such guidance existed.

Furthermore, in assessing whether a statute is unconstitutionally vague, the court need not ignore all extrinsic evidence of statutory meaning. See Mohegan Tribe v. State of Conn., 638 F.2d 612, 621 (2d Cir. 1980) (explaining that longstanding, contemporaneous executive and administrative interpretation by those entrusted with the enforcement of ambiguous legislation may shed light upon an appropriate construction). When assessing a statute's vagueness, courts regularly apply the rules of statutory construction to determine if the statute's text specifies some standard of conduct. See, e.g., Bronstein, 849 F.3d at 1108 ("applying the rules for interpreting legal texts" to discern whether a statute was void for vagueness); United States v. Lachman, 387 F.3d 42, 50 (1st Cir. 2004) (same). This "interpretive quest begins, but does not end, with the text of the statute." United States v. Yellin (In re Weinstein), 272 F.3d 39, 43 (1st Cir. 2001). Where the statutory text is not plain, courts turn to other tools in their statutory construction kit. See Gundy v. United States, 139 S. Ct. 2116, 2126 (2019), reh'g denied, No. 17-6086, 2019 WL 6257579 (U.S. Nov. 25, 2019) (explaining that a void-for-vagueness challenge requires that the court attempt to interpret a "statute's meaning by looking not to isolated words, but to text in context, [etc.]"); In re Fin. Oversight & Mgmt. Bd. for Puerto Rico, 919 F.3d 121, 128 (1st Cir. 2019), cert. denied sub nom.

Assured Guar. Corp. v. Fin. Oversight Bd., No. 19-391, 2020 WL 129573 (U.S. Jan. 13, 2020). These tools include consideration of any construction given to statutes by the officers charged to execute it. See Kentuckians for Commonwealth Inc. v. Rivenburgh, 317 F.3d 425, 446 (4th Cir. 2003) (considering the practical construction given to a statute by the agencies charged with enforcing the statute); Mohegan Tribe, 638 F.2d at 621-22.

As discussed above, the court applied these rules of construction but found itself wanting a more robust record on how other authorities and enforcement agencies have interpreted N.H. Rev. Stat. § 644:11 or similar speech-restricting statutes. Perhaps the State interpreted the court's dismissal of its motion to dismiss as a precursor to an inevitable ruling invalidating New Hampshire's criminal defamation statute as void for vagueness. If so, the State is mistaken. The court's statements at oral argument, acknowledging the scope and text of the statute as quite limited, should have disabused the State's counsel of that misconception. The court ruled only that the plaintiff's allegations did not fail to state a claim. See Fed. R. Civ. P. 12(b)(6). It did not rule on the merits of the claim.

## IV. Conclusion

"The standard for granting a motion for reconsideration is difficult to meet." Stringer v. Home Depot U.S.A., Inc., No. 16-cv-150, 2018 WL 2943237, at *2 (D.N.H. June 12, 2018) (DiClerico, J.). The State has failed to meet this standard here. For the above-stated reasons, the State's motion for reconsideration is denied.[28]

---

[28] Doc. no. 21.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated: February 14, 2020

cc: Brian M. Hauss, Esq.
     Emerson J. Sykes, Esq.
     Henry Kleentowicz, Esq.
     John M. Greabe, Esq.
     Lawrence A. Vogelman, Esq.
     Gilles R. Bissonnette, Esq.
     Lawrence Edelman, Esq.
     Robecca D. Ricard, Esq.