## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW HAMPSHIRE

_____
                                          )
ROBERT FRESE,                             )
                                          )
          Plaintiff                       )
                                          )
     v.                                   )          Civil No. 1:18-cv-1180-JL
                                          )
GORDON J. MacDONALD,                      )
in his official capacity only as          )
Attorney General of the State             )
of New Hampshire,                         )
                                          )
          Defendant                       )
_____)

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO DISMISS AMENDED COMPLAINT

Defendant Gordon J. MacDonald, in his official capacity only as Attorney General of the

State of New Hampshire, by and through his counsel, the Office of the Attorney General, presents

the following Memorandum of Law in support of his accompanying Motion to Dismiss the

Amended Complaint [Doc. # 31] filed by the Plaintiff, Robert Frese ("Mr. Frese"):

### Introduction

Plaintiff Robert Frese ("Mr. Frese") alleges that he is an "outspoken" individual who has

twice in the course of six years been charged with criminal defamation under RSA 644:11, which

declares that one is "guilty of a class B misdemeanor if he *purposely* communicates to any person,

orally or in writing, any information which he *knows* to be false and *knows* will tend to expose any

other living person to public hatred, contempt or ridicule." RSA 644:11, I [Criminal Defamation]

(emphases supplied) (the "Criminal Defamation Statute").  *See* Amended Complaint, *passim*.

1

Pursuant to RSA 651:2, III, IV [Sentences and Limitations], a person convicted of a Class B misdemeanor may be sentenced to pay a fine not to exceed $1,200, but may not be incarcerated.

While acknowledging, as he must, that "deliberately false and defamatory statements of fact are not protected by the First Amendment," Amended Complaint ¶ 38, Mr. Frese asks this Court, in Count I of his Amended Complaint, to declare that the Criminal Defamation Statute is vague both on its face and as applied, contrary to the Fourteenth Amendment, and that it therefore "'inhibits the exercise of [his First Amendment] freedoms.'" *Id.* ¶ 36, *quoting Grayned v. City of Rockford*, 408 U.S. 104, 109 (1972).   He further contends, in Count II, that the Criminal Defamation Statute is unconstitutional under the First Amendment, because it "criminalizes defamatory speech," *id.* ¶ 44, and because it "criminalizes speech criticizing public officials" *Id.* ¶ 45.   He then asks that the Court (a) "permanently restrain and enjoin [Attorney General MacDonald]" and such other law enforcement officers who may work "in active concert or participation with [him] … from enforcing [the Criminal Defamation Statute]," *id.*, Prayer B, and (b) award him the attorney's fees and costs that he will incur in this endeavor.  *Id.*, Prayers C, D.

## The Facts Alleged in the Amended Complaint

### A.    The Hudson Charge and Conviction

Between February 26 and May 2, 2012, Mr. Frese made "over thirty postings" on Craigslist, lambasting the character and integrity of Mr. Michael Robillard, a certified life coach who promoted his business, Mike Robillard Life Coaching, on that same public Internet forum. Mr. Frese's postings included the following:

> **been molested by Mike Robillard?**
> **(Londonderry)**
>
> Has anyone been molested, bothered, or harassed by a Mike Robillard in Londonderry?

and

**hear about Mike Robillard? (NH)**

Involved in a 'road rage' incident in 2007
distribution of heroin in 2009
charged with willful concealment in 2011
sounds like Mike needs a Life Coach

Amended Complaint, Exhibit B at HUD 13-14, 21-22, 24-25, 62-64.  As his efforts to persuade Mr. Frese to desist proved fruitless, *id*. at HUD 40-46, Mr. Robillard contacted the Hudson Police Department which, in turn, learned upon inquiry of Mr. Frese, that he purposely posted information that he knew to be false and that he did so with a view toward soiling Mr. Robillard's good name, thereby damaging his business.  *Id*. at HUD 14, 22, 27, 29-76.  The Hudson Police Department charged Mr. Frese under the Criminal Defamation Statute.  *Id*. at 3-4, 10, 12.  On August 3, 2012, Mr. Frese appeared before Hon. Thomas E. Bamberger in the 9th Circuit – District Division – Nashua.  Judge Bamberger received Mr. Frese's plea of guilty to the charge, entered a finding of guilty and sentenced him to a fine, suspending most of it on conditions of good behavior and continued engagement with Seacoast Mental Health.  *Id*. at HUD 4-5.

Mr. Frese does not now contend, by the instant Amended Complaint, that as an "outspoken" individual, he (a) merely called things as he saw them or (b) was unaware that casting Mr. Robillard, among other knowing falsehoods, as a heroin dealer would tend to subject his victim to "public hatred, contempt or ridicule."  *See* RSA 644:1, I.

