UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Robert Frese

     v.                                 Civil No. 18-cv-1180-JL

Gordon J. MacDonald,
In his official capacity only as Attorney
General of the State of New Hampshire

**MEMORANDUM ORDER**

This case concerns the facial constitutionality of New Hampshire's criminal defamation statute, N.H. Rev. Stat. § 644:11, under the First and Fourteenth Amendments.  The State of New Hampshire has moved to dismiss plaintiff Robert Frese's amended complaint on standing and sufficiency grounds.  See Fed. R. Civ. P. 12(b)(1), (6).  In late 2019, the court denied a previous motion to dismiss because the State had failed to show that Frese's original allegations were legally insufficient to state a constitutional claim and because Frese had sufficiently pled his standing to sue.  See Frese v. MacDonald, 425 F. Supp. 3d 64, 82 (D.N.H. 2019).[1]  In 2020, the court also denied a motion for reconsideration by the State which misconstrued the court's 2019 order and raised new arguments and authority which were not developed in the State's first motion to dismiss.  In doing so, the court deemed the State's new arguments waived for the purposes of the motion, but reserved the right to revisit the State's new arguments and authority in a later procedural posture if they were properly raised.[2]

---

[1] Oct. 25, 2019 Order Denying Mot. to Dismiss (Doc. No. 19).

[2] Feb. 14, 2020 Order Denying Mot. for Reconsideration (Doc. No. 25).

In the wake of these decisions, Frese amended his original complaint to clarify the legal basis for his claims, giving the State the opportunity to challenge anew. Again, the State argues that Frese lacks standing and fails to state a claim, citing newly provided authority that sharpens the State's previous arguments. Additionally, the State newly contends that First Circuit precedent precludes Frese from maintaining his facial constitutional claims under the First and Fourteenth Amendment of the U.S. Constitution. After considering the parties' arguments, as refined by Frese's amended pleading and motion practice in this case, the court concludes that Frese's allegations cannot sustain his asserted constitutional claims. The court thus grants the State's motion and dismisses Frese's complaint in its entirety for failing to state a claim. See Fed. R. Civ. P. 12(b)(6).

## I.    Background

The court has provided a more thorough account of the factual allegations underlying this case in its prior orders.[3] The following draws from those prior accounts, restates the most pertinent facts, and recounts more recent procedural history.

### A.    The criminal defamation statute and the police prosecutions of Frese

New Hampshire's criminal defamation statute, N.H. Rev. Stat. § 644:11, provides: "A person is guilty of a class B misdemeanor if he purposely communicates to any person, orally or in writing, any information which he knows to be false and knows will tend to expose any other living person to public hatred, contempt or ridicule."[4] Because the offense is a Class B misdemeanor, the applicable penalties do not include

---

[3] See Oct. 25, 2019 Order Denying Mot. to Dismiss (Doc. No. 19, at 2-6); Feb. 14, 2020 Order Denying Mot. for Reconsideration (Doc. No. 25, 2-4).

[4] As used in the statute, "public" includes any professional or social group of which the victim of the defamation is a member. See id. § 644:11(II); see also Sanguedolce v. Wolfe, 164 N.H. 644, 646 (2013) (discussing the common-law definition of "public" in the context of defamation).

incarceration.  Instead, those convicted face a fine of up to $1,200, see id. § 651:2(IV)(a), have no right to a trial by jury, see State v. Foote, 149 N.H. 323, 324 (2003), and are not afforded court-appointed counsel if they are indigent, see State v. Westover, 140 N.H. 375, 378 (1995).

Although prosecutions for criminal defamation in New Hampshire are not common, plaintiff Robert Frese has been charged twice under § 644:11.  In 2012, the Hudson Police Department arrested Frese for comments he posted on the online platform Craigslist about the owner of a local life coaching business.[5]  Without counsel, Frese pled guilty and was fined $1,488, with $1,116 conditionally suspended.[6]  Then, in 2018, the Exeter Police Department arrested and prosecuted Frese for comments he pseudonymously posted on an online newspaper article's comments section about a retiring Exeter police officer who Frese considered corrupt.[7]  This arrest caused public controversy, and Frese's case was eventually referred to the N.H. Attorney General's Office.  Its Civil Rights Division opined that there was no probable cause that Frese violated the criminal defamation statute, even though a New Hampshire Circuit Judge had initially found probable cause to arrest Frese based on the police department's submitted filings.[8]  Three days after the Attorney General reported this conclusion, the Exeter Police Department dropped its charges against Frese.[9]

---

[5] Am. Compl. (Doc. No. 31, ¶ 15); Frese Exs. (Doc. No. 31-2, at HUD013-14).

[6] Am. Compl. (Doc. No. 31, ¶ 16).  This fine included up to a 24% penalty assessment.  Id.

[7] Am. Compl. (Doc. No. 31, ¶¶ 17-31); Frese Exs. (Doc. No. 31-3, at EXE019-21, 91-92).

[8] See NHDOJ June 4, 2018 Mem. (Doc. No. 31-3, at EXE008-013).

[9] Am. Compl. (Doc. No. 31, ¶ 31).

**B.      Litigation of the state's first motion to dismiss**

At the end of 2018, Frese, allegedly fearing future arrests or prosecutions for criticizing law enforcement and other public officials, filed a complaint requesting that this court declare the criminal defamation statute overbroad and void for vagueness.  The State, in turn, moved to dismiss on standing and sufficiency grounds.[10]

In September 2019, the court held oral argument, at which it gave the parties ample opportunity to explain the arguments advanced in their written submissions.  At the hearing, the court questioned counsel about how the statute's historical enforcement impacted the constitutional questions presented—an issue addressed at no point in the State's briefing.  The court also allowed the parties to submit supplemental briefing on this question, and while Frese's counsel submitted a supplemental brief,[11] the State's counsel neither submitted supplemental authority nor responded to the authority submitted by Frese.

The following month, the court denied the State's motion to dismiss.  In doing so, the court emphasized that the parties (and the public) should not interpret the preliminary decision as holding "that New Hampshire's criminal defamation statute is unconstitutional on its face."[12]  425 F. Supp. 3d at 82.  Rather, the court's holding was limited to the narrow issue before it under Rule 12(b)(6): that on the record and

---

[10] State's Mot. to Dismiss (Doc. No. 11).  Oral argument was delayed until September to accommodate the parties' availability and this court's busy trial schedule.  See June 11, 2019 Endorsed Order granting Frese's Mot. to Continue.

[11] Frese's Notice of Supp. Authority (Doc. No. 18).

[12] Oct. 25, 2019 Order Denying Mot. to Dismiss (Doc. No. 19, at 24).

arguments briefed by the parties, the State had failed to show that Frese had not stated a claim as a matter of law.[13]  Id.

In an unusual step, the State then asked the court to reconsider the decision denying the motion to dismiss on the argued grounds that the decision rested on purportedly manifest errors of law.[14]  The court denied the State's request without oral argument, as the State's arguments rested on a misconstruction of the October 25 Order's plain language, as well as authorities that the State had failed to raise in support of its motion to dismiss, even after the court had invited the State to supplement its briefing.[15] In doing so, the court made clear that it took "no position" on the State's new arguments and would "revisit them if raised properly at a later procedural posture."[16]

## C.    Amended complaint

In April 2020, Frese amended his complaint to clarify the nature of his constitutional claims.[17]  In Count 1, as amended, he maintains his original claim that the criminal defamation statute "is unconstitutionally vague, both on its face and as applied in the context of New Hampshire's system for prosecuting Class B misdemeanors," in violation of the Fourteenth Amendment.  In Count 2, he newly pleads that the statute violates the First Amendment's prohibition against government abridgment of speech because it criminalizes speech which civil remedies can sufficiently address.  This prompted the State to file the instant motion, which not only re-asserts the State's

---

[13] Id. at 24-25.