B.     **The Exeter Charge and Its Voluntary Dismissal Two Weeks Later**

Six years after his Hudson conviction, Mr. Frese read a May 4, 2018 article in the *Exeter News-Letter* ("Retiring Exeter officer's favorite role: mentoring youth") that portrayed retiring Exeter Police Officer Dan D'Amato in a favorable light.  Amended Complaint, Exhibit C Part 1 at

EXE 19-21, 25-27, 31, 67; Complaint, Exhibit C Part 2 at 67, 94-98.  On that same day, Mr. Frese, who had virtually continuous exposure to the Exeter Police Department from 2002 to 2018, *id*. at EXE 58-64, published an online comment under the pseudonym "Bob William," stating, as to the heralded officer and youth mentor:

> This is the dirtiest most corrupt cop I have ever had the displeasure of knowing, he has committed perjury, false charges, conspiracy, false reports to law enforcement, along with his known prostitute daughter who went by the name Isabella Soprano and now goes by the name Angela Greene.  Although the truth came out in court he and she were never charged as the 'Blue Wall' of police cover up protected him, and the coward Chief Shupe did nothing about it.  D'Amato has nothing to be proud of and will be missed by no one.  I picked up his drunk wife on a number of occasions and got her home safely.  Good riddance to this creep.

Amended Complaint, Exhibit C Part 2 at EXE 91.  After Chief Shupe prevailed upon the *Exeter News-Letter* to remove the "Bob William" comment*, id*. at EXE 084-85, Mr. Frese submitted another comment, now under the *nom de plume* "Bob Exeter," stating, in part:

> D'Amato is the most corrupt cop I have known.  He and his known prostitute daughter Isabella Soprano who now goes by the name Angela Greene made false complaints against me which were dismissed in court.  The coward Chief Shupe did nothing about it and covered up for this dirty cop.  This is the most corrupt bunch of cops I have ever known that they continue to lie in court and harass people.  D'Amato will be missed by no one, and I would not trust this guy around children or anyone else.

*Id*. at EXE 92; *see also*, *id.* at EXE 93.

During a recorded interview at the Exeter Public Safety Complex, Mr. Frese revealed no information suggesting knowledge that his online comments were false.  Amended Complaint, Exhibit C Part 1 at EXE 20, 26.  To the contrary, he insisted they were true.  *Id*.  Indeed, Mr. Frese contended that "other than Ofc. Gagnon[,] every cop from Exeter he has been in court with has lied" and that Chief Shupe "covered up for D'Amato and his daughter."  *Id.*  Still, on the apparent strength of Chief Shupe's denial that any sort of cover up of D'Amato criminality, if any, had

taken place, and in the absence of additional evidence, *see id*., an Exeter Police Detective executed

a May 23, 2018 Complaint under the Criminal Defamation Statute, charging that Mr. Frese:

> purposely communicated on a public website, in writing, information which he
> knows to be false and knows will tend to expose another person to public contempt,
> by posting that Chief Shupe covered up for a dirty cop.

*Id*. at EXE 029.  Mr. Frese was scheduled to be arraigned before the 10th Circuit Court – District

Division – Brentwood on July 10, 2018.  *Id*.

Twelve (12) days later, on June 4, 2018, the Attorney General's Civil Rights Unit prepared

a six-page Memorandum, stating that the Criminal Defamation Statute met and indeed *exceeded*

the "actual malice" standard set forth in *New York Times v. Sullivan*, 376 U.S. 254 (1964) (civil)

and *Garrison v. Louisiana*, 379 U.S. 64 (1964) (criminal),[1] discussed *infra*, *but* that in Mr. Frese's

case, there was no "probable cause … that he made the statements at issue [– that D'Amato was

"dirty" and that Shupe covered it up –] with knowledge that they were false."  Amended

Complaint, Exhibit C Part 1 at EXE 11.  Three days later, on June 7, 2018, the Exeter Police

Department voluntarily dismissed the charge.  Amended Complaint ¶25.

### The Standards of Review

**A.**     **Fed. R. Civ. P. 12(b)(1) [lack of subject matter jurisdiction]**

"When a district court considers a 12(b)(1) motion [here, on Article III standing grounds],

it must credit the plaintiff's well-pled factual allegations and draw all reasonable inferences in

plaintiff's favor."  *Merlonghi v. United States*, 620 F.3d 50, 54 (1st Cir. 2010), *citing Valentin v.*

*Hospital Bella Vista*, 254 F.3d 358, 363 (1st Cir. 2001).  "The district court may also 'consider

---

[1] The Civil Rights Unit's Memorandum pointed out that the Criminal Defamation Statute required
a *purposeful* communication made with *knowledge* of (a) its falsity and (b) its "tend[ency] to
expose" the victim to "to public hatred, contempt or ridicule," RSA 644:1, I, and thus did not adopt
"the *Garrison* definition of 'actual malice' in its entirety, omitting 'with reckless disregard of
whether it was false or not.'"  Amended Complaint, Exhibit C Part 1 at EXE 11.

whatever evidence has been submitted, such as the depositions and exhibits submitted.'"  *Id.*, *quoting Aversa v. United States*, 99 F.3d 1200, 1210 (1st Cir. 1996).

### B.    Fed. R. Civ. P. 12(b)(6) [failure to state a claim]

"To survive a motion to dismiss" under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Sepúlveda-Villarini v. Dep't of Educ.*, 628 F.3d 25, 29 (1st Cir. 2010) ("The make-or-break standard … is that the combined allegations, taken as true, must state a plausible, not merely a conceivable, case for relief.").  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," requiring the plaintiff to show "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678, *citing Twombly*, 550 U.S. at 556.

A plaintiff must state facts in support of "each material element necessary to sustain recovery under some actionable legal theory." *Campagna v. Mass. Dep't of Envtl. Prot.*, 334 F.3d 150, 155 (1st Cir. 2003).  But, a "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than **labels and conclusions**, and a formulaic recitation of the elements of a cause of action will not do[.]" *Twombly*, 550 U.S. at 555 (internal quotations omitted) (emphasis supplied).  The court should "reject unsupported conclusions or interpretations of law." *Estate of Bennett v. Wainwright*, 548 F.3d 155, 162 (1st Cir. 2008).