[14] See State's Mot for Reconsideration (Doc. No. 21).

[15] Feb. 14, 2020 Order Denying Mot. for Reconsideration (Doc. No. 25).

[16] Id.

[17] Assented-to Mot. to Am. Compl. (Doc. No. 29); see also Am. Compl. (Doc. No. 31).

previous arguments, but also advances new arguments concerning the sufficiency of Frese's facial vagueness claims under First Circuit precedent.  The court now turns to these arguments.

## II.     Applicable legal standard

### A.     Standing

"The Constitution limits the judicial power of the federal courts to actual cases and controversies."  Katz v. Pershing, LLC, 672 F.3d 64, 72 (1st Cir. 2012) (citing U.S. Cons. Art. III, § 2 cl. 1).  "A case or controversy exists only when the party soliciting federal court jurisdiction (normally, the plaintiff) demonstrates 'such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends.'"  Id. (quoting Baker v. Carr, 369 U.S. 186, 204 (1962)).

"To satisfy the personal stake requirement a plaintiff must establish each part of a familiar triad: injury, causation, and redressability."  Id. (citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61 (1992)); see also Massachusetts v. U.S. Dep't of Health & Human Servs., 923 F.3d 209, 221 (1st Cir. 2019) (explaining that the burden of alleging facts sufficient to prove these elements rests with the party invoking federal jurisdiction). "[E]ach element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof," which is, "with the manner and degree of evidence required at the successive stages of the litigation."  Katz, 672 F.3d at 72 (quoting Lujan, 504 U.S. at 561) (internal quotation marks omitted).

In considering a pre-discovery grant of a motion to dismiss for lack of standing, the court "accept[s] as true all well-ple[d] factual averments in the plaintiff's . . . complaint and indulge[s] all reasonable inferences therefrom in his [or her] favor."  Id. at

70. And while generally the court does not consider materials outside the pleadings on a motion to dismiss, it may look beyond the pleadings—to affidavits, depositions, and other materials—to determine jurisdiction.  See Gonzalez v. United States, 284 F.3d 281, 288 (1st Cir. 2002); Strahan v. Nielsen, No. 18-cv-161-JL, 2018 WL 3966318, at *1 (D.N.H. Aug. 17, 2018).

**B.      Statement of a claim**

The court determines the sufficiency of a complaint through a "holistic, context-specific analysis." Gilbert v. City of Chicopee, 915 F.3d 74, 80 (1st Cir. 2019).  First, it "isolate[s] and ignore[s] statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements."  Zenon v. Guzman, 924 F.3d 611, 615 (1st Cir. 2019) (citations and quotation marks omitted).  It then "evaluate[s] whether the remaining factual content supports a 'reasonable inference that the defendant is liable for the misconduct alleged.'"  In re Curran, 855 F.3d 19, 25 (1st Cir. 2017) (quoting Shay v. Walters, 702 F.3d 76, 82 (1st Cir. 2012)); see also Glob. Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 155 (2d Cir. 2006) ("The purpose of Rule 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits.").

In doing so, the court must accept "all well-pled facts in the complaint as true" and construe all reasonable inferences in the plaintiff's favor.  See Gilbert, 915 F.3d at 80.  In addition, the court may consider documents attached as exhibits or incorporated by refence in the complaint.  See Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 321 (1st Cir. 2008).  But the court "need not give weight to bare conclusions, unembellished by pertinent facts."  Shay, 702 F.3d at 82–83.  If the complaint's factual

averments are "too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture," dismissal is warranted.  S.E.C. v. Tambone, 597 F.3d 436, 442 (1st Cir. 2010) (en banc).

### III.   Analysis

The State contends that Frese's amended complaint should be dismissed on two grounds.  First, it renews its argument that Frese lacks pre-enforcement standing to sue because he has not alleged, in the State's view, an intent to engage in speech that is both proscribed by the criminal defamation statute and arguably affected with a constitutional interest.  See also Fed. R. Civ. P. 12(b)(1).  Second, it asserts that Frese has failed to plead a claim that the criminal defamation statute is unconstitutionally vague or that the statute impermissibly abridges protected speech.  See Fed. R. Civ. P. 12(b)(6).  The court reaffirms that Frese's pleadings adequately confer standing to bring this lawsuit, but concludes, based on the State's newly submitted legal authority, that Frese's allegations fail to state a constitutional claim under the First or Fourteenth Amendment.

### A.   Standing

The State first argues that Frese has failed to meet his burden of pleading pre-enforcement standing to sue because he has not alleged a sufficient pre-enforcement injury in fact—specifically an intention to engage in conduct proscribed by the criminal defamation statute, N.H. Rev. Stat. § 644:11.  The statute criminalizes only speech that a speaker "knows to be false and knows will tend to expose any other living person to public hatred, contempt or ridicule."  Id.  (emphasis added).  The State contends that "Frese's claim of standing does not leave the gate, as deliberately false and defamatory speech"—the only conduct proscribed by § 644:11 in the State's view—is not "'arguably

affected with a constitutional interest.'"[18]  In essence, this argument restates the State's prior position on standing. The court again disagrees, as the State's standing argument still misunderstands (or perhaps mischaracterizes) Frese's challenge.

In the context of the First Amendment, "two types of injuries may confer Article III standing without necessitating that the challenger actually undergo a criminal prosecution." Mangual v. Rotger-Sabat, 317 F.3d 45, 56 (1st Cir. 2003).  The first is when "the plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution." Babbitt, 442 U.S. at 298; accord Mangual, 317 F.3d at 56.  The second is when a plaintiff "is chilled from exercising [his or] her right to free expression or forgoes expression in order to avoid enforcement consequences." N.H. Right to Life Political Action Comm. v. Gardner, 99 F.3d 8, 13 (1st Cir. 1996). Here, Frese's pleadings focus on the first type of pre-enforcement injury: he "fears that he will be arrested and/or prosecuted" under the criminal defamation statute for future "speech criticizing law enforcement and other public officials."[19]

Frese's fear of arrest for criticizing law enforcement and public officials satisfies all three elements for a pre-enforcement injury.  First, such speech is "arguably affected with a constitutional interest."  See Babbitt, 442 U.S. at 298 (emphasis added); see also Mangual, 317 F.3d at 58 (finding a pre-enforcement injury in fact where a journalist stated "an intention to continue covering police corruption"); O'Connor v. Steeves, 994 F.2d 905, 915 (1st Cir. 1993) (holding that speech concerning the alleged abuse of public

---

[18] State's Mot. to Dismiss Am. Compl. Mem. (Doc. No. 33-1, at 8) (quoting Babbitt v. United Farm Workers Nat. Union, 442 U.S. 289, 298 (1979)) (emphasis added by the State).

[19] Am. Compl. (Doc. No. 31, ¶ 33).

office occupies "the highest rung of the hierarchy of First Amendment values"); Bourne v. Arruda, No. 10-cv-393, 2011 U.S. Dist. Lexis 62332, at *40 (D.N.H. June 20, 2011) (McCafferty, J.) ("the right to criticize public officials is protected by the First Amendment" (quotation marks and citation omitted)).  Moreover, New Hampshire's criminal defamation statute "arguably . . . proscribe[s]" speech criticizing public officials, as the statute sweeps broadly and carves out no exceptions for speech concerning law enforcement or other public officials.  See Susan B. Anthony List v. Driehaus, 573 U.S. 149, 162 (2014) (quoting Babbitt, 442 U.S. at 298), see also Mangual, 317 F.3d at 48 (finding credible threat of prosecution of a journalist's speech concerning police corruption where libel statute did not "carve out any exception" for such speech).