If, upon stripping out the factually unsupported "labels and conclusions," the allegations in the complaint, taken as true, fail to state a cognizable claim for relief, the motion to dismiss should be granted. *See Rivera v. Rhode Island*, 402 F.3d 27, 33 (1st Cir. 2005).

<u>**Argument**</u>

**I.      Mr. Frese lacks standing to bring his claims.**

Article III of the Constitution ensures that federal courts are not 'roving commissions assigned to pass judgment on the validity of the nation's laws,' but instead address only specific "cases" and "controversies.'" *Thomas v. City of Baxter Springs*, 369 F. Supp.2d 1291, 1295 (D. Kan. 2005), *quoting Citizens Concerned for Separation of Church and State v. City and County of Denver*, 628 F.2d 1289, 1295 (10th Cir. 1980).  Thus, the Court should dismiss this lawsuit, pursuant to Fed. R. Civ. P. 12(b)(1) [lack of subject matter jurisdiction], because "accept[ing] as true all well-pleaded factual averments in [his] … [amended] complaint and indulg[ing] all reasonable inferences therefrom in his favor[,]" *Katz v. Pershing, LLC*, 672 F.3d 64 (1st Cir. 2012), *quoting  Deniz v. Mun'y of Guaynabo*, 285 F.3d 142, 144 (1st Cir. 2002), Mr. Frese has failed to set forth *facts* that meet *his burden* of establishing the requirement of *standing – i.e.*, a "case[ ]" or "controvers[y]" under Article III, Section 2, Clause 1 of the United States Constitution.  *See Raines v. Byrd*, 521 U.S. 811, 818 (1997) ("[plaintiff], based on [his] complaint, must establish that [he] ha[s] standing to sue."); *Blum v. Holder*, 744 F.3d 790, 795 (1st Cir. 2014), *quoting Clapper*, 568 U.S. 398, 411-12 (2013) ("'[t]he party invoking federal [court] jurisdiction bears the burden of establishing standing.'").

In order to establish standing, Mr. Frese's Amended Complaint must have "'alleged such a personal stake in the outcome of th[is] controversy as to warrant [his] invocation of federal court jurisdiction and to justify exercise of the court's remedial powers on his behalf.'" *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975), *quoting Baker v. Carr*, 396 U.S. 186, 204 (1962).  The Amended Complaint must show "an injury [that is] 'concrete, particularized, and actual or imminent[.]'" *Clapper*, 568 U.S. at 409, *quoting Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149

(2010).  Simply put, "[a] threatened injury must be 'certainly impending'" and "[a]llegations of possible future injury do not satisfy the requirements of Article III."  *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990), *quoting Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979).

In *Mangual v. Rotger-Sabat*, 317 F.3d 45 (1st Cir. 2003), the First Circuit addressed the matter of ***pre***-enforcement standing to assert First Amendment challenges to criminal legislation, specifying "two types" of qualifying "injuries":

> In challenges under the First Amendment, **two types of injuries** may confer Article III standing without necessitating that the challenger actually undergo a criminal prosecution. The first is when "***the plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by [the] statute,*** *and there exists a credible threat of prosecution.*" *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979). *** The second type of injury is when a plaintiff is "chilled from exercising her right to free expression in order to avoid enforcement consequences." *N.H. Right to Life PAC v. Gardner*, 99 F.3d 8, 13 (1st Cir. 1996).

*Id.* at 56 (emphasis supplied).  Both Mr. Frese, in his Objection [Doc. # 14] to the original Motion to Dismiss [Doc. # 11], and the Court, in its October 25, 2019 Order [Doc. # 19] denying that motion, acknowledge that this case concerns only the first type of pre-enforcement standing.  *See* Objection [Doc. # 14] at 4; Oct. 15, 2019 Order [Doc. # 19] at 11.

Mr. Frese's claim of standing does not leave the gate, as deliberately false and defamatory speech, the *only* "conduct … proscribed by [RSA 644:11, the 'Criminal Defamation Statute']," is *not* even "*arguably* affected with a constitutional interest."  *Babbitt*, 442 U.S. at 298 (emphasis supplied); Amended Complaint [Doc. # 1] ¶ 38 (conceding that "deliberately false and defamatory statements of fact are not protected by the First Amendment…."); *see United States v. Alvarez*, 567 U.S. 709, 717-19 (2012) (false speech alone is protected; but false *and* defamatory speech,

like fraud, true threats and perjury, falls outside the protection of the First Amendment).[2]   The

cases previously cited by Mr. Frese in support of his claim of standing – *Babbit, Mangual,* and

*Susan B. Anthony List* – do not support his position.