        The State contends that statute does not proscribe constitutionally protected speech because it only proscribes "purposeful communications" of "information that the speaker knows to be false and knows will tend to expose any other living person to public hatred, contempt, or ridicule."[20]  But, as explained in this court's prior order,[21] the State's focus on the statute's knowledge requirement "misses the point" for standing purposes.  See SBA List, 573 U.S. at 164.  In SBA List, the Supreme Court rejected a similar argument regarding an Ohio statute criminalizing false statements about candidates during political campaigns.  Id. at 162-63.  There, the respondents argued that the petitioner's alleged fears of enforcement were misplaced because it could "only be liable for making a statement 'knowing' it [was] false" and had not said it planned to lie.  Id.  In the respondent's view, the petitioner's insistence that its speech was factually true made "the

---

[20] State's Mot. to Dismiss Am. Compl. Mem. (Doc. No. 33-1, at 12) (quoting uncited material) (emphasis added by the court).

[21] See Oct. 25, 2019 Order Denying Mot. to Dismiss (Doc. No. 19, at 11).

possibility of prosecution for uttering such statements exceedingly slim." Id.  The Court

noted that the petitioner's past insistence that its statements were true did not prevent a

finding of probable cause that the petitioner had violated the Ohio law.  As such, there

was "every reason to think that similar speech in the future will result in similar

proceedings, notwithstanding [the speaker's] belief in the truth of its allegations." Id.

Frese's past encounters with the police similarly demonstrate that a speaker's

belief that his or her comments are true does not shield law enforcement critics from the

initiation of criminal process.  In 2018, for example, when the Exeter Police Department

filed criminal charges against Frese, and a New Hampshire Circuit Court Judge approved

a warrant to arrest Frese, Frese's belief in the truth of his statements regarding the

purported corruption of an Exeter police officer did not protect him from arrest or the

initial stages of prosecution.  Additionally, the State has not taken the position that

criminal defamation charges could not be sustained against a speaker who outwardly

expresses a belief that his false and defamatory speech is subjectively true.  At oral

argument on the State's first motion to dismiss, the court pressed the State's counsel on

what kinds of proof would satisfy the criminal defamation statute's knowledge element.

Though counsel responded that an admission would suffice, he could not rule out a

criminal defamation case built on indirect evidence, including indirect evidence about the

speaker's knowledge.  If that is the case, it is more than just possible that speech like

Frese's 2018 comments could result in criminal proceedings, notwithstanding the

speaker's belief in the truth of his or her allegations.  See id.

Finally, the threat of future enforcement is credible given the past enforcement

actions against Frese for similar conduct.  SBA List, 573 U.S. at 149 ("[P]ast enforcement

against the same conduct is good evidence that the threat of enforcement is not

chimerical.").  Under New Hampshire law, individuals can initiate private prosecutions for criminal offenses that do not carry a possible penalty of imprisonment, see Tucker v. Gratta, 101 N.H. 87, 87 (1957), including criminal defamation.  The power to prosecute misdemeanor crimes similarly extends to law enforcement officers, who commonly do so without the approval or guidance of a prosecuting attorney.  See State v. La Palme, 104 N.H. 97, 98 (1962); see also N.H. Rev. Stat. § 41:10 (implicitly recognizing, if not expressly authorizing, police prosecutions).  As such, even if the New Hampshire Department of Justice disavowed any intention to prosecute criminal defamation cases like Frese's past litigation—which, to date, it has not—Frese would still have a "credible fear of being haled into court on a criminal charge."  Mangual, 317 F.3d at 59.  This "is enough for the purposes of standing, even if it were not likely that [Frese] would be convicted."  Id.

Under the particular facts and circumstances of this case, including Frese's history of prosecution, the state of New Hampshire's unique procedures permitting prosecutions initiated and handled by private citizens and public officers, and the arguments and positions advanced by counsel in their filings and arguments, Frese has demonstrated a pre-enforcement injury in fact sufficient to establish Article III standing under a Rule 12(b) challenge.  Accordingly, the State has failed to show that this court lacks subject matter jurisdiction.

## B.  Sufficiency

The State next contends that Frese has failed to state a claim upon which relief can be granted.  See Fed. R. Civ. P. 12(b)(6).  Frese's amended complaint raises two types of claims:  In Count 1, he contends that New Hampshire's criminal defamation statute is unconstitutionally vague in violation of Fourteenth Amendment's Due Process Clause.  In

Count 2, he argues that the criminal defamation statute also violates the First Amendment's prohibition against government abridgment of speech because it overbroadly criminalizes speech that civil remedies can sufficiently address. The court addresses each Count in turn, and ultimately concludes that Frese's allegations can sustain neither a First Amendment overbreadth nor a Fourteenth Amendment vagueness claim.

1.      First Amendment overbreadth claims

"In a facial challenge to the overbreadth and vagueness of a law, a court's first task" is to assess the viability of the plaintiffs' First Amendment overbreadth claim before examining a facial vagueness challenge. Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 494–95 (1982). Thus, the court first addresses Frese's claim that New Hampshire's criminal defamation statute violates the First Amendment for criminalizing false and defamatory speech or, in the alternative, for criminalizing false speech criticizing public officials.

The State contends that Frese's First Amendment claim lacks merit because the claim essentially asks this court to overrule United States Supreme Court precedent implicitly recognizing criminal defamation statutes as constitutionally permissible. See, e.g., Garrison v. Louisiana, 379 U.S. 64, 67 (1964) (holding that a Louisiana criminal libel statute punishing true statements made with actual malice was unconstitutional because "only . . . false statements made with the high degree of awareness of their probable falsity . . . may be the subject of either civil or criminal sanctions."). Additionally, it asserts that Frese's First Amendment claim simply questions the public policy rationale for criminal defamation statutes (rather than constitutional imperatives),

which are matters for the Executive and Legislative Branches, but not this court, to decide.[22]

Frese's able counsel, in appreciated candor, do not shy away from the controversial nature of his claim.  In his objection, Frese maintains that if Garrison holds that criminal defamation statutes are permissible under the First Amendment (so long as they include an actual malice requirement), then "the case was wrongly decided."[23] Additionally, he explains that, though this court may lack the prerogative to overturn Supreme Court precedent, he seeks to preserve the ability to raise his public policy-related arguments before an appellate court that can question Garrison's rationale.[24]

At bottom, Frese agrees with the State that "overruling the Supreme Court is the Court's job," not the trial courts'.  United States v. Morosco, 822 F.3d 1, 7 (1st Cir. 2016). Accordingly, this court must apply Garrison to Frese's First Amendment claims until the Supreme Court or the First Circuit Court of Appeals rules otherwise—even in the face of Frese's allegations that criminal libel statutes are "antithetical to any and every form of representative government."[25]  Under Garrison, the State may impose criminal sanctions against false and defamatory speech made with actual malice without violating the First Amendment.  As such, Frese's allegation that the criminal defamation statute unlawfully

---

[22] State's Mot. to Dismiss Am. Compl. Mem. (Doc. No. 33-1) at 20 (quoting United States v. Myers, 635 F.2d 932 (2d Cir. 1980)).

[23]  Frese's Obj to the State's Mot. to Dismiss Compl. (Doc. No. 14, at 12 n.5) (incorporated into Frese's Obj. to the State's current motion to dismiss).

[24] Id.

[25] Am. Compl. (Doc. No. 31, ¶ 9) (citing George C.  Lisby, No Place in the Law: The Ignominy of Criminal Libel in American Jurisprudence, 9 Commc'n Law and Policy 433 (2004)).

criminalizes any and all false, defamatory speech fails to state a First Amendment claim upon which relief can be granted.  See Fed. R. Civ. P. 12(b)(6).