In *Babbitt*, the United Farm Workers ("UFW") challenged the Arizona Agricultural

Employment Relations Act, which criminalized non-defamatory speech promoting consumer

boycotts of agricultural products (*i.e.*, "[i]nduc[ing] or encourag[ing] the ultimate consumer of any

agricultural product to refrain from purchasing, consuming or using such agricultural product by

the use of dishonest, untruthful and deceptive publicity.").[3]   *Babbitt*, 442 U.S. at 301.   There could

be no doubt that, unlike Mr. Frese, the UFW had standing because its arsenal for the advancement

of farm laborers' interests included the encouragement of consumer boycotts (*e.g.*, the lettuce and

grape boycotts). Indeed, the UFW "intend[ed] to engage in a course of conduct arguably [read:

certainly] affected with a constitutional interest, but proscribed by [the] statute." *Babbitt*, 442 U.S.

at 298; *see Alvarez*, 567 U.S. at 717 (Stolen Valor Act, criminalizing false declaration that one is

a Congressional Medal of Honor recipient, invalidated because "[a]bsent from those few categories

---

[2] It is worthy of incidental note that the Amended Complaint, citing *Hustler Magazine v. Falwell*, 485 U.S. 46 (1988), offers the fleeting suggestion that "even false and defamatory statements may be protected speech if they constitute satire, parody, or rhetorical hyperbole." Amended Complaint ¶ 37. *Hustler* concerned a "'parody' of an advertisement for Campari Liqueur that contained the name and picture of [Reverend Jerry Falwell] and was entitled 'Jerry Falwell talks about his first time.'" *Hustler*, 485 U.S. at 48. It identified Reverend Falwell as the issue's "featured celebrity" and included an "alleged 'interview' with him in which he state[d] that his 'first time' was during a drunken incestuous rendezvous with his mother in an outhouse." *Id*. The parody, aimed at calling Reverend Falwell out as a "hypocrite," included "the disclaimer, 'ad parody—not to be taken seriously.'" *Id*. Further, "[t]he magazine's table of contents also list[ed] the ad as "Fiction; Ad and Personality Parody." *Id*. The Court stated that *Hustler Magazine* had not engaged in false and defamatory speech because "that speech could not reasonably have been interpreted as stating actual facts" about Reverend Falwell. *Id*. at 50. Simply put, while the Criminal Defamation Statute addresses false and defamatory statements of *fact*, knowingly made, *Hustler* does not.

[3] Violation of the Act, a class 1 misdemeanor, carried a term of imprisonment of up to six months. *Babbitt*, 442 U.S. at 301, *citing* Ariz. Rev. Stat. Ann. § 23-1392.

where the law allows content-based regulation of speech [*e.g.*, deliberately false and defamatory statements, fraud, perjury], is any general exception to the First Amendment for false statements.").

Unlike Mr. Frese, the Plaintiff in *Mangual* did not seek standing under *Babbitt*, but rather under the rubric set forth in *N.H. Right to Life*, wherein one is "chilled from exercising [his] right to free expression in order to avoid enforcement consequences." *Mangual*, 317 F.3d at 57-58, *citing N.H. Right to Life PAC v. Gardner*, 99 F.3d 8, 13 (1st Cir. 1996).  Still, Mr. Mangual would have satisfied the standing requirements of *Babbitt* because he challenged a Puerto Rico Libel Law that criminalized constitutionally protected *truthful* speech. *See Garrison*, *v. Louisiana*, 379 U.S. 64, 72 (1964) ("[T]he interest in private reputation is overborne by the larger public interest, secured by the Constitution, in the dissemination of truth."), *citing State v. Burnham*, 9 N.H. 34, 42 (1837) ("If upon a lawful occasion for making a publication, he has published the truth, and no more, there is no sound principle which can make him liable, even if he was actuated by express malice.").

Tomás De Jesús Mangual, a reporter assigned to investigate public corruption, challenged Puerto Rico's Libel Law, which prescribed criminal penalties – up to six months in prison – for those who would "publicly dishonor … a natural or juridical person" or "blacken the memory of one who is dead." *Mangual*, 317 F.3d 45, 51 (1st Cir. 2014), *citing* 33 P.R. Laws Ann. § 4101 [Libel]. The speech need *not* have been *false* for the prosecution to make out its *prima facie* criminal case.  *Id.*  Further, as noted by the First Circuit, § 4102 [Truth as defense] of the Libel Law "[d]id not permit an unqualified affirmative defense of truth, but only [did] so if the victim '[was] a public officer,'" and even then, only if "'the charge made refer[red] to the performance of his duties.'" *Id.* at 67, *quoting* 33 P.R. Laws Ann. § 4102.  "Otherwise, truth [was] only a defense

10

if the [speaker] 'had good intention and justifiable ends.'"  *Id*.  The Court concluded that "[t]he section 4102 defense of truth [was] not broad enough to encompass all constitutionally protected statements[,]" so that it was "constitutionally deficient."  *Id*.  That is to say, unlike the Criminal Defamation Statute, the Puerto Rico Libel Law would punish the *truthful* statements that investigative reporter Mangual might publish – *i.e.*, *protected* speech under the First Amendment. *See Garrison*, 379 U.S. at 72.  Simply put, unlike Mr. Frese, Mr. Mangual would have had standing under *Babbitt* because he "intend[ed] to engage in a course of conduct arguably [again, read: certainly] affected with a constitutional interest, but proscribed by [the] statute." *Babbitt*, 442 U.S. at 298.