2.    Fourteenth Amendment vagueness claims

The State next argues that Frese has failed to state a void-for-vagueness claim under the Fourteenth Amendment for three reasons.  First, it contends that First Circuit precedent precludes Frese from bringing a facial vagueness claim outside of the context of a traditional, as-applied challenge.  Second, it argues that, even if First Circuit precedent allows Frese to proceed on parts of his vagueness claim, he has still not sufficiently pled how the terms of the criminal defamation statute fail to articulate a discernible standard that would prevent selective or discriminatory enforcement.  Finally, it notes that Frese has not alleged an actual as-applied vagueness claim.  As discussed below, the court mostly agrees as to the State's latter two points, as Frese's allegations do not demonstrate how § 644:11's proscriptions, which incorporate the common-law definition of defamation and require proof of actual malice, are so standardless that they fail to guard against the danger of selective or arbitrary enforcement by law enforcement officials.  The court thus concludes that, under Rule 12(b), Frese has failed to state a claim.

a.    *The vagueness doctrine*

"The vagueness doctrine, a derivative of due process, protects against the ills of laws whose 'prohibitions are not clearly defined.'"  Nat'l Org. for Marriage v. McKee, 649 F.3d 34, 62 (1st Cir. 2011) (quoting Grayned v. City of Rockford, 408 U.S. 104, 108 (1972)).

> In prohibiting overly vague laws, the doctrine seeks to ensure that persons of ordinary intelligence have 'fair warning' of what a law prohibits, prevent 'arbitrary and discriminatory enforcement' of laws by requiring that they provide explicit standards for those who apply them, and, in cases where

the statute abut(s) upon sensitive areas of basic First Amendment freedoms avoid chilling the exercise of First Amendment rights.

Id.  (quoting Grayned, 408 U.S. at 108–09) (internal quotation marks omitted).

In prior orders, the court more thoroughly reviewed the vagueness doctrine's application to statutes in the First Amendment context.[26]  The court restates only the essential points here, as supplemented by the State's more-recently submitted legal authority (now properly before the court[27]):  A facial challenge like Frese's "is best understood as a challenge to the terms of the statute" itself, see Saucedo v. Gardner, 335 F. Supp. 3d 202, 214 (D.N.H. 2018) (McCafferty, J.), and is resolved simply by assessing whether it prohibits "an act in terms so uncertain that persons of average intelligence would have no choice but to guess at its meaning and modes of application."  McKee, 649 F.3d at 62 (internal citations and quotation marks omitted).  A statute is not rendered unconstitutionally vague merely because it "requires a person to confirm his [or her] conduct to an imprecise but normative standard," the satisfaction of which might vary depending upon whom one asks.  E.g., Coates v. City of Cincinnati, 402 U.S. 611, 614 (1971).  "Rather, a statute is unconstitutionally vague if, applying the rules for interpreting legal texts, its meaning specifies 'no standard of conduct . . . at all.'"  United States v. Bronstein, 849 F.3d 1101, 1108 (D.C. Cir. 2017) (quoting Coates, 402 U.S. at 614); see also United States v. Whitty, 688 F. Supp. 48, 54 (D. Me. 1988) (Cyr, C.J.) ("A statute is unconstitutionally vague on its face if it is expressed in such general terms that 'no standard of conduct is specified at all.'" (internal citation omitted) (emphasis in original)).

---

[26] See Oct. 25, 2019 Order Denying Mot. to Dismiss (Doc. No. 19, at 18-24); Feb. 14, 2020 Order Denying Mot. for Reconsideration (Doc. No. 25, 6-8, 11-13).

[27] See Part I.B, supra.

Several recent decisions from the D.C. Circuit Court of Appeals demonstrate how courts generally apply the vagueness doctrine to statutes that imprecisely define unlawful speech.  See, e.g., Bronstein, 849 F.3d at 1108–11; Act Now to Stop War & End Racism Coal. & Muslim Am. Soc'y Freedom Found. v. D.C., 846 F.3d 391, 412 (D.C. Cir. 2017). In Bronstein, for example, political dissidents who had interrupted U.S. Supreme Court oral arguments to engage in protest brought a facial vagueness challenge against a 1949 law making it unlawful to "make a harangue or oration, or utter loud, threatening, or abusive language in the Supreme Court."  Id. (quoting 40 U.S.C. § 6134).  The district court found that, for constitutional purposes, the words "harangue" and "oration" were anachronisms that had multiple, subjective dictionary definitions without "an objective and neatly isolable core."  151 F. Supp. 3d 31, 41–44 (D.D.C. 2015) ("The various definitions of 'harangue' rest largely on subjective assessments of the nature of the speech involved.").  The district court therefore held that the terms were unconstitutionally vague.  Id.  On appeal, however, the D.C. Circuit Court of Appeals reversed because a person of ordinary intelligence could read these anachronisms and "understand that, as a member of the Supreme Court's oral argument audience, making disruptive public speeches is clearly proscribed behavior."  849 F.3d at 1104.

In reaching this conclusion, the Court of Appeals explained that a vagueness analysis is not concerned with whether a statutory term "requires a person to conform his conduct to an imprecise but comprehensible normative standard, whose satisfaction may vary depending upon whom you ask."  Id.  (quoting Coates, 402 U.S. at 614).  "Rather, a statute is unconstitutionally vague if, applying the rules for interpreting legal texts, its meaning specifies no standard of conduct at all."  Id. (internal quotation marks and citations omitted).  The Court of Appeals then applied these principles to the specific

inquiry before it.  It elaborated that, though "harangue" and "oration" covered different facets of public speeches—"'orations' can include formal speeches, while 'harangues' can include angry or vehement speeches"—the question for the Court was whether the terms "converge[d] upon certain behavior" that were useful as "descriptors of the 'core' behavior to which the statute may constitutionally be applied."  Id. at 1108 (internal quotation marks and citations omitted).  The Court of Appeals concluded, based on the statute's textual context, that "harangue" and "oration" "meant to cover any form of public speeches that tend to disrupt the Supreme Court's operations," and that "a person of ordinary intelligence could read this law and understand that" such conduct was "clearly proscribed behavior."  Id. at 1109-10 (internal citation omitted).  It thus held that the district court erred in striking the two terms as unconstitutionally vague.  Id. at 1111; see also Act Now, 846 F.3d at 410–412 (holding that an municipal regulation governing displays of posters in public spaces "d[id] not give enforcement officials so little guidance as to permit them to act in an arbitrary or discriminatory way" because it "set[] reasonably clear guidelines").

     Similarly, in Agnew v. Gov't of the District of Columbia, the D.C. Circuit Court of Appeals affirmed that an anti-obstructing ordinance, making it a misdemeanor "to crowd, obstruct, or incommode" the use of public ways, was not unconstitutionally vague on its face, even though term "incommode" was no longer in everyday use and "does not mean the same thing to all people, all the time."  920 F.3d 49, 56-57 (D.C. Cir. 2019) (quoting Bronstein, 849 F.3d at 1107–08).  Using textual canons of statutory construction, the Court of Appeals found that "crowd, obstruct, or incommode" read together in context were "plainly concerned with impediment[s] or hinderance[s]" of the "public's shared use of common public spaces."  Id. at 57-58.  Additionally, it found that, though the plaintiffs

had alleged the statute was enforced in a racially discriminatory, harassing manner, the "identified instances of a statute's misapplication" alleged did not suffice to show that the ordinance was unconstitutional on its face.  Id. at 60 (noting that "similar allegations could bolster an as-applied challenge").