In *Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014), political advocacy organizations challenged an Ohio law that criminalized false statements about candidates during political campaigns. The relevant provisions of Ohio Rev. Code Ann. § 3517.21(B) [Unfair Political Campaign Activities] "ma[d]e it a crime for any person to '[m]ake a false statement concerning the voting record of a candidate or public official,' § 3517.21(B)(9), or to '[p]ost, public, circulate, distribute, or otherwise disseminate a false statement concerning a candidate, either knowing the same to be false or with reckless disregard of whether it was false or not,' § 3517.21(B)(10)."  *Id*. at 152.  Violation of the Ohio false statement statute was punishable by, among other things, up to six months in prison. *Id*. at 153, *citing* Ohio Rev. Code Ann. §§ 3599.40, 3517.992(V).  A second offense commanded disenfranchisement.  *Id*., *citing* Ohio Rev. Code Ann. §§ 3599.39.

Without doubt, the Ohio law swept in all manner of speech that, while false, was not defamatory.  *See Alvarez*, 567 U.S. at 717.  That is to say, the law criminalized protected speech. The Supreme Court found that the advocacy organizations had pre-enforcement standing to

challenge the law because, unlike Mr. Frese, they "intended future conduct … [that was] *certainly* 'affected with a constitutional interest[,]'" but proscribed by the statute. *Id*. at 162 (emphasis supplied), *quoting Babbitt*, 442 U.S. at 298.

Unlike the laws in *Babbit, Mangual,* and *Susan B. Anthony List*, the Criminal Defamation Statute – proscribing the "purposeful communication" of "information [that the speaker] knows to be false and knows will tend to expose any other living person to public hatred, contempt or ridicule" – does not sweep in speech that is, by any measure, "arguably affected with a constitutional interest."  *Id*.; *Alvarez*, 567 U.S. at 717-19.  As a consequence, Mr. Frese cannot satisfy the *Babbitt* test on which he avowedly relies for pre-enforcement standing.  Thus, he cannot meet *his burden* of establishing the requirement of standing – *i.e.*, a case or controversy under Article III, Section 2, Clause 1 of the United States Constitution – and the case must be dismissed. *See Raines v. Byrd*, 521 U.S. 811, 818 (1997) ("[plaintiff], based on [his] complaint, must establish that [he] ha[s] standing to sue."); *Blum v. Holder*, 744 F.3d 790, 795 (1st Cir. 2014), *quoting Clapper v. Amnesty International USA*, 568 U.S. 398, 411-12 (2013) ("'[t]he party invoking federal [court] jurisdiction bears the burden of establishing standing.'").

## II.     First Circuit precedent precludes Mr. Frese from maintaining facial or as-applied void-for-vagueness claims under the Fourteenth Amendment.

In Count I of his Amended Complaint, styled as "42 U.S.C. § 1983 – DUE PROCESS CLAUSE," Mr. Frese brings what purport to be facial and as-applied challenges to the Criminal Defamation Statute on vagueness grounds under the Fourteenth Amendment Due Process Clause. *See* Amended Complaint ¶ 36 ("RSA 644:11 is unconstitutionally vague, both *on its face* and *as applied* in the context of New Hampshire's system for prosecuting Class B Misdemeanors.") (emphasis supplied).  In *Draper v. Healey*, 827 F.3d 1 (1st Cir. 2016), the First Circuit held, in an opinion written by Justice Souter, that a claim that a statute is "vague in violation of due process"

is "eligible only for as-applied, not facial, review." *Id.* at 3, *citing United States v. Zhen Shou Wu*, 711 F.3d 1, 15 (1st Cir. 2013) ("Outside of the First Amendment context, we consider whether a statute is vague as applied *to the particular facts at issue* . . . ." ) (emphasis in original).  This holding necessarily precludes Mr. Frese's facial claim under the Fourteenth Amendment, and Count I must be dismissed to the extent it advances such a claim.

Count I further fails to advance a viable as-applied vagueness claim under the Fourteenth Amendment.  As noted, the First Circuit held in *Zhen Shou Wu* that "[o]utside the First Amendment context, we consider 'whether a statute is vague as applied to *the particular facts at issue*,' for a defendant 'who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.'"  711 F.3d at 15, *quoting Holder v. Humanitarian Law Project*, 561 U.S. 1, 18–19 (2010).[4]  In Count I, Mr. Frese does not allege that RSA 644:11 is unconstitutional *as applied to him*, but rather "as applied in the context of New Hampshire's system for prosecuting Class B misdemeanors."  Amended Complaint ¶ 36.  He goes on to allege that "it is often almost impossible for a [hypothetical] speaker to determine in advance whether their speech would be considered unprotected defamation or protected expression."  *Id.* ¶ 38.  Mr. Frese has therefore failed to state a viable as-applied vagueness challenge under the Fourteenth Amendment, as set forth in *Zhen Shou Wu*.  Accordingly, Count I must also be dismissed to the extent it purports to bring such a challenge.

---

[4] There are *no* "*particular facts*" as to Mr. Frese that may be deemed to be "*at issue*" in this case, as the Amended Complaint does not present facts suggesting he is presently in jeopardy on account of speech that is the subject of a pending charge under the Criminal Defamation Statute.