Though fewer in number, multiple decisions from this Circuit echo the core vagueness analysis principles articulated in Bronstein, Agnew, and other out-of-circuit opinions.  See, e.g., McKee, 649 F.3d at 62; Donovan v. City of Haverhill, 311 F.3d 74, 77 (1st Cir. 2002).  The court thus applies these principles here.

b.    *Preclusion of facial void-for-vagueness claims*

The State first contends that First Circuit precedent—specifically Draper v. Healey, 827 F.3d 1 (1st Cir. 2016)—precludes Frese from bringing a facial void-for-vagueness claim.  In Draper, the Court of Appeals held that the plaintiffs' constitutional claim, which challenged a handgun-sales regulation as void-for-vagueness, was "eligible only for as-applied, not facial, review."  Id. at 3 (citing United States v. Zhen Zhou Wu, 711 F.3d 1, 15 (1st Cir. 2013)).  The State reads this holding as an "unequivocal[]" statement that all void-for-vagueness claims arising under the Fourteenth Amendment's Due Process Clause are "eligible only for as applied, not facial review."[28]  The court disagrees, finding that the Court of Appeals has not yet adopted such an absolute rule.

Both the Supreme Court and the First Circuit Court of Appeals have long permitted facial vagueness challenges under the Fourteenth Amendment's Due Process Clause where challenged laws arguably inhibited the exercise of First Amendment freedoms.  In Kolender v. Lawson, for example, the Supreme Court found that a criminal

---

[28] State's Reply to Mot. to Dismiss Am. Compl. (Doc. No. 41, ¶ 2) (quoting Draper, 827 F.3d at 3) (emphasis added by the State).

statute concerning loitering was "unconstitutionally vague" on its face "within the meaning of the Due Process [C]lause of the Fourteenth Amendment by failing to clarify what was contemplated by the requirement that a suspect provide a 'credible and reliable' identification." 461 U.S. 352, 353-54 (1983) (noting that its vagueness ruling was "based upon the potential for arbitrarily suppressing First Amendment liberties"); cf. Sessions v. Dimaya, 138 S. Ct. 1204, 210 (2018) (a non-First Amendment case decided after Draper in which the Supreme Court facially invalidated a criminal statute on vagueness grounds).  Likewise, in URI Student Senate v. Town of Narragansett, the First Circuit Court of Appeals considered a facial challenge to a nuisance ordinance prohibiting "unruly gatherings," and ultimately found the ordinance's use of undefined terms such as "substantial disturbance" and "a significant segment of a neighborhood" did not render it unconstitutionally vague under the Fourteenth Amendment.  631 F.3d 1, 13-14 (1st Cir. 2011).

Despite the State's assertions, Draper does not directly call these precedents into question or otherwise create a turning point in First or Fourteenth Amendment jurisprudence.  In Draper, the Court of Appeals simply considered a void-for-vagueness challenge to a Massachusetts regulation making it an unfair or deceptive practice for handgun purveyors to transfer to a customer a handgun that did not contain "a load indicator or magazine safety disconnect." 827 F.3d at 2.  The plaintiffs, consisting of handgun dealers, consumers, and advocacy groups, argued that the regulation failed to provide fair notice of what was prohibited, even though the State Attorney General informed dealers of its position that certain handguns violated the regulation.  See id. (finding that the advocacy groups lacked standing).  Justice Souter, writing for the three-judge panel, explained that such a constitutional challenge was "eligible only for as-

applied, not facial, review" because it fell outside the First Amendment context.  Id. (quoting Zhen Zhou Wu, 711 F.3d at 15 ("Outside the First Amendment context, we consider whether a statute is vague as applied to the particular facts at issue . . . .")).  The panel then considered whether the plaintiffs' as-applied challenge had merit and concluded it did not because the challenged regulation's language provided "anyone of ordinary intelligence fair notice that what" was required was "a readily perceptible signal that a loaded gun is loaded."  Id. at 3-4; see also id. at 4 (noting also that the Massachusetts Attorney General had publicly taken the position that the handguns at issue violated the load indicator regulation).

In reaching this conclusion, the Court of Appeals at no point found that facial challenges to statutes were categorically inappropriate.[29]  That question was not presented to the Court of Appeals.  Nor did the Court find that the plaintiffs' constitutional challenge fell within the exception for First Amendment issues articulated in Zhen Shou Wu.[30]  And even if it had, the plaintiffs' facial challenge for lack of notice still would have lacked merit because the law clearly proscribed the conduct they sought to engage in.  See Vill. of Hoffman Estates, 455 U.S. at 495 ("A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others."); see also Holder v. Humanitarian Law Project, 561 U.S. 1, 21 (2010) (reversing partial grant of relief based on facial vagueness challenge for lack of

---

[29] Indeed, had the Court of Appeals intended for its holding in Draper to bar all facial challenges going forward, it presumably would have said as much in clear and certain terms.  Additionally, it presumably would have done so after spending some time addressing past cases permitting facial vagueness challenges, rather than through a single sentence parenthetically noting that facial challenges can arise in the First Amendment context.

[30] Zhen Zhou Wu does not specify whether the exception broadly applies to cases concerning First Amendment interests or more narrowly applies to facial challenges specifically arising under a First Amendment claim, such as under the overbreadth doctrine.

notice where the "the statutory terms [at issue were] clear in their application to plaintiffs' proposed conduct"); United States v. Ackell, No. 15-cr-123-JL, 2016 WL 6407840, at *1 (D.N.H. Oct. 28, 2016), aff'd, 907 F.3d 67 (1st Cir. 2018) (rejecting a criminal defendant's facial challenge that a statute was unconstitutionally vague for lack of notice where the cyberstalking statute at issue clearly proscribed the conduct alleged in the indictment).  Frese's case concerning free speech, by comparison, arguably falls within the First Amendment context.  Moreover, New Hampshire's criminal defamation statute does not clearly authorize or proscribe Frese's intended conduct of openly criticizing public officials such as police officers.

Perhaps recognizing that its position overstates or overextends precedent, the State suggests that the Supreme Court may soon need to address the appropriateness of facial vagueness challenges head on and presumably find them to be categorically inappropriate based on Justice Thomas's dissenting opinion in Sessions v. Dimaya.[31]  See 138 S. Ct. at 1252 (Thomas, J., dissenting) (questioning whether "facial vagueness challenges are ever appropriate").  Even if the State were correct,[32] it is not this trial court's role to rebuff existing Supreme Court and First Circuit precedent permitting facial challenges like Frese's under the circumstances, especially where, as here, no controlling opinion by the Supreme Court or the Court of Appeals has explicitly called that precedent into doubt. Cf. Rodriguez de Quijas v. Shearson/Am. Exp., Inc., 490 U.S. 477, 484 (1989) ("If a precedent of this Court has direct application in a case . . . the Court of Appeals should

---

[31] State's Reply to Mot. to Dismiss Am. Compl. (Doc. No. 41, ¶ 2).

[32] The court takes no position on whether Justice Thomas's dissenting views in Dimaya may represent the views of other Justices of the Supreme Court.  And though the court is critical of the State's citation to a single Justice's dissenting opinion, it does not intent to suggest that the State's view on the appropriateness of facial challenges is completely unfounded.

follow that case which directly controls, leaving to [the Supreme] Court the prerogative of overruling its own decisions); Morosco, 822 F.3d at 7 ("[B]ecause overruling the Supreme Court precedent is the Court's job, not ours, we must follow [] until the Court specifically tells us not to . . . .").