III.   **Count II of the Amended Complaint fails to state a facial void-for-vagueness claim under the First Amendment.**

As discussed in *Saucedo v. Gardner*, 335 F. Supp. 3d 202 (D.N.H. 2018), "'[t]he Supreme Court has articulated two formulations of the standard for assessing facial challenges to statutes.'" *Id*. at 213, *quoting Libertarian Party of N.H. v. Gardner*, 843 F.3d 20, 24 (1st Cir. 2016).  These "two formulations" are laid out as follows:

> In *United States v. Salerno*, 481 U.S. 739 (1987), the Court held that a facial challenge can only succeed where the plaintiff 'establishes that **no set of circumstances exists under which the Act would be valid**.' *Id*.  Alternatively, a plaintiff bringing a facial challenge to a statute must establish that it **lacks any 'plainly legitimate sweep.'** *Hightower v. City of Boston*, 693 F.3d 61, 77 (1st Cir. 2012).  The First Circuit recently relied on the latter formulation in a ballot-access case.  *See Gardner*, 843 F.3d at 24.  *But see Pharm. Research & Mfrs. of America v. Concannon*, 249 F.3d 66 (1st Cir. 2001) (citing *Salerno* test favorably).

*Id*. (emphasis supplied).

The *Saucedo* Court observed, however, that "[t]hese standards may obscure the relevant inquiry …, as they could be taken to suggest that a court's task is to 'conjure up' hypothetical situations 'in which application of the statute might be valid.'"  *Id*., *quoting United States v. Sup. Ct. of N.M.*, 839 F.3d 888, 917 (10th Cir. 2016).  "But, as courts have noted, the Supreme Court 'has often considered facial challenges simply by applying the relevant constitutional test to the challenged statute, without trying to dream up whether or not there exists some hypothetical situation in which ***application*** of the statute might be ***valid***.'"  *Id., quoting Bruni v. City of Pittsburgh*, 824 F.3d 353, 363 (3d Cir. 2016) (collecting cases) (emphasis supplied).

Thus, "'[a] facial challenge is best understood as a challenge to **the terms of the statute, not hypothetical applications,** and is resolved simply by applying the relevant constitutional test to the challenged statute.'" *Saucedo*, 336 F. Supp. 3d at 214 (emphasis supplied).  That is to say, it is immaterial whether discretionary judgments on enforcement of the challenged statute are made

by police prosecutors, by county attorneys or by the Office of the Attorney General.  *See Agnew v. Government of the District of Columbia*, 920 F.3d 49, 60 (D.C. Cir. 2019) ("A law may … require law enforcement officers to use their discretion without being unconstitutionally vague. Enforcing criminal laws necessarily 'requires the exercise of some degree of police judgment.'"), *quoting Grayned*, 408 U.S. at 113.  For that matter, the statute's validity does not depend on whether it is enforced in New Hampshire or in Illinois, New York or Idaho.  What is exclusively at issue is "the terms of the statute," *id*., which may be "unconstitutionally vague if, applying the rules for interpreting legal texts, its meaning 'specifie[s] no standard of conduct … at all.'" *United States v. Bronstein*, 849 F.3d 1101, 1108 (D.C. Cir. 2017) (upholding a criminal prohibition against "mak[ing] a harangue or oration, or utter[ing] loud, threatening or abusive language in the Supreme Court Building or grounds"), *quoting Coates v. Cincinnati*, 402 U.S. 611, 614 (1971) and *citing Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 n. 7 (1982) ("setting forth the distinction articulated in *Coates* as describing what 'the complainant must prove' *** to 'sustain such a challenge'").

In *Bronstein*, the defendants were charged with violating 40 U.S.C. § 6134, styled as "Firearms, fireworks, speeches, and objectionable language in the Supreme Court Building and grounds," which declares:

> It is unlawful to discharge a firearm, firework or explosive, set fire to a combustible, make a harangue or oration, or utter loud, threatening or abusive language in the Supreme Court Building or grounds.

*Id*. at 1103-04.  The charges arose out of dissident political speech uttered on "April Fools Day of 2015," after the U.S. Supreme Court was graveled into session for oral argument, when the *Bronstein* defendants rose from their seats in the courtroom and declared,

- "We rise to … Money is not speech. One person, one vote!"

- "Justices, is it not your duty to protect our right to self-government? The first … overturn *Citizens United*. One person one vote."

- "Justices, is it not your job to ensure free, fair elections?" and

- *in song*, "We who believe in freedom shall not rest; we who believe in freedom shall not rest."

*Id*. at 1104-05.  Upon a challenge by the defendants, the district court, among other things, "struck the[ ] words ['harangue' and 'oration'] from § 6134 as unconstitutionally vague." *Id*. at 1105-06.

*Reversing* the district court order, the D.C. Circuit stated:

- "Whether 'harangue' or 'oration' is unconstitutionally vague within § 6134 involves only **'pure questions of law.'**"  *Id*. at 1106 (emphasis supplied), *citing Hodge v. Talkin*, 799 F.3d 1145, 1149 (D.C. Cir. 2015).

- "A law is vague when 'it fails to give ordinary people fair notice of the conduct it punishes or [is] **so standardless** that it invites arbitrary enforcement.'"  *Id*., *citing Johnson v. United States*, ___ U.S. ___, 135 S. Ct. 2551, 2556 (2015).

- "To provide fair 'fair notice,' '[g]enerally, a legislature need do nothing more than enact and publish the law, and afford the citizenry a reasonable opportunity to familiarize itself with its terms and to comply.  *Id*. at 1107, *quoting Texaco, Inc. v. Short*, 454 U.S. 516, 532 (1982).