The State also argues for the first time in its Reply that, even if it is wrong about Draper, Frese has still failed to state a facial vagueness claim because he failed to state a sufficient as-applied claim.[33]  In support of this new argument, the State notes that in United States v. Ackell, this court held that while a litigant can bring a facial overbreadth challenge without an as-applied challenge in the First Amendment context, "[t]he law recognizes no such exception for a vagueness" claim.  2016 WL 6407840, at*7.  This court first points out the obvious: "[N]ew arguments may not be raised for the first time in a reply brief."  E.g., Villoldo v. Castro Ruz, 821 F.3d 196, 206 (1st Cir. 2016).  The court deems this new argument, raised for the first time in a reply to a second motion to dismiss, waived.  See Waste Mgmt. Holdings, Inc. v. Mowbray, 208 F.3d 288, 299 (1st Cir. 2000).

But even if the argument were not waived, it would still not require dismissal under Rule 12(b)(6) for several reasons.  First, this court's holding in Ackell was limited to, and must be construed in the context of, its particular facts—specifically, a criminal defendant whose alleged cyberstalking of a teenager was clearly proscribed by the statute under which he was charged.  2016 WL 6407840, at *7.  In this context, the court narrowly held that because the defendant's behavior was clearly proscribed, he lacked standing to challenge the statute's facial failure to provide "fair notice" to others.  Id. (citing Humanitarian Law Project, 561 U.S. at 20).  The court's decision did not address

---

[33] State's Reply to Mot. to Dismiss Am. Compl. (Doc. No. 41, ¶ 3).

whether a litigant—whether a plaintiff or a criminal defendant—could still bring a purely facial vagueness challenge under an arbitrary-enforcement vagueness theory.  And, as the State recognizes, at least one Circuit Court of Appeals has held since Ackell that, under Humanitarian Law Project, a plaintiff can bring a vagueness challenge under an arbitrary-enforcement theory (like Frese does here) without also bringing an as-applied challenge.[34] See Act Now, 846 F.3d at 412 (finding that an ordinance requiring removal of signs for events after 30 days was not unconstitutionally vague as it "set[] reasonably clear guidelines for law enforcement officers to determine whether a sign [was] event related").

For now, based on the authority cited by the parties, the court presumes for the purposes of this motion, without finding, that plaintiffs may bring facial vagueness challenges against statutes that invite excessively discretionary enforcement, without pleading a sufficient as-applied claim, so long as the challenge arises in the First Amendment context.  As discussed above, Frese's challenge arguably does so, as his plans to criticize public officials, including police officers, are not conduct clearly proscribed or permitted by the criminal defamation statute's plain text.  His challenge to the criminal defamation statute thus rises or falls on whether he has sufficiently stated a claim for relief, or more specifically in this context, whether, if after applying the rules for interpreting legal texts, the statute is "so standardless that it authorizes or encourages seriously discriminatory enforcement." United States v. Williams, 553 U.S. 285, 304 (2008) (internal citation omitted).

---

[34] In this procedural posture (a Rule 12(b) challenge), the court further declines the State's invitation to disregard Act Now on the argued grounds that the D.C. Circuit Court of Appeals's decision "conflated vagueness challenges under the Fourteenth Amendment and overbreadth challenges under the First Amendment," in the absence of legal authority supporting the State's critique.

c.      *Frese's arbitrary-enforcement allegations*

Frese contends that the criminal defamation statute is unconstitutionally vague because "it is not always easy to predict what will be taken as defamatory," given the diverse spectrum of values any particular listener might hold.[35]  In his view, "whether an utterance" meets the criminal defamation statute's standard of proscribed conduct— i.e. information that "will tend to expose [a] living person to public hatred, contempt or ridicule"—"depends on the values of the listener."[36]  Additionally, he argues that "[w]ithout a well-defined standard of criminal responsibility, law enforcement officials and factfinders are given nearly unfettered discretion to apply their own standards," resulting in "arbitrary, uneven, and selective enforcement."[37]

A statutory standard is not rendered unconstitutionally vague, however, just because it requires a person to conform to an imprecise normative standard that may "not mean the same thing to all people, all the time, everywhere," see, e.g., Roth v. United States, 354 U.S. 476, 491 (1957), or because it "will sometimes be difficult to determine whether the incriminating fact it establishes has been proved."  Williams, 553 U.S. at 306; see also McKee, 649 F.3d at 62 ("[T]he mere fact that a regulation requires interpretation does not make it vague." (citation omitted)).  "[T]he law is full of instances where a man's fate depends on his estimating rightly . . . some matter of degree."  Nash v. United States, 229 U.S. 373, 377 (1913).  The vagueness doctrine does "not doubt the constitutionality" of such laws "that call for the application of a qualitative standard to real world conduct."  Johnson v. United States, 576 U.S. 591 (2015).  Instead, the

---

[35] Am. Compl. (Doc. No. 31, ¶ 37).

[36] Id.

[37] Id. ¶ 39.

doctrine's concerns are objective, focusing "on the basis of the statute itself and other personal law," without reference to subjective perceptions or individual sensibilities.  See Bouie v. City of Columbia, 378 U.S. 347, 355 n.5 (1964).

At oral argument, Frese's counsel agreed that the criminal defamation statute adopts part of the common law standard for civil defamation—a discernable, normative standard which New Hampshire courts have consistently construed, and New Hampshire juries have regularly applied, for over one hundred years.[38]  E.g., Richardson v. Thorpe, 73 N.H. 532, 532 (1906) (defining defamation to include words "which tend to expose [a person] to public hatred, contempt, or ridicule"); Boyle v. Dwyer, 172 N.H. 548, 554 (2019) (same); see also Evans v. United States, 504 U.S. 255, 259 (1992) ("[W]here [the legislature] borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken and the meaning its use will convey to the judicial mind unless otherwise instructed."); In re Diana P., 120 N.H. 791, 794–95 (1980), overruled on other grounds by In re Craig T., 147 N.H. 739 (2002) (applying common-law definition for a key term where the statute at issue did not define the term).  "Precedent from the New Hampshire courts makes clear that, under the civil standard, a defamation action "cannot be maintained on an artificial, unreasonable, or tortured construction imposed upon innocent words, nor when only 'supersensitive persons, with morbid imaginations' would consider the words

---

[38] At New Hampshire common law, words could "be found to be defamatory if they hold [a person] up to contempt, hatred, scorn or ridicule, or tend to impair his [or her] standing in the community."  See, e.g., Thomas v. Tel. Publ'g Co., 155 N.H. 314, 338 (2007).  The criminal defamation statute omits the latter part of this common-law definition.  In doing so, it arguably imposes a higher threshold that divides criminal defamatory speech—words that tend to hold a person up to public hatred, contempt, or ridicule—from civilly actionable defamatory speech that is less likely to stoke the public's passions.

defamatory."  See, e.g., Thomson v. Cash, 119 N.H. 371, 373 (1979) (quoting Lambert v. Providence Journal Co., 508 F.2d 656, 659 (1st Cir. 1975)); Straughn v. Delta Air Lines, Inc., No. 98-396-M, 2000 WL 33667077, at *5 (D.N.H. Mar. 21, 2000) (McAuliffe, J.) (quoting Thomson, 119 N.H. at 373); Boyle, 172 N.H. at 554.  The defamatory meaning must be objectively reasonable—"one that could be ascribed to the words by persons of common and reasonable understanding."  Id.  And it "must tend to lower the plaintiff in the esteem of any substantial and respectable group, even though it may be quite a small minority."  Sanguedolce, 164 N.H. at 646 (quotation omitted).