- "'Even trained lawyers may find it necessary to consult legal dictionaries, treatises, and judicial opinions before they may say with any certainty what some statutes may compel or forbid.  All the Due Process Clause requires is that the law gives sufficient warning that men may conduct themselves so as to avoid that which is forbidden.'"  *Id*., *quoting Rose v. Locke*, 423 U.S. 48, 50 (1975).

- "As far as we can tell, no Supreme Court decision has ever struck a statute as unconstitutionally vague merely because it uses terms that, at the moment, may not be widely used."  *Id*., *citing* Peter W. Low and Joel S. Johnson, *Changing the Vocabulary of the Vagueness Doctrine*, 101 Va. L. Rev. 2051, 2055 (2015) ("We are aware of no United States Supreme Court case where a statute has been held unconstitutionally vague because socialization notice was lacking.").

- "When interpreting a statutory term, we are not concerned with vagueness in the sense that the term 'requires a person to conform his conduct to an imprecise but comprehensible normative standard,' whose satisfaction may vary depending upon whom you ask.  *See, e.g., Coates*, 402 U.S. at 614. Rather, a statute is unconstitutionally vague if, applying the rules for interpreting legal

16

texts, **its meaning 'specifie[s]' 'no standard of conduct … at all**.'" *Id*.; *see also Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 n. 7 (1982); \*\*\* *Int'l Harvester Co. of Am. v. Kentucky*, 234 U.S. 216, 221 (1914) (holding a law is void for vagueness when it offers no 'standard of conduct that [was] *possible to know*" (emphasis added in *Bronstein*)).

*Id.* at 1106-08 (emphasis in bold type supplied).

After laying out the foregoing standards of review, the *Bronstein* Court went on examine the actual "terms of the statute" – making "harangue[s]" and "oration[s]" unlawful – and found them to be sufficiently clear (read: constitutional) within the decorum-disturbing **context** of neighboring language (*e.g.*, "firearm[s]," "firework[s]," "explosive[s]," and "set[ting] fire to a combustible"). *Id*. at 1108-1111 ("The longstanding principles of statutory interpretation hold that 'a word is known by the company it keeps.'"), *quoting Jarecki v. G.D. Searle & Co*., 367 U.S. 303, 307 (1961). Viewing the "text of the statute" *in context* did *not* permit a departure from the words of the legislation or an inquiry into the means of its enforcement by the justice system or its instrumentalities, including police and prosecutors.

Thus, the proper inquiry in this case is whether *the terms of the statute* "'specif[y] no standard of conduct … at all.'" *Bronstein*, 843 F.3d at 1108, *quoting Coates*, 402 U.S. at 614. New Hampshire's Criminal Defamation Statute, RSA 644:11, I, which imposes a criminal penalty only if one:

- "*purposely*[5] communicate[s] to [another] person …information which he *knows*[6] to be *false* and

---

[5] Under RSA 626:2, II(a) [General Requirements of Culpability – "Purposely"], "[a] person acts purposely with respect to a material element of an offense when his conscious object is to cause the result or engage in the conduct that comprises the element."

[6]Under RSA 626:2, II(b) [General Requirements of Culpability – "Knowingly"], "[a] person acts knowingly with respect to conduct or to a circumstance that is a material element of an offense when he is aware that his conduct is of such a nature or that such circumstances exist."

- *knows* will tend to expose [a] living person to public hatred, contempt or ridicule[,]"

is clear in meaning to the "ordinary person." *Bronstein*, 849 F.3d at 1107.

There is no suggestion in Mr. Frese's Amended Complaint that the **words** contained within RSA 644:11, the Criminal Defamation Statute, are indeterminate or elusive, only that the speaker might not know "the values of the listener," Amended Complaint ¶ 37, *quoting Gottschalk v. State*, 575 P.2d 289, 293 (Alaska 1978), who, presented with that speaker's knowingly false statement, will tend to view the target/victim with "hatred, contempt or ridicule."  Of course, as discussed in the Motion for Reconsideration [Doc. # 21] and the antecedent Motion to Dismiss [Doc. # 11], a speaker who does not know "the values of the listener" (*i.e.*, that the knowingly false statement "will tend to expose [the target] to public hatred, contempt or ridicule") is not subject to criminal liability under the Criminal Defamation Statute.[7]

It is therefore clear that Mr. Frese's Amended Complaint fails to state a facial void-for-

---

[7] Putting aside that the "terms of the [Criminal Defamation] statute" are neither indeterminate nor elusive, "'[the] requirement of the presence of culpable intent as a necessary element of the offense does much to destroy any force in the argument' that [the law] is too vague to be constitutionally enforceable."  *U.S. v. Collins*, 272 F.3d 984, 988-89 (7th Cir. 2001), *quoting Boyce Motor Lines, Inc. v. United States*, 342 U.S. 337, 342 (1952); *see also*, *Hoffman Estates*, 455 U.S. at 499 ("[T]he [Supreme] Court has recognized that a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed."), *citing Boyce*, 342 U.S. at 342; *U.S. v. Mire*, 725 F.3d 665 (7th Cir. 2013) (citing *Boyce*, rejecting a void-for-vagueness argument where the criminal law required "knowledge" that *khat*, a stimulant plant material, contained a prohibited controlled substance); *U.S. v. Klecker*, 348 F.3d 69, 71 (4th Cir. 2003) ("The intent requirement alone tends to defeat any vagueness challenge based on the potential for arbitrary enforcement."); *Thomas v. City of Baxter Springs*, 369 F. Supp.2d 1291, 1295 (D. Kan. 2005) (rejecting a void-for-vagueness challenge to a law imposing criminal liability if one "communicated … information, *knowing* the information to be false and with actual malice, tending to expose another living person to public hatred, contempt or ridicule.") (emphasis supplied).