The adoption of the common law defamation standard does much to rein in any alleged vagueness of the criminal defamation statute by giving persons of ordinary intelligence a familiar standard of conduct by which to abide.  See People of State of Michigan, by Haggerty, v. Michigan Tr. Co., 286 U.S. 334, 343 (1932) (explaining that "commonlaw (sic) implications . . . giv[e] meaning and perspective to a vague and imperfect [statutory] outline"); Pregent v. N.H. Dep't of Employment Sec., 361 F. Supp. 782 (D.N.H. 1973) (Bownes, J.), vacated on other grounds, 417 U.S. 903 (1974) (finding that standard borrowed from the "common-law of torts" was "not so vague and imprecise as to provide no guidance").  By adopting the common law standard, the criminal defamation statute affords equal, if not higher protections to defendants in criminal cases than those traditionally afforded to civil litigants. [39]  See, e.g., Winters v. New York, 333 U.S. 507, 515 (1948) ("The standards of certainty in statutes punishing for offenses is higher than in those depending primarily upon civil sanction for enforcement."); Hutton v. State Pers. Comm'n, 113 N.H. 34, 35 (1973) (recognizing higher degree of protection

---

[39] Counsel also took the position at oral argument that criminal defamation statute relatedly adopted the New Hampshire Supreme Court decisions interpreting the common law definition based on the criminal defamation statute's textual adoption of the common law definition.

given to accused in criminal matters).  Moreover, narrowing constructions of the common law defamation standard applied by the New Hampshire courts, as well as the federal courts, add additional precision and guidance to prevent enforcement of the criminal defamation statute in a generally arbitrary or discriminatory way.  See, e.g., Vill of Hoffman Estates, 455 U.S. at 489 ("In evaluating a facial challenge to a state law, a federal court must, of course, consider any limiting construction that a state court or enforcement agency has proffered."); Whiting v. Town of Westerly, 743 F. Supp. 97, 101 (D.R.I. 1990) (Boyle, C.J.) (finding that "a limiting construction" proffered by a town removed any risk that an ordinance prohibiting sleeping in a public space was unconstitutionally vague).

Frese maintains that, despite the adoption of the common-law standard, the criminal defamation statute is still too vague based on Gottschalk v. State, 575 P.2d 289 (Alaska 1978).  In Gottschalk, the Alaska Supreme Court held that Alaska's criminal libel statute, which constructively incorporated the full, common-law standard of defamation, was both overbroad and unconstitutionally vague on its face.  Id. at 292-96.  The Court first briefly construed the statute and concluded that defamation's common-law definition failed to define what conduct was prohibited in sufficiently definite and certain terms.  Id. at 292-204.  In its view, "whether an utterance [was] defamatory" under the full common-law definition "depend[ed] on the values of the listener" rather than an objective standard.[40]  Id. at 292-93.  But see Williams, 553 U.S. at 306 ("What renders a statute vague . . . is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of what

_____

[40] The Court further explained that confusion caused by a subjective definition of defamation was "compounded in Alaska, because among the several ethnic groups which reside here there may be divergent views on what is, and what is not, disreputable."  Id.

that fact is.").  Unlike New Hampshire's criminal defamation statute, however, the Alaska statute, as construed, expansively criminalized any statement which would cause another "to be shunned or avoided,"[41] 575 P.2d at 292, even if the speaker believed that his or her statements were true,[42] id. at 296.  The Court thus held that even if the statute at issue were not vague, it "would still be overbroad" for implicitly proscribing categories of speech that were indisputably protected under the First Amendment.  575 P.2d at 296 (recognizing that the Alaskan statute proscribed truthful speech made with bad intent where public officials, public figures, and issues of general or public interest were involved).

In the 40 years since Gottschalk was decided, the U.S. Supreme Court and the Circuit Courts of Appeals have published numerous decisions refining how courts approach and evaluate modern vagueness challenges (and overbreadth challenges) to statutes that arguably touch upon First Amendment freedoms.  See, e.g., Williams, 553 U.S. 285; Act Now, 846 F.3d at 410–412; McKee, 649 F.3d at 62.  During that time, no state or federal court has ruled that a state statute criminalizing knowingly false defamatory speech, as that phrase is understood at common law, was unconstitutionally vague (or overbroad) on its face.  But cf. Williamson v. State, 295 S.E.2d 305, 305 (Ga. 1982) (holding that statute prohibiting communications that "tend[ed] to provoke a breach of the peace" was overbroad and unconstitutionally vague under Gooding v. Wilson, 405 U.S. 518 (1972)).  By comparison, at least one district court has found that a

---

[41] The Court relied on the common-law definition because the statute at issue, AS 11.15.310 (1972), did not define "defamatory."  It found that, "[a]t common law, any statement which would tend to disgrace or degrade another, to hold him up to public hatred, contempt or ridicule, or to cause him to be shunned or avoided was considered defamatory."  Id. (emphasis added).

[42] See AS 11.15.320 (1972) ("[T]he truth of the defamatory or scandalous matter is a defense only when uttered or published with a good motive and for a justifiable end.").

defamation ordinance criminalizing speech "tending to expose another living person to public hatred, contempt or ridicule; tending to deprive such person of the benefits of public confidence and social acceptance; or tending to degrade and vilify the memory of one who is dead and to scandalize or provoke surviving relatives and friends" was not unconstitutionally vague on its face.  How v. City of Baxter Springs, Kan., 369 F. Supp. 2d 1300, 1306 (D. Kan. 2005).  These developments undercut Frese's reliance on Gottschalk to breathe life into his facial vagueness claim.

Frese's examples highlighting the history of selective criminal defamation prosecutions in America are similarly unavailing.  In support of this argument, Frese contends that even though criminal defamation is "'committed in this country a thousand times, and possibly ten or twenty thousand times, daily,'" criminal defamation statutes like New Hampshire's are "sporadically enforced," often on a political basis.[43]  In his view, New Hampshire's particular misdemeanor criminal process—which authorizes police officers to initiate and prosecute criminal defamation actions, and grants no right to a jury or court-appointed counsel for criminal defamation claims—exacerbates the risk that the criminal defamation statute may be misused.  Indeed, Frese's interactions with Exeter police in 2018 anecdotally illustrate the attempted use of the criminal defamation statute to prosecute speech that defamed a retired Exeter police officer, even though the

---

[43] Frese's Opp. to Mot. to Dismiss (Doc. No. 14, at 18-19) (quoting The Social Utility of the Criminal Law of Defamation, 34 Tex. L. Rev. 984, 984 (1956)); see also id. (noting that "one study of 77 criminal defamation investigations and prosecutions from 1965 through 2002, found that 68.8 percent of cases involved 'statements about public officials, public figures, or matters of public concern,'" and "that law enforcement officers and elected officials were the two most frequent complainants, comprising 19.5 percent and 14.3 percent of cases, respective." (quoting Criminalizing Speech About Reputation: The Legacy of Criminal Libel in the U.S. After Sullivan & Garrison, 37–38, Media Law Resource Center Bulletin (Mar. 2003)).

New Hampshire Department of Justice later concluded that there was no probable cause to arrest or prosecute Frese.[44]

The facts of Frese's 2018 prosecution are concerning, as is information suggesting that criminal defamation statutes are routinely enforced in a selective, political manner. See also Frese, 425 F. Supp. 3d at 82 n.44 (questioning the "kinds of proof necessary to prove a criminal defamation case before a [New Hampshire] judge . . . since individuals prosecuted for criminal defamation have no right to a jury").[45]  But "identified instances of a statute's misapplication do not tell us whether the law is [facially] unconstitutional . . . ."  Agnew, 920 F.3d at 60 (internal citations omitted).  Though similar allegations could bolster an as-applied challenge or some other claim against the New Hampshire criminal process for misdemeanors, Frese has not raised such claims in his amended complaint.  Instead, his complaint focuses on unconstitutional vagueness—which requires a textual analysis.  Frese's enforcement-based allegations thus do not support his facial vagueness claim.[46]

As repeated throughout this order, the ultimate question for a facial vagueness claim is whether the criminal defamation statute is so standardless as to permit selective or discriminatory enforcement.  See, e.g., Bronstein, 849 F.3d at 1107 (explaining that a

---

[44] See Part II.A, supra, at 4 (citing NHDOJ June 4, 2018 Mem. (Doc. No. 31-3, at EXE008-013) (concluding that the Exeter Police Department had "arrested and charged Frese without probable cause of actual malice—that is, that he made the statements at issue with knowledge that they were false.")).