vagueness claim under the First Amendment.[8]

### IV.   This Court should reject Mr. Frese's invitation to overrule *Garrison*.

In *New York Times v. Sullivan*, the Supreme Court stated, *in the context of defamation*, that "false statement[s] made with 'actual malice' – that is, with knowledge that [they] are false or with reckless disregard of whether [they are] false or not'" – fall outside the protections of the First Amendment.  *United States v. Alvarez*, 567 U.S. 709, 719 (2012), *quoting New York Times*, 376 U.S. at 280.  *Garrison v. Louisiana* extended *New York Times*, a case for *civil* defamation, to *criminal* defamation cases.  *Garrison v. Louisiana*, 379 U.S. 64, 67 (1964).

Count II of the Amended Complaint concludes with an invitation to overrule *Garrison* – for which there is no authoritative support, other than what is portrayed as a more enlightened public policy, as witnessed by the law review articles cited therein, including most notably, George C. Lisby, *No Place in the Law*:  *The Ignominy of Criminal Libel in American Jurisprudence*, 9 Communication Law and Policy 433 (2004).  *See* Amended Complaint ¶ 9.  That article asserts that the Supreme Court "failed the ideals of the First Amendment miserably forty years ago in *Garrison v. Louisiana* when it applied the *Sullivan* rule to the crime of libel," *id.* at 434, and that

---

[8] In paragraph 46 of his Amended Complaint, Mr. Frese contends:  "Alternatively, RSA 644:11 is unconstitutional as applied to speech criticizing public officials."  This is not, in fact, an alternative claim, but merely a reiteration of Mr. Frese's facial challenge to RSA 644:11 under the First Amendment.  This is clear from the immediately preceding paragraph of the Amended Complaint, where Mr. Frese contends that "RSA 644:11 is unconstitutionally overbroad because it criminalizes speech criticizing public officials."  Amended Complaint ¶ 45.  Under either formulation, Mr. Frese's theory is the same: that all speech criticizing public officials is constitutionally protected, and that RSA 644:11 is unconstitutional insofar as it prohibits that speech.  As explained above, this is a vast overstatement of RSA 644:11's breadth:  it does not prohibit constitutionally protected criticism of public officials, but rather the *purposeful* communication of information that the speaker *knows* to be false and *knows* will tend to expose the target (public official or not) to public hatred, contempt or ridicule – speech that, under controlling law, is afforded no constitutional protection.  *See Garrison v. Louisiana*, 379 U.S. 64, 67 (1964).  Thus, Mr. Frese's "alternative" claim cannot survive dismissal.

criminal libel statutes are "antithetical to any and every form of representative government" because, among other things, they are "a[n] historical 'throwback to pre-Magna Carta England and to the common-law principles the monarchy used to justify keeping its heel on critics' necks.'" *Id.* at 438, *quoting* Timothy Smith, *Criminal Libel Case, a Legal Throwback, Divides Community*, WALL ST. J., June 29, 1988, 1, at 17.   Of course, "choices of public policy, rather than constitutional imperatives" are not within this Court's purview but rather are "matters for consideration by those with public policy responsibilities, administrators in the Executive Branch and ultimately law-makers in the Legislative Branch." *U.S. v. Myers*, 635 F.2d 932 (2d Cir. 1980).

Moreover, it is not the prerogative of the *District* Court to overrule *Garrison*.  *See Rodriguez de Quijas v. Shearson/American Exp., Inc.*, 490 U.S. 477, 484 (1989) ("If a precedent of this Court has direct application in a case… the Court of Appeals should follow that case which directly controls, leaving to this Court the prerogative of overruling its own decisions); *U.S. v. Morosco*, 822 F.3d 1, 7 (1st Cir. 2016) ("[B]ecause overruling the Supreme Court precedent is the Court's job, not ours, we must follow [] until the Court specifically tells us not to…"); *NAACP v. Medical Center, Inc.*, 657 F.2d 1322, 1331 (3rd Cir. 1981) ("The prerogative of overruling its cases rests with the Supreme Court, not with us.").

<u>**Conclusion**</u>

For all of the foregoing reasons, the Amended Complaint should properly be dismissed.

Respectfully submitted,

GORDON J. MACDONALD, in his
official capacity only as Attorney General
of the State of New Hampshire

By his attorney,

GORDON J. MacDONALD
ATTORNEY GENERAL

Date:  May 6, 2020                    By:   /s/  Lawrence M. Edelman
                                      Lawrence M. Edelman, Bar # 738
                                      Assistant Attorney General
                                      Civil Bureau
                                      New Hampshire Dept. of Justice
                                      33 Capitol Street
                                      Concord, NH 03301
                                      (603) 271-3650
                                      lawrence.edelman@doj.nh.gov

## Certificate of Service

I hereby certify that a copy of the foregoing Memorandum of Law was served this 6th

day of May, 2020, on all counsel of record via the ECF System.

                                       /s/  Lawrence M. Edelman
                                      Lawrence M. Edelman