[45] Doc. No. 19, at 23 n.44.

[46] In reaching this conclusion, the court does not intend to suggest that the risk of discriminatory enforcement of the criminal defamation statute is actually insignificant, or that New Hampshire's misdemeanor criminal process—with all its particular idiosyncrasies, including the ability of police officers to charge and prosecute misdemeanor crimes—does not result in pressures increasing the likelihood that defendants plead guilty to defamation charges to avoid further criminal proceedings.

statute is unconstitutionally vague on its face if, after applying the rules for interpreting

legal texts, a challenged statute specifies no discernable "standard of conduct . . . at all"

(internal citation omitted)); see also McKee, 649 F.3d at 62 ("[A] statute is

unconstitutionally vague only if it 'prohibits . . . an act in terms so uncertain that persons

of average intelligence would have no choice but to guess at its meaning and modes of

application." (internal citation omitted)).  Upon applying the tools of statutory

construction, the language of the statute articulates a sufficiently discernible and familiar

standard as to prevent such enforcement concerns by requiring that the defendant

subjectively believe that his speech is false and that his speech is defamatory.  These are

clear questions of fact that are subject to a "true-or-false" determination.  Williams, 553

U.S. at 306–07 (internal citation omitted)

> To be sure, it may be difficult in some cases to determine whether these
> clear requirements have been met.  "But courts and juries every day pass
> upon knowledge, belief and intent—the state of men's minds—having
> before them no more than evidence of their words and conduct, from
> which, in ordinary human experience, mental condition may be inferred."
> And they similarly pass every day upon the reasonable import of a
> defendant's statements . . . .

Id. (internal citation omitted).  Frese has failed to show otherwise, either through the

factual allegations in his amended complaint or in arguments raised in opposition to the

State's motion to dismiss.  He has thus failed to meet his pleading burden for a facial

vagueness claim under the Fourteenth Amendment.

3.    Frese's as-applied challenge

Lastly, the State contends that Frese has not adequately alleged an as-applied

vagueness claim to the criminal defamation statute because he "does not allege that [the

statute] is constitutional as applied to him, but rather 'as applied in in the context of New

Hampshire's system for prosecuting Class B misdemeanors.'"[47]  Frese concedes that he has not pled a traditional as-applied claim; instead, he contends to have pled a hybrid vagueness claim that is predominately facial in the sense that it is not limited to [his] particular case," but also as-applied "in the sense that it does not seek to strike the [statute] outside the context of New Hampshire's particular misdemeanor process."

With due regard to Frese's characterization of the claim, "[t]he label is not what matters." See John Doe No. 1 v. Reed, 561 U.S. 186, 194 (2010).  Both parties agree that "[t]he important point" is that Frese's "as-applied" vagueness claim "and the relief that would follow . . . reach beyond [his] particular circumstances"  and "therefore must satisfy [the] standard for a facial challenge to the extent of that reach."[48]  See John Doe No. 1, 561 U.S. at 194; Project Veritas Action Fund v. Rollins, No. 19-1586, 2020 WL 7350243, at *9 (1st Cir. Dec. 15, 2020) (finding that challenge with both "as-applied" and "facial" characteristics must satisfy the "'standards for a facial challenge to the extent of that reach'" (quoting John Doe No. 1, 561 U.S. at 194)).  For the reasons discussed in this court's facial vagueness analysis, Frese's "hybrid" claim falls short of this standard.  He has therefore failed to state either a facial or an as-applied vagueness claim upon which relief can be granted.  See Fed. R. Civ. P. 12(b).

## IV.   **Conclusion**

Laws criminalizing the purposeful communication of knowingly false defamatory speech remain in force in many states across the country.  It is not this district court's role to determine whether these laws are wise or effective.  See Vill. of Hoffman Estates, 455 U.S. at 505.  The court only considers whether Frese's allegations can sustain an

---

[47] State's Mot. to Dismiss Am. Compl. Mem. (Doc. No. 33-1, at 13) (quoting Am. Compl. ¶ 36).

[48] State's Reply to Mot. to Dismiss Am. Compl. (Doc. No. 41, ¶ 8); Frese Obj. at 7-8 (same).

overbreadth or a void-for-vagueness challenge against the specific language of New Hampshire's criminal defamation statute.

Previously, the State failed to demonstrate that Frese's allegations did not pass muster under Rule 12(b) based on the arguments and case authority it had presented in its first motion to dismiss.  See Frese, 425 F. Supp. 3d at 82.[49]  At that time, the State focused on the criminal defamation statute's scienter requirement rather than the statute's standard for defamation;[50] asserted, without support, that the statute had "no phrases or terms like 'defamatory'" that might require definition; and submitted no case authority that directly refuted Frese's  argument that criminal defamation, as defined by the statute, rested largely on subjective assessments of the speech in question.[51]  The court found the State's showing to be lacking—a position validated by the State's recent and better-supported filings—and thus declined to rule that the criminal defamation statute was not constitutionally vague as a matter of law.  Possibly distracted by its busy criminal trial calendar, as well as its concerns about what the discovery process would reveal about New Hampshire's unique police-staffed prosecutions of unrepresented defendants in the context of criminal defamation, the court perhaps should have done more on its own to discover the arguments now made and the authorities now cited by the State.  But see Shaner v. Chase Bank USA, 587 F.3d 488 (1st Cir. 2009) ("It is not [the court's] job,

---

[49] See Oct. 25, 2019 Order Denying Mot. to Dismiss (Doc. No. 19, at 24) at 20-23.

[50] See State's Mot. to Dismiss Mem. (Doc. No. 11-1, at 11-12) (examining the definitions of the terms "purposely" and "knowingly," but not for the clause "will tend to expose [a] living person to hatred, contempt, or ridicule.").  The court specifically found that the State's cited authorities for this argument were readily distinguishable and thus not persuasive in a Rule 12(b) posture.  Oct. 25, 2019 Order Denying Mot. to Dismiss (Doc. No. 19, at 20-21).

[51] See State's Mot for Reconsideration (Doc. No. 21) at 2-3 (improperly introducing new arguments on the issue of vagueness based on the D.C. Circuit Court of Appeal's decisions in Bronstein and Agnew, and Judge McCafferty's decision in Saucedo).

especially in a counseled civil case, to create arguments for someone who has not made them or to assemble them from assorted hints and references scattered throughout the brief." (internal citation omitted)); United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones. . . . [A] litigant has an obligation 'to spell out its arguments squarely and distinctly,' or else forever hold its peace." (internal citation omitted)).

This is no longer the case. Applying the principles articulated above to Frese's amended allegations, Frese's allegations cannot sustain a void-for-vagueness or overbreadth claim. Accordingly, the court grants the State's Rule 12(b) motion on sufficiency grounds and dismisses Frese's amended complaint in its entirety.[52]

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated: January 12, 2021

cc:    Brian M. Hauss, Esq.
       Emerson J. Sykes, Esq.
       Henry Klementowicz, Esq.
       John M. Greabe, Esq.
       Lawrence A. Vogelman, Esq.
       Gilles R. Bissonnette, Esq.
       Samuel R.V. Garland, Esq.

---

[52] Doc. No. 33 (motion to dismiss); Doc. No. 31 (amended complaint).